# EXHIBIT A

SHEET 1

**1**

```
 1              IN THE UNITED STATES DISTRICT COURT
                IN AND FOR THE DISTRICT OF DELAWARE
 2                          - - -
 3   DRYWALL ACOUSTIC LATHING AND
     INSULATION LOCAL 675 PENSION       :  CIVIL ACTION
     FUND, individually and on behalf
 4   of all others similarly situated,  :
 5              Plaintiff,              :
 6        v                            :
 7   MOLSON COORS BREWING COMPANY,      :
     PETER H. COORS, W. LEO KIELY, III, :
 8   CARLES M. HERINGTON, FRANKLIN W.
     HOBBS, RANDAL OLIPHANT, PAMELA     :
 9   PATSLEY, WAYNE ANDERS, ALBERT C.
     YATES, TIMOTHY V. WOLFE, PETER     :
10   SWINBURN, DAVID G. BARNES and
     PETER M.R. KENDALL,                :
11          Defendants.              :  NO. 05-294 (KAJ)
     --------------------------------
12   BRENT W. KLOS, individually and    :
     on behalf of all others similarly
13   situated,                          :
               Plaintiff,              :
14                                     :
15   MOLSON COORS BREWING COMPANY,      :
     PETER H. COORS, W. LEO KIELY, III, :
16   CARLES M. HERINGTON, FRANKLIN W.
     HOBBS, RANDAL OLIPHANT, PAMELA     :
17   PATSLEY, WAYNE ANDERS, ALBERT C.
     YATES, TIMOTHY V. WOLFE, PETER     :
18   SWINBURN, DAVID G. BARNES and
     PETER M.R. KENDALL,                :
19                                     :  NO. 05-317 (KAJ)
             Defendants.              :
20                          - - -
21              Wilmington, Delaware
          Friday, October 27, 2005 at 9:00 a.m.
22              ORAL ARGUMENT HEARING
23                          - - -
24   BEFORE:     HONORABLE KENT A. JORDAN, U.S.D.C.J.
25                          - - -
```

**2**

```
 1   --------------------------------
     DAVID SILVER, individually and on  :  CIVIL ACTION
 2   behalf of all others similarly
     situated,                          :
 3              Plaintiff,              :
 4                                     :
 5        v                            :
     MOLSON COORS BREWING COMPANY,      :
 6   PETER H. COORS, W. LEO KIELY, III, :
     CARLES M. HERINGTON, FRANKLIN W.
 7   HOBBS, RANDAL OLIPHANT, PAMELA     :
     PATSLEY, WAYNE ANDERS, ALBERT C.
 8   YATES, TIMOTHY V. WOLFE, PETER     :
     SWINBURN, DAVID G. BARNES and
 9   PETER M.R. KENDALL,                :
10          Defendants.              :  NO. 05-324 (KAJ)
     --------------------------------
11   WALTER PHILLIPS, on behalf of      :
     himself and all others similarly
12   situated,                          :
13              Plaintiff,              :
14        v                            :
     MOLSON COORS BREWING COMPANY,      :
15   PETER H. COORS, W. LEO KIELY, III, :
     CARLES M. HERINGTON, FRANKLIN W.
16   HOBBS, RANDAL OLIPHANT, PAMELA     :
     PATSLEY, WAYNE ANDERS, ALBERT C.
17   YATES, TIMOTHY V. WOLFE, PETER     :
     SWINBURN, DAVID G. BARNES and
18   PETER M.R. KENDALL,                :
19          Defendants.              :  NO. 05-604 (KAJ)
20   --------------------------------
     APPEARANCES:
21
22        ROSENTHAL MONHAIT GROSS & GODDESS, P.A.
            BY:  CARMELLA P. KEENER, ESQ.
23
24              and
25                         Brian P. Gaffigan
                           Registered Merit Reporter
```

**3**

```
 1   APPEARANCES:  (Continued)
 2
 3        LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
            BY:  DAVID A. ROSENFELD, ESQ.
 4              (Melville, New York)
 5              Counsel for Plumbers &
                Pipefitters National Pension Fund
 6
 7        MILBERG WEISS BERSHAD & SCHULMAN, LLP
            BY:  SETH D. RIGRODSKY, ESQ.
 8
 9              and
10        MILBERG WEISS BERSHAD & SCHULMAN, LLP
            BY:  PETER SEIDMAN, ESQ.
11              (New York, New York)
12              Counsel for Drywall Acoustic Lathing
                and Insulation Local 675 Pension Fund and
13              Metzler Investment, GmbH
14
15        CHIMICLES & TIKELLIS
            BY:  ROBERT R. DAVIS, ESQ.
16
17              Counsel for Plaintiff in Civil Action 05-604
                              (ERISA action)
18        RICHARDS LAYTON & FINGER
19          BY:  CHARLES F. RICHARDS, JR., ESQ., and
                 JEFFREY L. MOYER, ESQ.
20
21              and
22        WILLKIE FARR & GALLAGHER, LLP
            BY:  ANTONIO YANEZ, JR., ESQ.
              (New York, New York)
23
24              Counsel for Defendants except in Civil #05-604
25              and
```

**4**

```
 1   APPEARANCES:  (Continued)
 2
 3        MORGAN LEWIS & BOCKIUS, LLP
            BY:  DONALD L. HAVERMANN, ESQ.
 4              (Washington, District of Columbia)
 5              and
 6        MORGAN LEWIS & BOCKIUS, LLP
            BY:  TAMSIN J. NEWMAN, LLP
 7              (Philadelphia, Pennsylvania)
 8              Counsel for Defendants in Civil 05-604
                              (ERISA action)
 9
10              - oOo -
11              P R O C E E D I N G S
12        (REPORTER'S NOTE:  The following oral argument
13   hearing was held in open court, beginning at 9:00 a.m.)
14        THE COURT:  Good morning.  Please be seated.
15        (The attorneys respond, "Good morning, Your
16   Honor.")
17        THE COURT:  All right.  We're here to talk about
18   consolidation and being the lead plaintiff in a series of
19   cases.  Why don't we go ahead and start with some
20   introductions.
21        MS. KEENER:  Good morning, Your Honor.  Carmella
22   Keener on behalf of the Plumbers and Pipefitters National
23   Pension Fund.  With me at counsel table is my co-counsel,
24   David Rosenfeld --
25        MR. ROSENFELD:  Good morning, Your Honor.
```

5

1      MS. KEENER: -- of Lerach Coughlin Stoia Geller
2  Rodman & Robbins, LLP.
3      Your Honor, there is pending before the Court a
4  motion for admission pro hac vice for Mr. Rosenfeld. And
5  with Your Honor's permission, he'll make the presentation
6  this morning on behalf of Plumbers and Pipefitters National
7  Pension Fund.
8      THE COURT: All right.
9      MS. KEENER: Thank you.
10     MR. RIGRODSKY: Good morning, Your Honor. Seth
11 Rigrodsky of Milberg Weiss from our Delaware office. I'll
12 be presenting the argument for movants, Drywall Acoustic
13 Lathing and Insulation Local 675 Pension Fund and Metzler
14 Investment, GmbH.
15     With me today is Peter Seidman, a partner from
16 the New York office of Milberg Weiss.
17     THE COURT: All right. Thank you.
18     MR. DAVIS: Good morning, Your Honor. Robert
19 Davis here from Chimicles & Tikellis on behalf of the
20 plaintiffs in the ERISA action, which is the 05-604 action.
21     We're included in the scheduling order for this
22 hearing and we're just appearing out of an abundance of
23 caution. We don't think that the motions to consolidate
24 relate to us but one of the orders could be construed to
25 consolidate related actions so we just wanted to make Your

6

1  Honor aware of it. I've talked with the other plaintiffs'
2  counsel and they also agree that the motions to consolidate
3  should not relate to our action.
4      THE COURT: All right.
5      MR. RICHARDS: Good morning, Your Honor. This
6  is Charley Richards from Richards Layton & Finger. I think
7  you know my partner, Jeff Moyer.
8      MR. MOYER: Good morning, Your Honor.
9      MR. RICHARDS: Also with me is Tony Yanez of
10 Willkie Farr & Gallagher, and they are counsel with us in
11 the three securities litigation; and also my colleagues Don
12 Havermann and Tamsin Newman and they are counsel with us in
13 the ERISA action.
14     THE COURT: All right.
15     MR. RICHARDS: And we agree with Mr. Davis, the
16 ERISA action caption was not on the first order but added to
17 the second order and we weren't sure what Your Honor had in
18 mind so we all showed up.
19     THE COURT: Well, I had in mind just what you
20 folks have said, which is telling me whether you thought
21 this was something that ought to be in the mix or not. And
22 I hear you telling me that everybody agrees the ERISA case
23 is different enough that it ought not be part of the
24 securities consolidation. Right?
25     MR. RICHARDS: That's correct, Your Honor.

7

1      MR. RIGRODSKY: That's correct, Your Honor.
2      MR. ROSENFELD: That's correct, Your Honor.
3      THE COURT: Let's save everybody some money by
4  saying "done." Mr. Davis, you're free to go. If you folks
5  want to stay, that's fine, but if you want to go, that's
6  good, too.
7      (Mr. Davis left courtroom.)
8      THE COURT: Thank you for appearing.
9      All right. Now let's deal with the
10 consolidation aspect of this. I understand from the papers
11 that are filed that the defense has no objection to the
12 consolidation of the securities actions.
13     MR. RICHARDS: That's correct, Your Honor.
14     THE COURT: All right. And that the plaintiffs
15 are in agreement that the securities actions ought to be
16 consolidated; correct?
17     MR. RIGRODSKY: Correct, Your Honor.
18     MR. ROSENFELD: Correct, Your Honor.
19     THE COURT: Okay. Pretty simple. I have taken
20 a look at the complaints and I agree so the actions will be
21 consolidated.
22     Now, let's get to where the rubber meets the
23 road or the money hits the bank account or however you want
24 to consolidate it. But we're obviously here talking about
25 who is going to be taking home the lion's share of fees.

8

1      And I'm frank to say, as you probably already
2  know, this is my first trip around this block. I'll say at
3  the outset, it's a little distressing because what I've
4  tried to learn about the PSLRA tells me that the intent of
5  Congress was to minimize this sort of thing or avoid it, to
6  make these cases client driven, not lawyer driven. And this
7  has certainly got the appearance to me of being lawyer
8  driven litigation or I don't know that I'd have two sets of
9  firms pointing a finger at each other and saying, "no, me,"
10 "no, me," "no, me." So you start out with a judge who is
11 both new at this and concerned that we're just not where the
12 legislation anticipated where we ought to be at all.
13     So without wanting to get all philosophical with
14 you, one of the first things I want to hear from you folks
15 is, about your client, who approached who, how you end up
16 here, where your client representatives are, what your fee
17 discussions with them have been and what those arrangements
18 look like. Because in addition to the issues that you have
19 raised about each other, things like: Is Metzler even
20 entitled to act as an attorney in fact? That is what I
21 understand the other plaintiff set is speaking about. Does
22 it really have a stake here? What do the Drywall people
23 have to do with Metzler anyway? Et cetera.
24     I'm interested in knowing about things I have
25 just described about the clients and how they got in the

**9**

1  mix. And why don't we go ahead, and since the first person
2  to take a shot at this merger was the Metzler group, I'll
3  hear from Mr. Rigrodsky in the first instance.
4      MR. RIGRODSKY: Thank you, Your Honor.
5      Your Honor, I would like to start by saying that
6  I agree with the Court. I think it is --
7      THE COURT: It's always a good start. That's
8  great.
9      MR. RIGRODSKY: I try to do that as much as I
10 possibly can, Your Honor.
11     I agree with the Court in the sense that it is
12 unfortunate that we're here today in our correspondence with
13 the Court. We had asked that oral argument not even be
14 scheduled. The very reason that the PSLRA sets out very
15 definitive standards as to who should be appointed the most
16 adequate plaintiff, which is the first inquiry, and then
17 whether the counsel that was selected by that plaintiff
18 should be appointed as lead counsel in the case.
19     The PSLRA standards, for purposes of assessing
20 who is the most adequate counsel, are very straightforward.
21 And if the Court was to look at the Third Circuit's decision
22 in Cendant, there is an articulation of interpretation of
23 what the factors are.
24     The first factor the Court looks to is: Who has
25 the largest financial stake in the litigation?

**10**

1      The very purpose of that statute was to prevent
2  a dispute among plaintiffs' counsel as to leadership. Prior
3  to the enactment of the PSLRA. It was the race to the
4  courthouse, the first filed and squabbling about who would
5  be lead counsel.
6      THE COURT: Isn't the purpose of that not just
7  what you have said but to have a plaintiff that will really
8  act like a plaintiff? That is, somebody that has got a big
9  enough stake that they are not going to be lead by counsel
10 but they're going to be managing counsel the way a party in
11 more ordinary litigation would. That's what I understand
12 the statute to be saying. Do you see something different in
13 it?
14     MR. RIGRODSKY: I think just slightly. I think
15 what the Court -- excuse me -- what Congress ultimately and
16 the Court's interpreting the statute wanted was substantial
17 sophisticated investors with a large financial loss to be
18 involved in these cases; agreed that the cases should not be
19 "lawyer driven," they should be driven by real parties in
20 interest with very substantial financial losses with a
21 degree of sophistication. If they wanted to, to actively
22 participate, in other words, even appear in court, or to
23 select counsel and actively monitor and be involved in the
24 litigation.
25     THE COURT: How did you come to be representing

**11**

1  these folks?
2      MR. RIGRODSKY: When the first actions were
3  filed, they went to the PSLRA. Notice was distributed
4  among, you know, widely circulated news wire, Internet
5  service. Counsel for the Metzler group saw the notice,
6  contacted us. We had represented them in prior actions.
7  They had substantial losses in their accounts and they felt
8  it would be appropriate if they participate in the case as
9  lead counsel -- excuse me -- lead plaintiffs and to select
10 Milberg Weiss as their lead counsel since we had worked with
11 them in the past.
12     THE COURT: Help me with the facts. Metzler
13 sued, was the first one filed.
14     MR. RIGRODSKY: No Metzler is not the first
15 filed. The first filed was an individual plaintiff.
16 Actually, the first filed was the Drywall Acoustic Lathing
17 Pension Fund and they filed the first lawsuit. Their losses
18 were approximately $700,000 or so pursuant to their
19 certification. The second action was filed by Mr. Clos who
20 was an individual with far less in the way of losses.
21     Once the notice went out to investors, there are
22 others out there in the putative class who wanted to
23 participate in the litigation and so consistent with the
24 PSLRA, people like or entities like Metzler become aware of
25 lawsuit and they, too, could have the opportunity to

**12**

1  participate in the lawsuit going forward.
2      THE COURT: All right. Well, for purposes of
3  argument, take it as a given that -- and I'm looking at
4  Metzler vs. the Plumbers, so to speak.
5      MR. RIGRODSKY: Okay.
6      THE COURT: But the aggregation of Metzler
7  claims with others, you know, I'm not paying much attention
8  to them. I'm looking at Metzler. I'm looking at Plumbers.
9  And when I say "I am not paying much attention," it's not
10 that I haven't looked at it, and I'll give you a chance to
11 talk about it if you want, but I don't know what the union
12 local has to do with the German investors except for you can
13 put them together. And go ahead and answer that, if you
14 would like; but the significant question for me is, as you
15 folks have pointed out, yourself, in your briefing, you've
16 got, if I take your word for it, Metzler, as lead plaintiff,
17 alone has a bigger loss than the Plumbers.
18     So I'm interested in hearing about those
19 attacks, your take on the attacks that counsel for the
20 Plumbers Union has made with respect to whether or not the
21 Metzler folks actually do have a right to be representing
22 the fund investors, where your proof of that is in the
23 record you have given to me, whether German law is something
24 I have to get tied up in to figure out whether you have the
25 right to do that, whether or not a decision would be res

Friday, October 28, 2005

SHEET 4

---

**13**

1 judicata if rendered.
2      Do I need to be concerned that, when I read in
3 the briefing things like, well, it's unlikely you'd ever
4 have to have something in the works in Germany? I mean am I
5 going to be in the zone where I'm thinking, well, maybe that
6 is a problem but unlikely. Go ahead, if you would. I mean
7 I did look at your reply brief but I want to you fire back
8 on this record.
9      MR. RIGRODSKY: Absolutely, Your Honor. First
10 of all, I do want to mention the Drywall Acoustic. When you
11 say "what do they have to do with each other," what they
12 have to do with each other is they both suffered injury.
13      THE COURT: That could be true of anybody,
14 right?
15      MR. RIGRODSKY: That is true, but the Drywall
16 Acoustic folks, our clients filed a complaint. They sought
17 to be appointed lead counsel and, moreover, they agreed to
18 work with and act in a joint capacity with Metzler.
19      The Third Circuit has said in Cendant that you
20 can have groups of -- as also set forth in PSLRA itself,
21 that a group can be the lead plaintiff. These groups are so
22 significant that they are very different from what we see as
23 an aggregation of individuals who seemingly have no ties,
24 nothing at all.
25      THE COURT: These guys have nothing in common.

---

**14**

1 Give me some fact that it will help me see that they have
2 anything in common. To say "they're both big" doesn't say
3 they have anything in common, it just means they both picked
4 Milberg Weiss. If you give me a fact that I can put my arms
5 around, then I will feel like there is something more here
6 than Milberg Weiss saying I've got two big clients.
7      MR. RIGRODSKY: Well, Your Honor, I think, with
8 all due respect, I think that is really the standard that
9 the Third Circuit has looked to with respect to groups:
10 Whether they are sufficiently sophisticated and have
11 suffered significant losses, that they are actually a
12 legitimate group, cognizable as a group within the PSLRA as
13 opposed to just an aggregation of individuals. If you look
14 at the Cendant case, there are were three separate
15 institutional investors in that case, all of whom were
16 appointed as a group. You could say what does CALPERS have
17 to do with the State of Wisconsin except for the fact
18 they're both pension funds? Then again, I think the same
19 thing is true here. You have large investments,
20 sophisticated parties suffered large losses, and I think
21 that is sufficient.
22      THE COURT: So your read of the Third Circuit's
23 opinion is that as long as they're big and sophisticated,
24 there doesn't have to be any more relation between them than
25 they both pick the same firm?

---

**15**

1      MR. RIGRODSKY: I think it's that the size of
2 the entities are almost -- are evidence of a fact that it's
3 not lawyer driven, that it's not an unrelated conglomeration
4 of a number of various plaintiffs. If you look at the
5 certifications that were filed in this case, you look at
6 dozens of security cases where lead counsel for the
7 plaintiffs are appointed, you will see that they are often
8 grouped together, two, three, four, sometimes five different
9 funds, similar sophistication, size, with no apparent
10 relationship, interrelatedness between them other than the
11 fact they are large and sophisticated, suffered a
12 substantial financial loss. I mean again on just the
13 Drywall Acoustic Lathing people alone, we say, they say in
14 certification that they suffered $700,000 worth of loss. I
15 mean that is close to the million dollars claimed by the
16 other movants.
17      THE COURT: That's close.
18      MR. RIGRODSKY: It's close. So they are, if you
19 look at a relative size of the movants here, they are large.
20 They are sophisticated. And we believe that they can be
21 included in a group.
22      But I'd like to, if I could, turn to the
23 questions the Court had with respect to Metzler, because
24 Metzler does have $2 million in losses and it's double the
25 amount claimed by the other movants. And a number of

---

**16**

1 attacks were made on Metzler by the other movants, and I
2 think that, unfortunately, the attacks are sort of like the
3 old metaphor of "throwing everything against the wall and
4 seeing what sticks." Well, the bottom line here is that
5 nothing sticks at all.
6      It's clear under Cendant and it's clear under
7 the PSLRA that once we have established a prima facie case
8 that Metzler is the most adequate plaintiff. Any member of
9 the putative class, that includes purportedly the other
10 movants here, have to come forward with the affirmative
11 proof that our plaintiff is inadequate. So the burden is
12 really not on me to prove adequacy, it's the burden is on
13 them to prove inadequacy.
14      THE COURT: Don't you have to prove to me that
15 you actually can represent what you say you represent?
16      MR. RIGRODSKY: Absolutely. And I can do that.
17      THE COURT: That's where I need you to go in the
18 first instance because their first attack as I take it is
19 you don't have any stake in this at all.
20      MR. RIGRODSKY: Right. We submitted
21 certification of the Metzler party signed by what are called
22 procurests, which, in Germany, are authorized signatories
23 for a particular entity. There is actually a binder of
24 authorized signatories. And the two signatories to this
25 affidavit are Matthias Plewnia who is a managing director of

---

Friday, October 28, 2005

SHEET 5

17

1  Metzler, and Stefanie Buchmann, which is a legal counsel.
2  Now, this affidavit was submitted in reply in
3  response to we consider to be baseless attacks on Metzler.
4  The first issue is whether Metzler has
5  sufficient interest in the litigation, is actually the
6  plaintiff because the losses were sustained by two funds in
7  which Metzler manages. And the issue of authority and loss
8  turns on whether Metzler, as the investment manager, acts as
9  the attorney in fact for the funds.
10  THE COURT: And let me stop you there. That's,
11  I understand to be, the point that you guys are at least
12  agreed on. But let me ask Mr. Rosenfeld to stand up right
13  there.
14  Do you agree that that is the decisive inquiry,
15  whether or not Metzler acts as attorney in fact with respect
16  to the investments in those funds?
17  MR. ROSENFELD: That is only one of the factors
18  that are considered, Your Honor, and not necessarily the
19  decisive factor.
20  THE COURT: So if they are indeed attorney in
21  fact, you would still say "so what?"
22  MR. ROSENFELD: I would still say that is
23  certainly one of the factors that is considered by the
24  courts. But there are numerous other factors to consider as
25  well.

18

1  THE COURT: Well, go ahead. Say them.
2  MR. ROSENFELD: Such as the fund itself,
3  invested its own money, such that it has its own financial
4  stake in interest, which relates back to the other issue,
5  but a lot of the cases have held that's the money manager
6  who is required to invest its own money alongside with its
7  investors.
8  THE COURT: So what you are saying even if
9  they're the attorney in fact, so that they could be viewed
10  as have $2 million plus in losses, that is not enough?
11  I'm just trying to -- you know, each of you has thrown
12  several cases at me. And these are very fact specific
13  inquiries. So you need to help me understand, is your legal
14  position that if I conclude, yes, they're the attorney in
15  fact so they're speaking with binding authority for $2
16  million in losses, that is still not enough because
17  they didn't put their own dime in?
18  MR. ROSENFELD: Well, that is one of the
19  considerations, Your Honor.
20  THE COURT: When you say "considerations" --
21  MR. ROSENFELD: That is certainly a major
22  factor, but it's not -- even if the Court were to find they
23  could act as attorney in fact, I would say, Your Honor, that
24  they would still require some representation from their
25  clients, that aside from -- most money managers can act as

19

1  attorney in fact to manage money. That is what they do.
2  Otherwise, every time they made a trade they would have to
3  contact their client. But as I will discuss later on, Your
4  Honor, Metzler did not have express authority to seek
5  appointment as a lead plaintiff and to participate in
6  litigation on behalf of its clients and they have not
7  submitted any representation of any one of their clients
8  that they even know about this litigation.
9  THE COURT: All right. So if I have understood
10  you right, you're really not pinning your argument on
11  attorney in fact. You're pinning it more on they didn't
12  have express authority.
13  MR. ROSENFELD: They did not have express
14  authority, Your Honor. And as a German money manager, it's
15  highly unlikely that they had express authority because of
16  the litigation climate in Germany in which, I'm not sure if
17  Your Honor is aware, but Germany, as in most European
18  countries, the loser pays.
19  THE COURT: All right. Well, I'll give you your
20  chance to address this in more detail in a few minutes.
21  MR. ROSENFELD: Thank you, Your Honor.
22  THE COURT: Mr. Rigrodsky.
23  MR. RIGRODSKY: Thank you. I think what you are
24  hearing is a lot more spaghetti flying against the wall.
25  I'll tell you why. To say that Metzler doesn't know about

20

1  this litigation borders frankly on the absurd. They signed
2  a certification with the lead counsel motion.
3  THE COURT: I don't hear them saying Metzler
4  doesn't know that. I hear them saying I think that the
5  folks at Metzler purports to represent don't know about it
6  and never authorized it. That you guys might know somebody
7  at Metzler who says, "great, file a suit" but that those
8  people who are the owners of the funds, they don't know
9  about it, they didn't authorize it, they don't want it.
10  MR. RIGRODSKY: Metzler set forth in its
11  affidavit -- and this is, if you want to look at the proof,
12  this is the only proof in the record. What you are hearing
13  is speculation. Metzler has said in paragraph four of its
14  declaration that is submitted with our reply brief and,
15  frankly, it's unrebutted with any evidence that they control
16  the funds, they act as attorney in fact for them. They have
17  full and complete authority and discretion to purchase and
18  sell securities and to institute legal action on their
19  behalf, including serving as lead plaintiff in this action.
20  They are the ones with authority to act on behalf of the
21  funds.
22  And, Your Honor, I think there is also
23  corroborating evidence in the sense of if you look at our
24  chart of trading losses, you will notice that the
25  transactions for both the funds are identical. Identical

SHEET 6

21

1  funds were purchased and sold, identical dates for both
2  funds, consistent with the motion that Metzler is the
3  purchaser and seller of these securities.
4      As far as legal authority goes, we cite the EZRA
5  Charitable Trust, which was decided within this Circuit,
6  the Weinberg v Atlas Air case. And unfortunately it's not
7  cited in our papers, but this very court in In Re:
8  DaimlerChrysler, which is 216 FRD 291. Judge Farnan found
9  an investment advisor with authority in fact over litigation
10  and the funds was the one that suffered the loss. That came
11  up in the context of an attack that was also raised by the
12  other movants with regard to section -- excuse me -- regard
13  to Rule 17 and the issue of real party in interest. It's
14  the same flip-side argument basically that the investment
15  manager is not the real party in interest because they
16  "suffered the loss." Purchaser seller under securities laws
17  is the one that suffers the loss. If the investment manager
18  has legal authority and is the attorney in fact for the
19  underlying funds, they suffer the loss.
20      THE COURT: Okay.
21      MR. RIGRODSKY: Black letter law.
22      THE COURT: Now, let's assume for purposes of
23  discussion that I were to accept your position Metzler has
24  got the authority and is in a position to say, to speak on
25  behalf of folks who suffered those losses. Answer the

22

1  assertion that a foreign-based entity is an inappropriate
2  lead plaintiff because of the res judicata concerns that
3  were mentioned by the Plumbers and because of the geographic
4  concerns raised by the plan. And one might add, I suppose,
5  will there be language and cultural barriers, et cetera,
6  that would prevent Metzler from supervising Milberg Weiss
7  and not have it work the other way around?
8      MR. RIGRODSKY: Again, meaning no disrespect for
9  my opponent, more spaghetti, Your Honor.
10      First of all, the res judicata issue is a
11  complete red herring, a "straw man" argument for a number of
12  reasons. First of all, I do want to point out to the Court
13  that Metzler has been appointed lead counsel in securities
14  fraud cases four times, four different courts.
15      THE COURT: That's great. But I don't know
16  anything about those cases.
17      MR. RIGRODSKY: Okay, Your Honor.
18      THE COURT: I'm just thinking about what happens
19  if we actually get a result, you folks are the lead
20  plaintiff and then, you know, the owners of the fund -- I
21  can't remember the two numbers attached to the funds --
22  decide: Well, we don't like that. We're suing again and
23  nothing that happened there binds me.
24      How foolish is the United States civil justice
25  system going to look like if that happens? So give me the

23

1  comfort that they're telling me I ought not have.
2      MR. RIGRODSKY: Res judicata will not be an
3  issue for a number of reasons. First of all, with respect
4  to res judicata, you have to look at what the cases say.
5  It's really an issue about whether our plaintiff is subject
6  to unique defenses. The defense would be, defendants would
7  try to argue our plaintiff is a German fund, German entity,
8  would not respect the judgment entered against it in the
9  United States, would go over to Germany and seek to
10  relitigate. Molson is -- Molson Coors is an incorporated in
11  Delaware, is headquartered in Colorado. All of the acts
12  that we allege that occurred here occurred in the United
13  States. Importantly, very importantly, and critically,
14  Metzler decided to sue Molson, participate in this case in
15  the United States. Now, if the Court -- I'll get to that in
16  a second.
17      And also Metzler says in its affidavit that it
18  purchased the stocks in the New York Stock Exchange. So,
19  yes, you have a foreign company, bought shares in an
20  American company on the American Exchange alleging
21  violations of the federal securities laws in the United
22  States. Even if Metzler wanted to go to Germany, assuming
23  it lost, there is no possible way that I could imagine that
24  a German court would even obtain subject matter and personal
25  jurisdiction over the defendants who have no contacts in

24

1  Germany, none of the alleged wrongdoing occurred in Germany.
2  The shares weren't even bought on a German exchange.
3      THE COURT: Now, let me stop you because, maybe
4  I have misunderstood their argument and so I don't want to
5  be causing trouble where it is, but let me tell you what I
6  thought I understood the import of their argument to be:
7  Not that Metzler, having lost, would go back to Germany but
8  that the owners of funds, the folks that the Metzler people
9  say we're attorney in fact for will, in Germany, say: Wait
10  a second, that result doesn't bind us. We never got behind
11  that. There is nothing in German law that entitles them to
12  do that; to go off and claim that those unusual class action
13  provisions in the United States don't effect us.
14      So don't talk about what would happen if Metzler
15  did something. Meet their hypothetical. Why does that
16  hypothetical that they raise really pose no problem?
17      MR. RIGRODSKY: Your Honor, I think the argument
18  they made was addressed to Metzler, but even if they didn't
19  address it to Metzler, it's sort of we're going full circle
20  again.
21      THE COURT: Let me stop because if I
22  misunderstood ...
23      MR. ROSENFELD: I believe Your Honor is correct.
24  It was on behalf of the individual investors of the Metzler
25  funds who don't even know about this litigation. There has

---

**25**

1 been no representation they know about the litigation. They
2 can file their own lawsuit tomorrow, anywhere.
3         THE COURT: Okay. That's --
4         MR. RIGRODSKY: Your Honor.
5         THE COURT: Go ahead, Mr. Rigrodsky. And I
6 apologize, I'm having a hard time. Mr. Rigrodsky.
7         MR. RIGRODSKY: Correct.
8         THE COURT: Thank you. I know your name. Sorry
9 about that.
10        MR. RIGRODSKY: Not a problem. It happens every
11 day.
12        I think, here, again, you are hearing more
13 speculation. If the attorney in fact swears out an
14 affidavit that I have full authority to bring litigation on
15 behalf of my clients, that I make all of their investment
16 decisions and I have decided to bring the case in the United
17 States, those funds are bound. There is absolutely no way
18 that those funds are going to break away and somehow say I
19 was deceived, I was duped, I was fooled. We're going to
20 file a case in Germany.
21        And what I'm saying to the Court even if they
22 did that, even the most, frankly, the most out there
23 hypothetical, even if they went and did that, what would
24 happen? We have very capable and excellent attorneys on
25 defense side. Molson doesn't sell beer in Germany, nor does

---

**26**

1 Coors as far as I know, at least as we allege in our
2 complaint. They are headquartered in the United States. I
3 don't think they even have an office or any presence in
4 Europe, let alone Germany. None of the defendants are
5 residents in Germany. It doesn't trade on the German
6 exchange. It doesn't trade in Europe. It trades in the
7 United States. The alleged wrongdoing occurred in the
8 United States.
9         THE COURT: So --
10        MR. RIGRODSKY: I can't see any conceivable
11 basis for any court in Germany to properly assert
12 jurisdiction over any of these defendants.
13        THE COURT: So if I am understanding you right,
14 the response is not that what they propose on the Plumber
15 side couldn't happen, it's that if they tried it, there
16 wouldn't be jurisdiction.
17        MR. RIGRODSKY: Two responses. One, it couldn't
18 happen because it's not true. Because they know about
19 the -- the funds know about the litigation. Their attorneys
20 in fact have signed declarations on their behalf and I have
21 to believe my clients are telling the truth when they submit
22 declarations to a federal court.
23        Now they're saying, well, who knows? Maybe they
24 do, maybe they don't. I don't know. Maybe they will go
25 sue. And what I'm saying the Court is even if you accept

---

**27**

1 their argument at face value, which, by the way, is not
2 proof and doesn't meet the requirements of the PSLRA, even
3 if they tried it, there is no way that they're going to get
4 jurisdiction over these entities and these defendants in a
5 German court.
6         THE COURT: Okay.
7         MR. RIGRODSKY: Which is highly distinguishable
8 from all the cases they cite, including the DaimlerChrysler
9 case. Stock that trades on foreign exchange.
10 DaimlerChrysler is headquartered in Germany, a foreign
11 purchaser. And the question in these cases uniformly is, is
12 there some extraterritorial application of the securities
13 laws?
14        That is not even an issue here because if you
15 take their argument to its logical extreme, it means that
16 any foreigner who wants to serve as a plaintiff in a
17 securities fraud case who bought stock in United States
18 markets, subject to the fraud in the market presumption,
19 suing United States entity, couldn't bring a suit because,
20 who knows, maybe the home court, someone filed an action in
21 the home court they decided to file an action in the home
22 court and it would be res judicata and, therefore, there
23 would be no unique defense against that plaintiff. It would
24 just be untenable.
25        THE COURT: Well, I think I understand your

---

**28**

1 argument, although I have to say I don't think it goes quite
2 as far as your claiming it does. Because if it were just
3 Metzler and it was their money, I guess we wouldn't be
4 having this discussion, but it's not Metzler's money, it's
5 the money of the funds that Metzler represents that gives
6 them any position to argue this at all. So it's not any
7 foreigner, it's any foreigner purporting to hold and invest
8 monies for other foreigners that's the issue.
9         But, okay, I have your argument. Speak to me,
10 if you would, about the practical issues -- distance,
11 language, culture, who's really going to be driving the
12 boat.
13        MR. RIGRODSKY: I can say, Your Honor, with
14 absolute certainty, that distance, language, culture are not
15 going to be an issue whatsoever.
16        First of all, Metzler submitted documents in
17 English. They speak English. They manage $25 billion in
18 assets. They are a global international firm.
19        In this day and age, to suggest that Germany is
20 "too far from the United States" is frankly again more
21 spaghetti. It's completely untenable. There are folks out
22 in Japan and China and all across the globe that bring suits
23 every day in federal courts, not only in securities cases
24 but other cases. I'm sure this Court has seen it numerous
25 times.

29

1    These folks have gone through the time and
2 energy and effort not only to put in a certification and
3 join in the motion and to review all the documents, but then
4 to go ahead and also submit the supplemental affidavits in
5 support of their position. So if you just take what has
6 occurred so far in this case; and, frankly, I'd like to get
7 away from this and get into the substance of the case as
8 soon as we can; you will see that even in this early part of
9 the case, they have been very vigorous in their efforts.
10    THE COURT: Give me an example. Tell me, when
11 you say I'll see they've been very vigorous, be specific
12 with me. What have they done that shows me that they're
13 involved?
14    MR. RIGRODSKY: Okay. Well, first of all, they
15 responded to the attacks on their papers by having two
16 senior officers including the chief legal officer get
17 involved, participate, write an affidavit. Okay. They
18 care. They could have said: No, we're being attacked by
19 these movants. You know, it's not worth it. It's just, who
20 cares. We manage a lot of funds, a lot of money and we just
21 don't care. Okay. They do care.
22    They actually put it on the line. They put
23 sworn statements into the court. They've also reviewed all
24 of our papers. They've joined in the motions. They went to
25 the trouble of filling out certifications. They

30

1 investigated their losses.
2    They are also attacked by movants without any
3 basis at all. They claim that, you know, there may have
4 been other transactions either in the Molson Coors entity or
5 the Coors entity. They went through their records, which is
6 no easy task, and determined that it was to the true. And
7 they set forth that in their affidavit.
8    THE COURT: Who is the contact? And tell me
9 about who the purported client contact is, what their
10 experience is, where they're located, who they're in touch
11 with, where are they today.
12    MR. RIGRODSKY: Okay. My understanding is that
13 the primary contact in this case are the signatories to the
14 affidavit. They liaise with a partner of ours of counsel in
15 New York named Deborah Sturman who is somebody who works
16 with our firm who has contact with and is a German speaker
17 and has contact with this entity as well as others in
18 Europe, a lot of large funds. So she is the primary
19 contact. She is a liaison contact but of counsel to my firm
20 with these two individuals.
21    They are the ones that get copies of the
22 pleadings. They're the ones that get copies of the papers.
23 And they're the ones that have been updated and informed
24 about the litigation because they're the ones that submitted
25 the affidavit in support of the motion.

31

1    I'm going to suggest to the Court that if the
2 Court has any -- just looking forward, the Court doesn't
3 receive the comfort it needs and wants to see something in
4 the record with respect to what I consider to be the
5 baseless attacks on our funds, we could always submit
6 supplemental authority from the actual funds themselves, if
7 that is possible. I don't know if the funds have separate
8 legal voice or authority outside of Metzler who has complete
9 control over the assets and the litigation elements of these
10 funds. So we're not talking about some fund somewhere that
11 is managed by somebody else and they have sort of an
12 informal relationship. It's my understanding these funds
13 are just pools of assets managed by Metzler. So I can't
14 tell you to this day that there really is anybody at these
15 funds to bring a case on their own, if that was even
16 conceivable. And, frankly, again it's inconceivable to me
17 that somebody in this fund, at this fund would contradict
18 the very entity that manages them, that makes all their
19 legal decisions, that makes their investment decisions and
20 say, oh, no, we don't want to sue in the United States.
21    THE COURT: Okay. What is the character of the
22 fee arrangement?
23    MR. RIGRODSKY: There is no -- excuse me, Your
24 Honor. There is no set fee arrangement at this time. My
25 understanding is that the fee will be negotiated as the case

32

1 proceeds. So we don't have -- there is no fee agreement
2 that we have in place right now.
3    THE COURT: Well, is that an appropriate concern
4 for me to have in mind?
5    MR. RIGRODSKY: I don't think so, Your Honor,
6 because the Court -- if there is to be a settlement of this
7 litigation, and that's a long way off, or if there is to be
8 litigated judgment in our favor, the Court will have,
9 because it is a class action case, the Court is going to
10 have ultimate oversight over the award of fees in a class
11 action.
12    THE COURT: Don't the cases, since the PSLRA,
13 indicate that the Court ought to be tuned into that a lot
14 sooner than the end game at settlement? Isn't that one of
15 the primary purposes of the PSLRA is to make it such that
16 folks like me are tuned into that, not at the end of the day
17 when everybody has an incentive to go along to get along but
18 early in the process?
19    MR. RIGRODSKY: I think it should be a concern
20 of the Court, and obviously you have seen some courts order
21 an auction for representation of a particular case.
22    I think you see those in a landmark-type cases
23 like Cendant and others where there is frankly, to be
24 perfectly frank, not a heck of a lot of dispute about
25 liability. And what the court is trying to avoid is an

SHEET 9

**33**

1  award of fees that is, frankly, beyond the pale, so what
2  they did is they may, in certain circumstances, I don't
3  think they're present here, conduct an auction to determine
4  which counsel would represent the class, the lowest possible
5  amount contractually.
6      Here, I don't want to hurt my case but this is
7  no slam dunk case and, therefore, I think the concern about
8  fee issue really doesn't turn on or impact at all the issue
9  of who the plaintiff may be. It may involve at most an
10  issue of who would be plaintiffs' lead counsel.
11      But if you look at the Cendant factors and the
12  PSLRA factors, fee arrangement, size of the fee, et cetera,
13  et cetera, are not part of the considerations. The Court
14  may decide in its discretion to say, fine, Metzler is
15  appointed lead counsel but you have a separate concern about
16  fees. There is a presumption though in the PSLRA that
17  counsel that is selected, the most adequate plaintiff,
18  they're the one that ultimately should represent the
19  putative class in the case going forward.
20      THE COURT: All right. Give me just a moment
21  here to make sure there is not anything else.
22      I don't think there is anything else I had on my
23  list of things I wanted to ask you. Is there anything else
24  you wanted to put before me, Mr. Rigrodsky?
25      MR. RIGRODSKY: No, Your Honor. I think again

**34**

1  that looking at the, all the factors that are laid out in
2  Cendant and PSLRA, we meet them.
3      THE COURT: All right. Thank you very much.
4      MR. RIGRODSKY: One more. Your Honor, just
5  again, again, talking about evidence, I urge the Court to
6  look at the competing affidavits that were submitted in the
7  DaimlerChrysler case which the movants initiated, suggesting
8  there was some administrative problem with possible German
9  litigation. Their expert actually said that as long as
10  notice went to the German classholders, it wouldn't be an
11  issue and the competing affidavit by Professor Hess
12  submitted in DaimlerChrysler that we attached actually said
13  that a plaintiff, German plaintiff who decides to
14  participate in the U.S. class action waives any right except
15  that person that has any right to bring that case to
16  Germany.
17      THE COURT: All right. Thank you.
18      MR. RIGRODSKY: Thank you, Your Honor.
19      THE COURT: Mr. Rosenfeld.
20      MR. ROSENFELD: Good morning, Your Honor.
21      THE COURT: Good morning.
22      MR. ROSENFELD: I'll have to respond to, but
23  I'll just like to start off, Your Honor, by responding to
24  what the Court had initially asked us, and that is how we
25  came to represent our clients in this matter.

**35**

1      Your Honor, our client is a multi-billion dollar
2  pension fund located here in the United States and is a long
3  term client of our firm who represented, on numerous other
4  occasions, including in the TX insurance litigation in Texas
5  in which we recovered approximately $100 million for the
6  class.
7      THE COURT: I don't have any question about the
8  quality of either firm. I'm sure both, I've take even look
9  at what you gave me about your firms. They're both well
10  known. I think it's a little ironic because it has a little
11  scent of a family feud about it.
12      MR. ROSENFELD: We find ourselves in this
13  position pretty often, Your Honor.
14      THE COURT: Yes. But, you know, could either of
15  you folks do it? I think that is pretty obvious. I don't
16  have any concern about that.
17      As to your representation before, good, well and
18  good.
19      MR. ROSENFELD: No, I'm just pointing out this
20  client has achieved recoveries for clients, just simply
21  stating that fact, and it is a long term client of our fund.
22  We notified. This client, like many of our other clients,
23  are participants in our portfolio monitoring program which
24  is the program our firm has set up, and as I know the
25  Milberg Weiss firm has a similar program in which we advise

**36**

1  institutional investors of significant losses that they
2  sustained in their portfolios and with reference to the
3  facts of the case and give them the option to participate as
4  lead plaintiff or not, which I believe is directly comports
5  with what Congress had intended, institutional investors
6  receive prompt notice of the filing of these actions and the
7  opportunity for appointment as the lead plaintiff in this.
8      And this client, Your Honor, also has been
9  represented by Milberg Weiss in the past so they are fully
10  aware of who this client is and what its capability is and
11  its commitment to these type of cases is.
12      THE COURT: Okay. Well, let's talk about the
13  particular concern that I peppered Mr. Rigrodsky about. And
14  I want to start by asking you, why should I be worried about
15  Metzler if, in four or five different district courts around
16  the country, when they've stepped forward to be lead
17  plaintiff after review, courts have said, "You know what?
18  Okay by me." Why is this case different if they've been
19  around this before? What makes them unfit now?
20      MR. ROSENFELD: Well, Your Honor, in those four
21  or five cases, I think four of those five, the court entered
22  an order either by stipulation of the parties or it was an
23  unopposed motion and these issues were not even raised, and
24  the fifth opinion, Your Honor, the order from the Court was
25  simply an order appointing that Movant Metzler as a lead

**37**

1 plaintiff, and there is no indication these issues were
2 discussed. And that the Court considered them in appointing
3 Metzler. And it happens often, Your Honor. If the court is
4 not made aware of certain arguments made against the
5 movants, they'll just sign an order.
6     THE COURT: Okay. Are you aware of there having
7 been any problem with their serving as lead plaintiff in any
8 of those cases? Whether it was opposed or not, at the end
9 of the day, are you aware of anything that indicated they
10 failed in their responsibilities as a lead plaintiff?
11     MR. ROSENFELD: I'm not aware of that. I'm not
12 aware of them being certified as a class member of the case
13 either, Your Honor. It's not to say they haven't. I'm just
14 not aware of it. I don't know if they're aware of any
15 instances of that either. But I do not believe they are
16 certified as a class member, as a class representative.
17     THE COURT: Okay.
18     MR. ROSENFELD: At which point, Your Honor, I'm
19 certain the defendants will raise all the necessary
20 arguments against them.
21     THE COURT: So help me out here. Are you
22 suggesting to me that, we get past this stage, and just as a
23 matter of argument, say I were to accept the Metzler folks
24 as the lead plaintiff. Your assertion is that I ought to be
25 expecting the defendants to say, "Hey, Metzler can't be the

**38**

1 class representative because there is not typicality, there
2 is not adequacy of representation?" Am I reading too much
3 into what you're telling me.
4     MR. ROSENFELD: Well, I don't know if they're
5 attack the adequacy of representation of counsel but I think
6 there are certain issues, mimicking our motion right here,
7 with much more force.
8     THE COURT: Would you be doing that,
9 Mr. Richards?
10     MR. RICHARDS: Your Honor, that's not a matter
11 that we've considered as yet.
12     THE COURT: All right. So what you are saying,
13 that you don't think, in any of the cases where Metzler has
14 been designated lead plaintiff, that they've gotten past the
15 point of --
16     MR. ROSENFELD: Class certification.
17     THE COURT: -- class certification.
18     Mr. Rigrodsky.
19     MR. RIGRODSKY: Your Honor, as far as I know,
20 none of those cases have been dismissed and I can't tell
21 the Court, with absolute certainty, the classes were
22 certified. I certainly can provide the Court with
23 supplemental docket sheets and information about those
24 cases, if the Court requires it.
25     THE COURT: Okay. You know what I would be

**39**

1 interested in, if those cases are still in process, I do
2 want some supplemental information. And one of the things I
3 want to know is if they've gotten past the point of being
4 designated as lead plaintiff and they're in the process of
5 class certification or that's been addressed in any fashion,
6 what were the positions that the defendants raised, if any,
7 to argue that there was a problem with certification because
8 of the character of the lead plaintiff.
9     In short, I want to know whether the prediction
10 that Mr. Rosenfeld is giving me, that when it comes to it,
11 Mr. Richards will be making the same arguments with more
12 force, has any basis in reality, given what has gone before.
13 That's not to say it couldn't happen, but is there really a
14 record of anything that would indicate that that is the
15 case?
16     MR. ROSENFELD: Well, Your Honor, I can
17 certainly point you in the direction of Third Circuit
18 authority in which investment advisors had been subjected
19 to this attack on class certification. And that is the
20 Rent-Way decision.
21     THE COURT: Excuse me.
22     MR. ROSENFELD: The Rent-Way decision in Western
23 Pennsylvania.
24     THE COURT: The Western District. Right, I read
25 it.

**40**

1     Now, in arguing for that position, the folks on
2 the other side have said, have cited a number of cases
3 saying that is just not an issue. Where an attorney in fact
4 relationship exists, that advisor argument falls apart. So
5 go ahead and respond.
6     MR. ROSENFELD: Your Honor, those are only
7 partial citations to those cases and do not fully reflect
8 the facts of those cases. And most of those cases actually,
9 Your Honor, require investment advisors who seek to become a
10 lead plaintiff to demonstrate more than they just have, make
11 a blanket statement they are attorney in fact to their
12 clients.
13     And, Your Honor, as I was explaining before, a
14 lot of these investment advisors have authority to act as
15 attorney in fact for their clients because otherwise every
16 time they want to make a trade they would have to go to
17 their client, get written authorization and it would be
18 completely unmanageable and defeat the purpose of having a
19 manager of your funds. That authority to act as attorney in
20 fact for your client does not necessarily give you the right
21 to bring a lawsuit on behalf of that fund.
22     THE COURT: And when you say "it does not
23 necessarily," now you take me to an important point in your
24 opponent's argument. I hear Mr. Rigrodsky saying to me:
25 Judge, these folks, you've got nothing, so that all they

**41**

1  can do is come in here and say, well, maybe they don't have
2  authority. We've given you an affidavit saying we do have
3  authority. We're here because we have authority and we want
4  -- and we're fully authorized to go forward. And the most
5  they can do is say maybe not.
6       What is your response?
7       MR. ROSENFELD: Your Honor, I'm not making it
8  up. The cases do explicitly say that.
9       THE COURT: I asked you as a question of fact,
10 not as a question of what the cases say. They say we have
11 authority. We're telling you we've got authority. We're
12 swearing we've got authority.
13      What do you have to indicate to me that they
14 don't have the authority? Because we keep talking around
15 about this, but as I'm digging down on it, I'm not -- I'm
16 trying to get to you respond to the factual assertion, not
17 the legal assertion.
18      MR. ROSENFELD: Of course, Your Honor.
19      Well, first of all, before I get -- actually,
20 let me refer the Court to the declaration which was
21 submitted by -- supplemental declaration submitted by
22 Metzler in which they talk about none of Metzler's other
23 funds transacted Molson securities. They make a
24 representation -- actually do, you want me to address this
25 now or later? This is another aspect of the declaration

**42**

1  which I can address now or later.
2       THE COURT: You can address something else if
3  you would like, but I'm mostly interested in hearing --
4       MR. ROSENFELD: Let me get to the next one. I
5  apologize. I apologize. I was one paragraph off, Your
6  Honor. They say Metzler Investment controls the funds and
7  acts as attorney in fact for them. Metzler Investment has
8  full and complete authority and discretion to purchase
9  securities for each of the funds and institute legal action
10 on their behalf, including serving as lead plaintiff in in
11 this action.
12      Now, Your Honor, the cases, this language does
13 not mimic the language of the cases which discuss attorney
14 in fact.
15      THE COURT: Okay.
16      MR. ROSENFELD: Those cases, Your Honor, require
17 at their sole discretion to make purchases in an account in
18 line with the investment advisor.
19      Here, it does not say here. It says they have
20 authority and discretion to purchase -- not sole discretion,
21 discretion.
22      THE COURT: So you're trying --
23      MR. ROSENFELD: And those cases require you to
24 have sole discretion to make -- because what you are doing
25 essentially, the investment manager is seeking to become the

**43**

1  purchaser. Because under the Supreme Court precedent in
2  Blue Chip Stamps, the purchaser is the only one who has
3  standing to bring a claim for securities fraud.
4       Here, they're seeking to become you. They're
5  seeking to become the purchaser, the investor. In order to
6  do that, they are the ones that had to have sole discretion
7  over the account. They have not made the representation in
8  their declaration, Your Honor.
9       THE COURT: Okay. Do you want to respond to
10 that, Mr. Rigrodsky.
11      MR. RIGRODSKY: Absolutely, Your Honor. Because
12 Mr. Rosenfeld should pay attention to what the Court held in
13 Weinberg v Atlas Hair, which is 216 FRD 248, cited in our
14 papers. I'm quoting from page -- it's a Lexis printout. It
15 looks like 254 of the opinion.
16      "Generally, a client's grant of authority to an
17 investment manager to purchase stock for his or her behalf
18 does not also confer authority to commence a suit on his or
19 her behalf. However, when the investment advisor is also
20 the attorney in fact for its clients with unrestricted
21 decision-making authority, the investment advisor is
22 considered the 'purchaser' under the federal securities
23 laws with standing to sue in its own name." Citing Ezra
24 Charitable Trust, a decision of the Western District of
25 Pennsylvania within this Circuit.

**44**

1       It goes on to say:
2       "The Ezra Charitable Trust court relied on a
3  declaration stating the investment manager was the attorney
4  in fact with authorization to bring suit to recover for
5  investment losses. Similarly here, the affidavit of Sean
6  Handler of the firm of Schiffrin Barroway, includes a signed
7  declaration of Ella Smith of Mezner stating that Mezner is
8  the attorney in fact for its clients, with full power to
9  bring suit for their investment losses.
10      The affidavit says, among what Mr. Rosenfeld
11 just recited to the Court, in paragraph five:
12      "As authorized signatories, we are fully
13 authorized to represent the fund in all legal actions that
14 arise from their investment, including serving as lead
15 plaintiff in this action."
16      I think it's absolutely crystal clear from the
17 affidavit, from the proof that we have submitted on the
18 record, and again I don't think it's our burden to prove
19 that we are the most adequate plaintiff, but if it is our
20 burden we have proven it. We've submitted an unrebutted
21 affidavit, sworn declaration, completely in accord with
22 controlling authority within this District and Circuit.
23      THE COURT: All right. Thanks.
24      Go ahead. Shoot.
25      MR. ROSENFELD: Well, Your Honor, that paragraph

**45**

1 in the declaration which Rigrodsky just cited, which says,
2 "As authorized signatories, we are fully authorized to
3 represent the fund in all legal actions" seems to imply to
4 me that their authority stems from the fact they're
5 signatories, not from any explicit provision in their client
6 agreement. And many courts have required investors such as
7 Metzler to submit a copy of their client retainer agreement
8 demonstrating that, look, this is the person which says
9 we're authorized to bring litigation. Otherwise, there is
10 no proof that they actually have that authority.
11     THE COURT: When you say "otherwise, there is
12 no proof," what you are saying is a sworn statement is
13 inadequate?
14     MR. ROSENFELD: Well, a sworn statement which
15 seems to imply their authority stems from the fact they're
16 signatories and not from any explicit provision in their
17 client agreement. Their clients have no idea this case is
18 even being brought.
19     THE COURT: Now, you say that their clients
20 don't have any idea. What is your basis for saying that?
21     MR. ROSENFELD: They haven't made a
22 representation. Other courts where investment advisors
23 sought to become lead plaintiffs, they submitted
24 declarations and certifications from their clients saying
25 they have been expressly authorized by their clients to

**46**

1 pursue this litigation on their behalf.
2     THE COURT: Do you have any authority for saying
3 that that is required? Give me a cite.
4     MR. ROSENFELD: Well, Your Honor, in the Smith
5 vs. Prima Specialties case, the Court said the movant, who
6 is an investment advisor, has not submitted certification
7 from any of the entities it represents and, therefore, it's
8 not even a single investor and cannot pursue its action on
9 that basis.
10     THE COURT: What is the citation for that case?
11     MR. ROSENFELD: Smith vs. Prima Specialities,
12 it's 206 Federal Supp. 2d 627, at 634.
13     THE COURT: All right.
14     MR. ROSENFELD: Your Honor, if I could go back
15 to that EZRA Charitable Trust case where the Court
16 explicitly said in that opinion, not the adversarial
17 opinion, but the opinion in this Circuit, it said it is
18 undisputed that Kramer, who is the investment advisor in
19 that case, independently determined which securities to
20 purchase for its own accounts.
21     There is no representation here that that is the
22 case. That is undisputed that they are the ones who
23 independently decided which stocks to purchase.
24     THE COURT: Well, wait a second. What is your
25 basis for disputing it?

**47**

1     MR. ROSENFELD: I'm not disputing it. I'm
2 saying they haven't provided any evidence that that is the
3 case.
4     THE COURT: If they provide me an affidavit
5 which reads in the fashion that it reads, are you saying
6 it's not a fair inference from the affidavit?
7     MR. ROSENFELD: From this affidavit in the
8 record right now?
9     THE COURT: Yes, that affidavit. That it's not
10 a fair inference from that affidavit. It may not include
11 the word "sole" the way you are saying it ought to.
12     MR. ROSENFELD: Right.
13     THE COURT: But where they have an affidavit
14 that says, "We're the folks, we make the decisions, we have
15 the authority to bring this suit." Now you are saying that
16 there is some basis for disputing that, and I guess I'm
17 trying to push you a little bit to say what do you have to
18 say there is a dispute other than looking at the wording of
19 the affidavit and saying, well, maybe there is a space here,
20 a gap there. Do you have any facts to indicate --
21     MR. ROSENFELD: I have no facts --
22     THE COURT: -- that it's contrary --
23     MR. ROSENFELD: I do not have any facts but I do
24 not have any representations to the contrary either. And
25 that's why I'm just raising it as a concern, Your Honor.

**48**

1     THE COURT: Well, when you say no
2 representations to the contrary, is it an unfair inference?
3 They're telling me not to worry about it because the
4 affidavit, fairly read, says they've got the authority to do
5 what they say they're here to do. I want to you tell me if
6 you have a basis for saying that's not a fair inference.
7 Articulate it.
8     MR. ROSENFELD: Your Honor, as this Court knows,
9 number one, it is very competent counsel. They're familiar
10 with the case law and the buzzwords in the case law, and I'm
11 sure they made every effort to craft this declaration to
12 include the necessary buzzwords of this Circuit. The fact a
13 necessary buzzword is missing is a glaring omission.
14     THE COURT: Which one?
15     MR. ROSENFELD: And that would be the "sole"
16 discretion to purchase on sale securities.
17     THE COURT: The word "sole."
18     MR. ROSENFELD: "Sole," or "complete and full,"
19 whichever.
20     THE COURT: Okay. Let me ask you this, Mr.
21 Rigrodsky. Even if you think it's an omission that's not
22 meaningful, are you prepared to represent that your client
23 has the sole authority as Mr. Rosenfeld argues is required
24 by the law?
25     MR. RIGRODSKY: I am prepared, Your Honor. I

49

1  never want to say a word that isn't necessarily in a
2  declaration. I didn't draft the declaration, the client
3  did. The client. If the Court requires the word "sole"
4  based on its view of the law, I certainly will provide a
5  supplemental affidavit putting that word in.
6         These aren't buzzwords. These are words that
7  have been sanctioned by courts within this District as proof
8  of showing that you have requisite authority. I will say if
9  you look at the affidavit, it says that Metzler controls the
10 funds.
11        THE COURT: Okay. Let's get past this now, and
12 let me ask you this, Mr. Rosenfeld: Assume that I was
13 comfortable that they had the authority to do what they say
14 they have the authority to do here. Is the game up? Does
15 that do it?
16        MR. ROSENFELD: That does not do it.
17        THE COURT: They have $2 million, you have $1
18 million, they win?
19        MR. ROSENFELD: Well, the game is not up and
20 that's what the holding in Smith vs. Prima Specialties,
21 again from the District of New Jersey, states. "The
22 client's mere grant of an authority to an investment
23 manager to invest on its behalf does not confer authority to
24 initiate suit on its behalf. In fact, nothing before the action has
25 Court even indicates that the members know the action has

50

1  been commenced."
2         THE COURT: Okay. I guess I'm not being clear.
3  I'm just asking, take it as a given for purposes of the next
4  question that I accept they've got the authority to do what
5  they're doing; okay?
6         MR. ROSENFELD: Uh-huh.
7         THE COURT: And that I'm not persuaded that the
8  law requires that they go -- if they've got authority to act
9  in the name of these investors, that they're not obligated
10 under American or German law to go and notify everybody.
11 They have the authority to act, they're acting. Take that
12 as a given.
13        MR. ROSENFELD: Okay.
14        THE COURT: Does that conclude -- I mean, does
15 that exhaust your arguments for why they shouldn't be lead
16 plaintiff, or is there some other thing we should be talking
17 about?
18        MR. ROSENFELD: Well, there is the standing
19 issue, Your Honor.
20        THE COURT: And --
21        MR. ROSENFELD: And that is the fact that if you
22 look practically at this case, at the end of the day, when
23 it comes time to file a proof of claim, Metzler would not be
24 filing a proof of claim because it has no financial
25 interest. It has no economic loss in this case. And,

51

1  Your Honor, under the recent Supreme Court case in Dura
2  Pharmaceuticals, the plaintiff is required to plead and
3  prove how he suffered an economic loss.
4         THE COURT: Now, how is that different from what
5  you just argued? I mean if they are the folks who have the
6  authority to assert the losses, what sort of ledger domain
7  is going on here that takes me back to there is no loss?
8         MR. ROSENFELD: Well, they're not the entity.
9  They're represented. They might have authority to do it.
10 You can't assign your right under the securities laws. You
11 have to be the actual purchaser.
12        THE COURT: Well, help me out. How is that any
13 different from the argument you've just been making? If the
14 law says an investment advisor acting as an attorney in fact
15 has standing to bring a suit, how is it possible that at the
16 end of the day they could not file a proof of claim? If
17 they've got standing to act in the name of the people, what
18 changes between that Point A and Point Z to suddenly deprive
19 them of the power to assert the loss that they've been
20 asserting throughout?
21        MR. ROSENFELD: Well, as I already explained to
22 Your Honor, that is our position that they would need to
23 have -- they're not the ones that would actually reap the
24 benefit at the end of the day. And, therefore --
25        THE COURT: Okay. I got you. It's your story

52

1  and you are sticking to it.
2         MR. ROSENFELD: That's our story. Exactly, Your
3  Honor.
4         THE COURT: All right. Well, I appreciate
5  everybody's time here. I know we spent a lot --
6         MR. ROSENFELD: Your Honor, if I could add a
7  couple of other items?
8         THE COURT: Yes, real quickly.
9         MR. ROSENFELD: Real quick. First of all, your
10 Honor had started off by stating that the PSLRA was intended
11 to prevent lawyers from litigation and empower investors,
12 institutional investors to control these cases. You know,
13 it's not clear to me or to anyone who read the declaration
14 and certain of the briefing here if the client is fully
15 apprised of what is going on here.
16        There are numerous references at certain
17 points, including the declaration and the opposition brief
18 to Milberg Weiss and Murray Frank as lead counsel, and it's
19 proposed co-lead counsel, and including the declarations
20 submitted by the client. It's not clear if they believe
21 Murray Frank is involved in this case, if they actually have
22 a role, if their relationship is with Murray Frank or not,
23 and based on that, I think it's important we have
24 clarification from the client we know who is calling the
25 shots over here. Is it the client that decided they want to

**53**

1 have both firms? Is it Milberg Weiss that decided they
2 didn't want to put forward the other firm? There has been
3 no clear representation regarding that.
4 　　　THE COURT: All right. Stop.
5 　　　Mr. Rigrodsky, why don't you answer that.
6 　　　MR. RIGRODSKY: Your Honor, our proposed order
7 has Milberg Weiss as sole lead counsel in this case. Murray
8 Frank is co-counsel in one of the other cases. There will
9 be one sole lead counsel and that will be Milberg Weiss.
10 　　　THE COURT: Excuse me.
11 　　　MR. RIGRODSKY: There will be one sole lead
12 counsel, according to our motion and form of order submitted
13 to the Court. That would be Milberg Weiss.
14 　　　THE COURT: Right. And they're arguing to me
15 that apparently the folks at Metzler don't know that.
16 　　　MR. RIGRODSKY: It's not true, Your Honor,
17 because the people at Metzler have received copies of all
18 our papers. They've seen who was -- they've authorized us
19 to seek appointment as sole lead counsel. They have seen
20 all the filings in this case.
21 　　　MR. ROSENFELD: Your Honor, Mr. Rigrodsky
22 represented a moment ago the client drafted the declaration.
23 The declaration in paragraph one says, "approval of its
24 selection of Milberg Weiss Bershad & Schulman, LLP and
25 Murray Frank & Sailer, LLP (phonetic) as lead counsel."

**54**

1 　　　THE COURT: Okay. Give me your next point
2 　　　MR. ROSENFELD: My next point, Your Honor, and
3 this is my final point, is that by putting forward an
4 investment advisor as a lead plaintiff and by including its
5 transactions that are listed on certification, there is a
6 very distinct possibility, very likely possibility that the
7 clients of Metzler have undisclosed gains in the purchases.
8 　　　THE COURT: What is that again?
9 　　　MR. ROSENFELD: They have undisclosed gains in
10 their most important purchases. They have other accounts.
11 Their money is not only tied up with Metzler. They could
12 have a personal account. They'll could have accounts
13 invested in other money managers. There is a strong
14 possibility that they purchased shares in other accounts and
15 they could have offsetting gains that needs to be disclosed
16 and reported here and they have not been.
17 　　　THE COURT: All right. Mr. Rigrodsky. And let
18 me restate it so I'm sure I understand it. You are saying
19 that the funds don't really have losses, maybe, because
20 investors in the funds could have offsetting gains and,
21 therefore, the losses represented in the funds are perhaps
22 not --
23 　　　MR. ROSENFELD: Not complete.
24 　　　THE COURT: -- not real.
25 　　　MR. ROSENFELD: Or not even complete, Your

**55**

1 Honor.
2 　　　THE COURT: All right. Let me hear the other
3 side.
4 　　　MR. RIGRODSKY: Your Honor, the purchaser and
5 seller of the securities for purposes of the PSLRA is
6 Metzler because of its authority. We've also included a
7 paragraph three of the affidavit that none of Metzler's
8 other funds transacted in Molson securities. I cannot make
9 a representation to the Court as to individuals who may be
10 separate.
11 　　　THE COURT: All right.
12 　　　MR. RIGRODSKY: Thank you, Your Honor.
13 　　　THE COURT: Okay. Is there anything else you
14 want to put on the record, sir?
15 　　　MR. ROSENFELD: One last point, Your Honor. And
16 I thank the Court for its indulgence.
17 　　　Your Honor, investment advisors typically have
18 other institutional investors as clients. Your Honor, I'm
19 aware of another scenario in which one of the investment
20 advisors talks about becoming the lead plaintiff, sought the
21 approval of all its clients, approached one of its clients
22 who is Goldman Sachs who invested money with them and was
23 told, hey, they want nothing to do with class actions, count
24 us out. And they were forced to reduce the financial
25 interest by that, by Goldman Sachs' share.

**56**

1 　　　Your Honor, in order to actively represent their
2 financial interest in this action, it's critical that they
3 get approval of their clients to insure that their clients
4 want to move forward with this.
5 　　　THE COURT: Okay. And right now I have an
6 affidavit that says they do have approval and authority to
7 do it. It says we're authorized to make these decisions and
8 we're making it.
9 　　　MR. ROSENFELD: Your Honor --
10 　　　THE COURT: And all I'm hearing now is another
11 spin on the same argument so I think I got your position.
12 　　　MR. ROSENFELD: Okay. Thank you, Your Honor.
13 　　　THE COURT: All right. Let's talk about timing.
14 How long it going to take you to give me the follow-up
15 information that I asked for with respect to whether there
16 is class certification attacks on Metzler?
17 　　　MR. RIGRODSKY: Your Honor, at a maximum, five
18 business days. I could hopefully get it to you by this
19 afternoon, if it's possible. So I would say a maximum of
20 five business days.
21 　　　THE COURT: All right. I'll give you until next
22 Friday.
23 　　　MR. RIGRODSKY: Thank you.
24 　　　THE COURT: And that is for both sides. You
25 know, I'm not going to have this as a submission and reply.

SHEET 15

57

1   If you have some information, Mr. Rosenfeld, that you want
2   to put in front of me that says "they don't have," you
3   know -- and I'll open this up. This is for any supplemental
4   issue that you think you want to address based on our
5   discussion here today. If you want to talk about the things
6   I just asked about here regarding what is happening in the
7   other Districts, great. That is something I want to hear
8   about. But if you feel like you want to submit some factual
9   information that says, "Hey, they don't have authority" or
10  something like that, knock yourselves out. I'll give you
11  until next Friday to do that.
12          And then I'll give you until close of business
13  the following business day, Monday, to give me a one page
14  reply, if you think you need to reply to anything that the
15  other side puts in.
16          And then we're done. And you will get some kind
17  of decision from me.
18          I will ask all the parties to agree to a
19  stipulated form of order on consolidation and get that to
20  me, if you would, right away so we can get that taken care
21  of, including a consolidated case caption that you are all
22  agreed is adequate and accurate.
23          Okay. I know you've been uncharacteristically
24  in the role of spectators today over there on the defense
25  side, but is there anything you folks need to put on the

58

1   record, want to put on the record while we're all here
2   together at this hearing?
3           MR. RICHARDS: I don't think so, Your Honor.
4           THE COURT: All right. That's fine.
5           I appreciate everybody's time here today.
6   Incidently, I will be signing the pro hac vice motions as
7   tendered.
8           MR. ROSENFELD: Thank you, Your Honor.
9           MR. RIGRODSKY: Thank you, Your Honor.
10          THE COURT: Okay. Thank you.
11          (Hearing ends at 10:22 a.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**#**

**#05-604** [1] - 3:23

**$**

**$100** [1] - 35:5
**$25** [1] - 28:17
**$700,000** [2] - 11:18, 15:14

**'**

**'purchaser'** [1] - 43:22

**0**

**05-294** [1] - 1:11
**05-317** [1] - 1:19
**05-324** [1] - 2:9
**05-604** [4] - 2:18, 3:16, 4:7, 5:20

**1**

**1** [1] - 49:17
**10:22** [1] - 58:11
**17** [1] - 21:13

**2**

**2** [4] - 15:24, 18:10, 18:15, 49:17
**2005** [1] - 1:21
**206** [1] - 46:12
**216** [2] - 21:8, 43:13
**248** [1] - 43:13
**254** [1] - 43:15
**27** [1] - 1:21
**291** [1] - 21:8
**2d** [1] - 46:12

**6**

**627** [1] - 46:12
**634** [1] - 46:12
**675** [3] - 1:3, 3:12, 5:13

**9**

**9:00** [2] - 1:21, 4:13

**A**

**absolute** [2] - 28:14, 38:21
**Absolutely** [3] - 13:9, 16:16, 43:11

**absolutely** [2] - 25:17, 44:16
**absurd** [1] - 20:1
**abundance** [1] - 5:22
**accept** [4] - 21:23, 26:25, 37:23, 50:4
**accord** [1] - 44:21
**according** [1] - 53:12
**account** [4] - 7:23, 42:17, 43:7, 54:12
**accounts** [5] - 11:7, 46:20, 54:10, 54:12, 54:14
**accurate** [1] - 57:22
**achieved** [1] - 35:20
**Acoustic**[7] - 1:2, 3:11, 5:12, 11:16, 13:10, 13:16, 15:13
**act** [12] - 8:20, 10:8, 13:18, 18:23, 18:25, 20:16, 20:20, 40:14, 40:19, 50:8, 50:11, 51:17
**acting** [2] - 50:11, 51:14
**Action**[3] - 1:3, 2:1, 3:16
**action** [22] - 3:16, 4:8, 5:20, 6:3, 6:13, 6:16, 11:19, 20:18, 20:19, 24:12, 27:20, 27:21, 32:9, 32:11, 34:14, 42:9, 42:11, 44:15, 46:8, 49:25, 56:2
**actions** [10] - 5:25, 7:12, 7:15, 7:20, 11:2, 11:6, 36:6, 44:13, 45:3, 55:23
**actively** [3] - 10:21, 10:23, 56:1
**acts** [4] - 17:8, 17:15, 23:11, 42:7
**actual** [2] - 31:6, 51:11
**add** [2] - 22:4, 52:6
**added** [1] - 6:16
**addition** [1] - 8:18
**address** [6] - 19:20, 24:19, 41:24, 42:1, 42:2, 57:4
**addressed** [2] - 24:18, 39:5
**adequacy** [3] - 16:12, 38:2, 38:5
**adequate** [6] - 9:16, 9:20, 16:8, 33:17, 44:19, 57:22
**administrative** [1] - 34:8
**admission** [1] - 5:4
**adversarial** [1] - 46:16

**advise** [1] - 35:25
**advisor** [9] - 21:9, 40:4, 42:18, 43:19, 43:21, 46:6, 46:18, 51:14, 54:4
**advisors** [6] - 39:18, 40:9, 40:14, 45:22, 55:17, 55:20
**affidavit** [27] - 16:25, 17:2, 20:11, 23:17, 25:14, 29:17, 30:7, 30:14, 30:25, 34:11, 41:2, 44:5, 44:10, 44:17, 44:21, 47:4, 47:6, 47:7, 47:9, 47:10, 47:13, 47:19, 48:4, 49:5, 49:9, 55:7, 56:6
**affidavits** [2] - 29:4, 34:6
**afternoon** [1] - 56:19
**age** [1] - 28:19
**aggregation** [3] - 12:6, 13:23, 14:13
**ago** [1] - 53:22
**agree** [7] - 6:2, 6:15, 7:20, 9:6, 9:11, 17:14, 57:18
**agreed** [4] - 10:18, 13:17, 17:12, 57:22
**agreement** [5] - 7:15, 32:1, 45:6, 45:7, 45:17
**agrees** [1] - 6:22
**ahead** [9] - 4:19, 9:1, 12:13, 13:6, 18:1, 25:5, 29:4, 40:5, 44:24
**Air**[1] - 21:6
**Albert**[4] - 1:8, 1:17, 2:7, 2:16
**allege** [2] - 23:12, 26:1
**alleged** [2] - 24:1, 26:7
**alleging** [1] - 23:20
**almost** [1] - 15:2
**alone** [3] - 12:17, 15:13, 26:4
**alongside** [1] - 18:6
**American**[3] - 23:20, 50:10
**amount** [2] - 15:25, 33:5
**Anders**[4] - 1:8, 1:17, 2:7, 2:16
**Answer**[1] - 21:25
**answer** [2] - 12:13, 53:5
**anticipated** [1] - 8:12
**Antonio**[1] - 3:21
**anyway** [1] - 8:23

**apart** [1] - 40:4
**apologize** [3] - 25:6, 42:5
**apparent** [1] - 15:9
**appear** [1] - 10:22
**appearance** [1] - 8:7
**Appearances**[3] - 2:20, 2:25, 3:25
**appearing** [5] - 5:22, 7:8
**application** [1] - 27:12
**appointed** [7] - 9:15, 9:18, 13:17, 14:16, 15:7, 22:13, 33:15
**appointing** [2] - 36:25, 37:2
**appointment** [3] - 19:5, 36:7, 53:19
**appreciate** [2] - 52:4, 58:5
**apprised** [1] - 52:15
**approached** [2] - 8:15, 55:21
**appropriate** [2] - 11:8, 32:3
**approval** [4] - 53:23, 55:21, 56:3, 56:6
**argue** [3] - 23:7, 28:6, 39:7
**argued** [1] - 51:5
**argues** [1] - 48:23
**arguing** [2] - 40:1, 53:14
**Argument**[1] - 1:22
**argument** [19] - 4:12, 5:12, 9:13, 12:3, 19:10, 21:14, 22:11, 24:4, 24:6, 24:17, 27:1, 27:15, 28:1, 28:9, 37:23, 40:4, 40:24, 51:13, 56:11
**arguments** [4] - 37:4, 37:20, 39:11, 50:15
**arise** [1] - 44:14
**arms** [1] - 14:4
**arrangement** [3] - 31:22, 31:24, 33:12
**arrangements** [1] - 8:17
**Articulate**[1] - 48:7
**articulation** [1] - 9:22
**aside** [1] - 18:25
**aspect** [2] - 7:10, 41:25
**assert** [3] - 26:11, 51:6, 51:19
**asserting** [1] - 51:20
**assertion** [4] - 22:1, 37:24, 41:16, 41:17
**assessing** [1] - 9:19

**assets** [3] - 28:18, 31:9, 31:13
**assign** [1] - 51:10
**assume** [1] - 21:22
**Assume**[1] - 49:12
**assuming** [1] - 23:22
**Atlas**[2] - 21:6, 43:13
**attached** [2] - 22:21, 34:12
**attack** [4] - 16:18, 21:11, 38:5, 39:19
**attacked** [2] - 29:18, 30:2
**attacks** [8] - 12:19, 16:1, 16:2, 17:3, 29:15, 31:5, 56:16
**attention** [3] - 12:7, 12:9, 43:12
**attorney** [23] - 8:20, 17:9, 17:15, 17:20, 18:9, 18:14, 18:23, 19:1, 19:11, 20:16, 21:18, 24:9, 25:13, 40:3, 40:11, 40:15, 40:19, 42:7, 42:13, 43:20, 44:3, 44:8, 51:14
**attorneys** [3] - 4:15, 25:24, 26:19
**auction** [2] - 32:21, 33:3
**authority** [51] - 17:7, 18:15, 19:4, 19:12, 19:14, 19:15, 20:17, 20:20, 21:4, 21:9, 21:18, 21:24, 25:14, 31:6, 31:8, 39:18, 40:14, 40:19, 41:2, 41:3, 41:11, 41:12, 41:14, 42:8, 42:20, 43:16, 43:18, 43:21, 44:22, 45:4, 45:10, 45:15, 46:2, 47:15, 48:4, 48:23, 49:8, 49:13, 49:14, 49:22, 49:23, 50:4, 50:8, 50:11, 51:6, 51:9, 55:6, 56:6, 57:9
**authorization** [2] - 40:17, 44:4
**authorize** [1] - 20:9
**authorized** [12] - 16:22, 16:24, 20:6, 41:4, 44:12, 44:13, 45:2, 45:9, 45:25, 53:18, 56:7
**avoid** [2] - 8:5, 32:25
**award** [2] - 32:10, 33:1
**aware** [12] - 6:1, 11:24, 19:17, 36:10,

37:4, 37:6, 37:9,
37:11, 37:12, 37:14,
55:19

**B**

bank [1] - 7:23
Barnes [4] - 1:9, 1:18,
2:8, 2:17
barriers [1] - 22:5
Barroway [1] - 44:6
based [4] - 22:1, 49:4,
52:23, 57:4
baseless [2] - 17:3,
31:5
basis [8] - 26:11, 30:3,
39:12, 45:20, 46:9,
46:25, 47:16, 48:6
become [6] - 11:24,
40:9, 42:25, 43:4,
43:5, 45:23
becoming [1] - 55:20
beer [1] - 25:25
beginning [1] - 4:13
behalf [21] - 1:3, 1:12,
2:1, 2:10, 4:22, 5:6,
5:19, 19:6, 20:19,
20:20, 21:25, 24:24,
25:15, 26:20, 40:21,
42:10, 43:17, 43:19,
46:1, 49:23, 49:24
behind [1] - 24:10
benefit [1] - 51:24
Bershad [3] - 3:7, 3:9,
53:24
between [3] - 14:24,
15:10, 51:18
beyond [1] - 33:1
big [4] - 10:8, 14:2,
14:6, 14:23
bigger [1] - 12:17
billion [2] - 28:17,
35:1
bind [1] - 24:10
binder [1] - 16:23
binding [1] - 18:15
binds [1] - 22:23
bit [1] - 47:17
Black [1] - 21:21
blanket [1] - 40:11
block [1] - 8:2
Blue [1] - 43:2
boat [1] - 28:12
Bockius [2] - 4:2, 4:5
borders [1] - 20:1
bottom [1] - 16:4
bought [3] - 23:19,
24:2, 27:17
bound [1] - 25:17

break [1] - 25:18
Brent [1] - 1:12
Brewing [4] - 1:6,
1:15, 2:5, 2:14
Brian [1] - 2:24
brief [3] - 13:7, 20:14,
52:17
briefing [3] - 12:15,
13:3, 52:14
bring [13] - 25:14,
25:16, 27:19, 28:22,
31:15, 34:15, 40:21,
43:3, 44:4, 44:9,
45:9, 47:15, 51:15
brought [1] - 45:18
Buchmann [1] - 17:1
burden [4] - 16:11,
16:12, 44:18, 44:20
business [6] - 56:18,
56:20, 57:12, 57:13
buzzword [1] - 48:13
buzzwords [3] -
48:10, 48:12, 49:6

**C**

Calpers [1] - 14:16
cannot [2] - 46:8, 55:8
capability [1] - 36:10
capable [1] - 25:24
capacity [1] - 13:18
caption [2] - 6:16,
57:21
care [4] - 29:18, 29:21,
57:20
cares [1] - 29:20
Carles [4] - 1:7, 1:16,
2:6, 2:15
Carmella [2] - 2:22,
4:21
case [46] - 6:22, 9:18,
11:8, 14:14, 14:15,
15:5, 16:7, 21:6,
23:14, 25:16, 25:20,
27:9, 27:17, 29:6,
29:7, 29:9, 30:13,
31:15, 31:25, 32:9,
32:21, 33:6, 33:7,
33:19, 34:7, 34:15,
36:3, 36:18, 37:12,
39:15, 45:17, 46:5,
46:10, 46:15, 46:19,
46:22, 47:3, 48:10,
50:22, 50:25, 51:1,
52:21, 53:7, 53:20,
57:21
cases [35] - 4:19, 8:6,
10:18, 15:6, 18:5,
18:12, 22:14, 22:16,
23:4, 27:8, 27:11,

28:23, 28:24, 32:12,
32:22, 36:11, 36:21,
37:8, 38:13, 38:20,
38:24, 39:1, 40:2,
40:7, 40:8, 41:8,
41:10, 42:12, 42:13,
42:16, 42:23, 52:12,
53:8
causing [1] - 24:5
caution [1] - 5:23
Cendant [7] - 9:22,
13:19, 14:14, 16:6,
32:23, 33:11, 34:2
certain [6] - 33:2,
37:4, 37:19, 38:6,
52:14, 52:16
certainly [4] - 8:7,
17:23, 18:21, 38:22,
39:17, 49:4
certainty [2] - 28:14,
38:21
certification [13] -
11:19, 15:14, 16:21,
20:2, 29:2, 38:16,
38:17, 39:5, 39:7,
39:19, 46:6, 54:5,
56:16
certifications [3] -
15:5, 29:25, 45:24
certified [3] - 37:12,
37:16, 38:22
cetera [4] - 8:23, 22:5,
33:12, 33:13
chance [2] - 12:10,
19:20
changes [1] - 51:18
character [2] - 31:21,
39:8
Charitable [4] - 21:5,
43:24, 44:2, 46:15
Charles [1] - 3:18
Charley [1] - 6:6
chart [1] - 20:24
chief [1] - 29:16
Chimicles [2] - 3:14,
5:19
China [1] - 28:22
Chip [1] - 43:2
circle [1] - 24:19
Circuit [8] - 13:19,
14:9, 21:5, 39:17,
43:25, 44:22, 46:17,
48:12
Circuits [2] - 9:21,
14:22
circulated [1] - 11:4
circumstances [1] -
33:2
citation [1] - 46:10
citations [1] - 40:7

cite [3] - 21:4, 27:8,
46:3
cited [4] - 21:7, 40:2,
43:13, 45:1
Citing [1] - 43:23
Civil [5] - 1:3, 2:1,
3:16, 3:23, 4:7
civil [1] - 22:24
claim [6] - 24:12, 30:3,
43:3, 50:23, 50:24,
51:16
claimed [2] - 15:15,
15:25
claiming [1] - 28:2
claims [1] - 12:7
clarification [1] -
52:24
Class [1] - 38:16
class [18] - 11:22,
16:9, 24:12, 32:9,
32:10, 33:4, 33:19,
34:14, 35:6, 37:12,
37:16, 38:1, 38:17,
39:5, 39:19, 55:23,
56:16
classes [1] - 38:21
classholders [1] -
34:10
clear [7] - 16:6, 44:16,
50:2, 52:13, 52:20,
53:3
client [25] - 8:6, 8:15,
8:16, 19:3, 30:9,
35:1, 35:3, 35:20,
35:21, 35:22, 36:8,
36:10, 40:17, 40:20,
45:5, 45:7, 45:17,
48:22, 49:2, 49:3,
52:14, 52:20, 52:24,
52:25, 53:22
client's [2] - 43:16,
49:22
clients [25] - 8:25,
13:16, 14:6, 18:25,
19:6, 19:7, 25:15,
26:21, 34:25, 35:20,
35:22, 40:12, 40:15,
43:20, 44:8, 45:17,
45:19, 45:24, 45:25,
54:7, 55:18, 55:21,
56:3
climate [1] - 19:16
Clos [1] - 11:19
close [4] - 15:15,
15:17, 15:18, 57:12
co [3] - 4:23, 52:19,
53:8
co-counsel [2] - 4:23,
53:8
co-lead [1] - 52:19

cognizable [1] - 14:12
colleagues [1] - 6:11
Colorado [1] - 23:11
Columbia [1] - 4:3
comfort [2] - 23:1,
31:3
comfortable [1] -
49:13
commence [1] - 43:18
commenced [1] - 50:1
commitment [1] -
36:11
common [3] - 13:25,
14:2, 14:3
Company [4] - 1:6,
1:15, 2:5, 2:14
company [2] - 23:19,
23:20
competent [1] - 48:9
competing [2] - 34:6,
34:11
complaint [2] - 13:16,
26:2
complaints [1] - 7:20
complete [7] - 20:17,
22:11, 31:8, 42:8,
48:18, 54:23, 54:25
completely [3] -
28:21, 40:18, 44:21
comports [1] - 36:4
conceivable [2] -
26:10, 31:16
concern [7] - 32:3,
32:19, 33:7, 33:15,
35:16, 36:13, 47:25
concerned [2] - 8:11,
13:2
concerns [2] - 22:2,
22:4
conclude [2] - 18:14,
50:14
conduct [1] - 33:3
confer [2] - 43:18,
49:23
conglomeration [1] -
15:3
Congress [3] - 8:5,
10:15, 36:5
consider [3] - 17:3,
17:24, 31:4
considerations [3] -
18:19, 18:20, 33:13
considered [5] -
17:18, 17:23, 37:2,
38:11, 43:22
consistent [2] - 11:23,
21:2
consolidate [4] - 5:23,
5:25, 6:2, 7:24
consolidated [3] -

7:16, 7:21, 57:21
**consolidation** [5] -
4:18, 6:24, 7:10,
7:12, 57:19
**construed** [1] - 5:24
**contact** [8] - 19:3,
30:8, 30:9, 30:13,
30:16, 30:17, 30:19
**contacted** [1] - 11:6
**contacts** [1] - 23:25
**context** [1] - 21:11
**Continued** [2] - 2:25,
3:25
**contractually** [1] -
33:5
**contradict** [1] - 31:17
**contrary** [3] - 47:22,
47:24, 48:2
**control** [3] - 20:15,
31:9, 52:12
**controlling** [1] - 44:22
**controls** [2] - 42:6,
49:9
**Coors** [12] - 1:6, 1:7,
1:15, 1:15, 2:5, 2:5,
2:14, 2:14, 23:10,
26:1, 30:4, 30:5
**copies** [3] - 30:21,
30:22, 53:17
**copy** [1] - 45:7
**correct** [6] - 6:25, 7:1,
7:2, 7:13, 7:16,
24:23
**Correct** [3] - 7:17,
7:18, 25:7
**correspondence** [1] -
9:12
**corroborating** [1] -
20:23
**Coughlin** [2] - 3:2, 5:1
**counsel** [37] - 4:23,
6:2, 6:10, 6:12, 9:17,
9:18, 9:20, 10:2,
10:5, 10:9, 10:10,
10:23, 11:9, 11:10,
12:19, 13:17, 15:6,
17:1, 20:2, 22:13,
30:14, 30:19, 33:4,
33:10, 33:15, 33:17,
38:5, 48:9, 52:18,
52:19, 53:7, 53:8,
53:9, 53:12, 53:19,
53:25
**Counsel** [6] - 3:4,
3:11, 3:16, 3:23, 4:7,
11:5
**count** [1] - 55:23
**countries** [1] - 19:18
**country** [1] - 36:16
**couple** [1] - 52:7

**course** [1] - 41:18
**Court** [160] - 1:1, 4:14,
4:17, 5:3, 5:8, 5:17,
6:4, 6:14, 6:19, 7:3,
7:8, 7:14, 7:19, 9:6,
9:7, 9:11, 9:13, 9:21,
9:24, 10:6, 10:15,
10:25, 11:12, 12:2,
12:6, 13:13, 13:25,
14:22, 15:17, 15:23,
16:14, 16:17, 17:10,
17:20, 18:1, 18:8,
18:20, 18:22, 19:9,
19:19, 19:22, 20:3,
21:20, 21:22, 22:12,
22:15, 22:18, 23:15,
24:3, 24:21, 25:3,
25:5, 25:8, 25:21,
26:9, 26:13, 26:25,
27:6, 27:25, 28:24,
29:10, 30:8, 31:1,
31:2, 31:21, 32:3,
32:6, 32:8, 32:9,
32:12, 32:13, 32:20,
33:13, 33:20, 34:3,
34:5, 34:17, 34:19,
34:21, 34:24, 35:7,
35:14, 36:12, 36:24,
37:2, 37:6, 37:17,
37:21, 38:8, 38:12,
38:17, 38:21, 38:22,
38:24, 38:25, 39:21,
39:24, 40:22, 41:9,
41:20, 42:2, 42:15,
42:22, 43:1, 43:9,
43:12, 44:1, 44:23,
45:11, 45:19, 46:2,
46:5, 46:10, 46:13,
46:15, 46:24, 47:4,
47:9, 47:13, 47:22,
48:1, 48:8, 48:14,
48:17, 48:20, 49:3,
49:11, 49:17, 49:25,
50:2, 50:7, 50:14,
50:20, 51:1, 51:4,
51:12, 51:25, 52:4,
52:8, 53:4, 53:10,
53:13, 53:14, 54:1,
54:8, 54:17, 54:24,
55:2, 55:9, 55:11,
55:13, 55:16, 56:5,
56:10, 56:13, 56:21,
56:24, 58:4, 58:10
**court** [15] - 4:13,
10:22, 21:7, 23:24,
26:11, 26:22, 27:5,
27:20, 27:21, 27:22,
29:23, 32:25, 36:21,
37:3, 44:2
**Courts** [1] - 10:16

**courthouse** [1] - 10:4
**courtroom** [1] - 7:7
**courts** [9] - 17:24,
22:14, 28:23, 32:20,
36:15, 36:17, 45:6,
45:22, 49:7
**craft** [1] - 48:11
**critical** [1] - 56:2
**critically** [1] - 23:13
**crystal** [1] - 44:16
**cultural** [1] - 22:5
**culture** [2] - 28:11,
28:14

# D

**Daimlerchrysler** [5] -
21:8, 27:8, 27:10,
34:7, 34:12
**dates** [1] - 21:1
**David** [7] - 1:9, 1:18,
2:1, 2:8, 2:17, 3:3,
4:24
**Davis** [6] - 3:15, 5:18,
5:19, 6:15, 7:4, 7:7
**days** [2] - 56:18, 56:20
**deal** [1] - 7:9
**Deborah** [1] - 30:15
**deceived** [1] - 25:19
**decide** [2] - 22:22,
33:14
**decided** [7] - 21:5,
23:14, 25:16, 27:21,
46:23, 52:25, 53:1
**decides** [1] - 34:13
**decision** [7] - 9:21,
12:25, 39:20, 39:22,
43:21, 43:24, 57:17
**decision-making** [1] -
43:21
**decisions** [5] - 25:16,
31:19, 47:14, 56:7
**decisive** [2] - 17:14,
17:19
**declaration** [16] -
20:14, 41:20, 41:21,
41:25, 43:8, 44:3,
44:7, 44:21, 45:1,
48:11, 49:2, 52:13,
52:17, 53:22, 53:23
**declarations** [4] -
26:20, 26:22, 45:24,
52:19
**defeat** [1] - 40:18
**Defendants** [6] - 1:11,
1:19, 2:9, 2:18, 3:23,
4:7
**defendants** [8] - 23:6,
23:25, 26:4, 26:12,
27:4, 37:19, 37:25,

39:6
**defense** [5] - 7:11,
23:6, 25:25, 27:23,
57:24
**defenses** [1] - 23:6
**definitive** [1] - 9:15
**degree** [1] - 10:21
**Delaware** [4] - 1:1,
1:21, 5:11, 23:11
**demonstrate** [1] -
40:10
**demonstrating** [1] -
45:8
**deprive** [1] - 51:18
**described** [1] - 8:25
**designated** [2] -
38:14, 39:4
**detail** [1] - 19:20
**determine** [1] - 33:3
**determined** [2] - 30:6,
46:19
**different** [9] - 6:23,
10:12, 13:22, 15:8,
22:14, 36:15, 36:18,
51:4, 51:13
**digging** [1] - 41:15
**dime** [1] - 18:17
**direction** [1] - 39:17
**directly** [1] - 36:4
**director** [1] - 16:25
**disclosed** [1] - 54:15
**discretion** [10] -
20:17, 33:14, 42:8,
42:17, 42:20, 42:21,
42:24, 43:6, 48:16
**discuss** [2] - 19:3,
42:13
**discussed** [1] - 37:2
**discussion** [3] -
21:23, 28:4, 57:5
**discussions** [1] - 8:17
**dismissed** [1] - 38:20
**dispute** [3] - 10:2,
32:24, 47:18
**disputing** [3] - 46:25,
47:1, 47:16
**disrespect** [1] - 22:8
**distance** [2] - 28:10,
28:14
**distinct** [1] - 54:6
**distinguishable** [1] -
27:7
**distressing** [1] - 8:3
**distributed** [1] - 11:3
**District** [8] - 1:1, 1:1,
4:3, 39:24, 43:24,
44:22, 49:7, 49:21
**district** [1] - 36:15
**Districts** [1] - 57:7
**docket** [1] - 38:23

**documents** [2] -
28:16, 29:3
**dollar** [1] - 35:1
**dollars** [1] - 15:15
**domain** [1] - 51:6
**Don** [1] - 6:11
**Donald** [1] - 4:3
**done** [3] - 7:4, 29:12,
57:16
**double** [1] - 15:24
**down** [1] - 41:15
**dozens** [1] - 15:6
**draft** [1] - 49:2
**drafted** [1] - 53:22
**driven** [4] - 8:6, 8:8,
10:19, 15:3
**driving** [1] - 28:11
**Drywall** [8] - 1:2, 3:11,
5:12, 8:22, 11:16,
13:10, 13:15, 15:13
**due** [1] - 14:8
**dunk** [1] - 33:7
**duped** [1] - 25:19
**Dura** [1] - 51:1

# E

**early** [2] - 29:8, 32:18
**easy** [1] - 30:6
**economic** [2] - 50:25,
51:3
**effect** [1] - 24:13
**effort** [2] - 29:2, 48:11
**efforts** [1] - 29:9
**either** [7] - 30:4, 35:8,
35:14, 36:22, 37:13,
37:15, 47:24
**elements** [1] - 31:9
**Ella** [1] - 44:7
**empower** [1] - 52:11
**enactment** [1] - 10:3
**end** [7] - 8:15, 32:14,
32:16, 37:8, 50:22,
51:16, 51:24
**ends** [1] - 58:11
**energy** [1] - 29:2
**English** [2] - 28:17
**entered** [2] - 23:8,
36:21
**entities** [4] - 11:24,
15:2, 27:4, 46:7
**entitled** [1] - 8:20
**entitles** [1] - 24:11
**entity** [9] - 16:23, 22:1,
23:7, 27:19, 30:4,
30:5, 30:17, 31:18,
51:8
**Erisa** [6] - 3:16, 4:8,
5:20, 6:13, 6:16,

6:22
Esq[9] - 2:22, 3:3, 3:7, 3:10, 3:15, 3:18, 3:19, 3:21, 4:3
essentially [1] - 42:25
established [1] - 16:7
et [3] - 22:5, 33:12, 33:13
Et[1] - 8:23
Europe[3] - 26:4, 26:6, 30:18
European[1] - 19:17
evidence [5] - 15:2, 20:15, 20:23, 34:5, 47:2
Exactly[1] - 52:2
example [1] - 29:10
excellent [1] - 25:24
except [4] - 3:23, 12:12, 14:17, 34:14
Exchange[2] - 23:18, 23:20
exchange [3] - 24:2, 26:6, 27:9
excuse [4] - 10:15, 11:9, 21:12, 31:23
Excuse[2] - 39:21, 53:10
exhaust [1] - 50:15
exists [1] - 40:4
expecting [1] - 37:25
experience [1] - 30:10
expert [1] - 34:9
explained [1] - 51:21
explaining [1] - 40:13
explicit [2] - 45:5, 45:16
explicitly [2] - 41:8, 46:16
express [4] - 19:4, 19:12, 19:13, 19:15
expressly [1] - 45:25
extraterritorial [1] - 27:12
extreme [1] - 27:15
Ezra[4] - 21:4, 43:23, 44:2, 46:15

**F**

face [1] - 27:1
facie [1] - 16:7
fact [38] - 8:20, 14:1, 14:4, 14:17, 15:2, 15:11, 17:9, 17:15, 17:21, 18:9, 18:12, 18:15, 18:23, 19:1, 19:11, 20:16, 21:9, 21:18, 24:9, 25:13, 26:20, 35:21, 40:3,

40:11, 40:15, 40:20, 41:9, 42:7, 42:14, 43:20, 44:4, 44:8, 45:4, 45:15, 48:12, 49:24, 50:21, 51:14
factor [3] - 9:24, 17:19, 18:22
factors [7] - 9:23, 17:17, 17:23, 17:24, 33:11, 33:12, 34:1
facts [6] - 11:12, 36:3, 40:8, 47:20, 47:21, 47:23
factual [2] - 41:16, 57:8
failed [1] - 37:10
fair [3] - 47:6, 47:10, 48:6
fairly [1] - 48:4
falls [1] - 40:4
familiar [1] - 48:9
family [1] - 35:11
far [7] - 11:20, 21:4, 26:1, 28:2, 28:20, 29:6, 38:19
Farnan[1] - 21:8
Farr[2] - 3:21, 6:10
fashion [2] - 39:5, 47:5
favor [1] - 32:8
federal [4] - 23:21, 26:22, 28:23, 43:22
Federal[1] - 46:12
fee [8] - 8:16, 31:22, 31:24, 31:25, 32:1, 33:8, 33:12
fees [4] - 7:25, 32:10, 33:1, 33:16
felt [1] - 11:7
feud [1] - 35:11
few [1] - 19:20
fifth [1] - 36:24
figure [1] - 12:24
file [6] - 20:7, 25:2, 25:20, 27:21, 50:23, 51:16
filed [12] - 7:11, 10:4, 11:3, 11:13, 11:15, 11:16, 11:17, 11:19, 13:16, 15:5, 27:20
filing [2] - 36:6, 50:24
filings [1] - 53:20
filling [1] - 29:25
final [1] - 54:3
financial [8] - 9:25, 10:17, 10:20, 15:12, 18:3, 50:24, 55:24, 56:2
fine [3] - 7:5, 33:14, 58:4

Finger[2] - 3:18, 6:6
finger [1] - 8:9
fire [1] - 13:7
firm [10] - 14:25, 28:18, 30:16, 30:19, 35:3, 35:8, 35:24, 35:25, 44:6, 53:2
firms [3] - 8:9, 35:9, 53:1
first [19] - 6:16, 8:2, 8:14, 9:1, 9:3, 9:16, 9:24, 10:4, 11:2, 11:13, 11:14, 11:15, 11:16, 11:17, 16:18, 17:4, 29:14, 41:19
First[6] - 13:9, 22:10, 22:12, 23:3, 28:16, 52:9
five [7] - 15:8, 36:15, 36:21, 44:11, 56:17, 56:20
flip [1] - 21:14
flip-side [1] - 21:14
flying [1] - 19:24
folks [22] - 6:20, 7:4, 8:14, 11:1, 12:15, 12:21, 13:16, 20:5, 21:25, 22:19, 24:8, 28:21, 29:1, 32:16, 35:15, 37:23, 40:1, 40:25, 47:14, 51:5, 53:15, 57:25
follow [1] - 56:14
follow-up [1] - 56:14
following [2] - 4:12, 57:13
fooled [1] - 25:19
foolish [1] - 22:24
force [2] - 38:7, 39:12
forced [1] - 55:24
foreign [4] - 22:1, 23:19, 27:9, 27:10
foreign-based [1] - 22:1
foreigner [3] - 27:16, 28:7
foreigners [1] - 28:8
form [2] - 53:12, 57:19
forth [3] - 13:20, 20:10, 30:7
forward [9] - 12:1, 16:10, 31:2, 33:19, 36:16, 41:4, 53:2, 54:3, 56:4
four [7] - 15:8, 20:13, 22:14, 36:15, 36:20, 36:21
Frank[5] - 52:18, 52:21, 52:22, 53:8, 53:25

frank [2] - 8:1, 32:24
Franklin[4] - 1:7, 1:16, 2:6, 2:15
frankly [8] - 20:1, 20:15, 25:22, 28:20, 29:6, 31:16, 32:23, 33:1
fraud [4] - 22:14, 27:17, 27:18, 43:3
Frd[2] - 21:8, 43:13
free [1] - 7:4
Friday[3] - 1:21, 56:22, 57:11
front [1] - 57:2
full [6] - 20:17, 24:19, 25:14, 42:8, 44:8, 48:18
fully [6] - 36:9, 40:7, 41:4, 44:12, 45:2, 52:14
fund [12] - 12:22, 18:2, 22:20, 23:7, 31:10, 31:17, 35:2, 35:21, 40:21, 44:13, 45:3
Fund[7] - 1:3, 3:5, 3:12, 4:23, 5:7, 5:13, 11:17
funds [37] - 14:18, 15:9, 17:6, 17:9, 17:16, 20:8, 20:16, 20:21, 20:25, 21:1, 21:2, 21:10, 21:19, 22:21, 24:8, 24:25, 25:17, 25:18, 26:19, 28:5, 29:20, 30:18, 31:5, 31:6, 31:7, 31:10, 31:12, 31:15, 40:19, 41:23, 42:6, 42:9, 49:10, 54:19, 54:20, 54:21, 55:8

**G**

Gaffigan[1] - 2:24
gains [4] - 54:7, 54:9, 54:15, 54:20
Gallagher[2] - 3:21, 6:10
game [3] - 32:14, 49:14, 49:19
gap [1] - 47:20
Geller[2] - 3:2, 5:1
Generally[1] - 43:16
geographic [1] - 22:3
German[15] - 12:12, 12:23, 19:14, 23:7, 23:24, 24:2, 24:11, 26:5, 27:5, 30:16, 34:8, 34:10, 34:13, 50:10

Germany[18] - 13:4, 16:22, 19:16, 19:17, 23:9, 23:22, 24:1, 24:7, 24:9, 25:20, 25:25, 26:4, 26:5, 26:11, 27:10, 28:19, 34:16
given [6] - 12:3, 12:23, 39:12, 41:2, 50:3, 50:12
glaring [1] - 48:13
global [1] - 28:18
globe [1] - 28:22
Gmbh[2] - 3:12, 5:14
Goddess [1] - 2:21
Goldman[2] - 55:22, 55:25
grant [2] - 43:16, 49:22
great [4] - 9:8, 20:7, 22:15, 57:7
Gross[1] - 2:21
group [7] - 9:2, 11:5, 13:21, 14:12, 14:16, 15:21
grouped [1] - 15:8
groups [3] - 13:20, 13:21, 14:9
guess [3] - 28:3, 47:16, 50:2
guys [3] - 13:25, 17:11, 20:6

**H**

hac [2] - 5:4, 58:6
Hair[1] - 43:13
Handler[1] - 44:6
hard [1] - 25:6
Havermann[2] - 4:3, 6:12
headquartered [3] - 23:11, 26:2, 27:10
hear [8] - 6:22, 8:14, 9:3, 20:3, 20:4, 40:24, 55:2, 57:7
Hearing[2] - 1:22, 58:11
hearing [9] - 4:13, 5:22, 12:18, 19:24, 20:12, 25:12, 42:3, 56:10, 58:2
heck [1] - 32:24
held [3] - 4:13, 18:5, 43:12
help [4] - 14:1, 18:13, 37:21, 51:12
Help[1] - 11:12
Herington[4] - 1:7, 1:16, 2:6, 2:15

herring [1] - 22:11
Hess [1] - 34:11
highly [2] - 19:15, 27:7
himself [1] - 2:11
hits [1] - 7:23
Hobbs [4] - 1:8, 1:16, 2:6, 2:15
hold [1] - 28:7
holding [1] - 49:20
home [4] - 7:25, 27:20, 27:21
Honor [92] - 4:16, 4:21, 4:25, 5:3, 5:10, 5:18, 6:1, 6:5, 6:8, 6:17, 6:25, 7:1, 7:2, 7:13, 7:17, 7:18, 9:4, 9:5, 9:10, 13:9, 14:7, 17:18, 18:19, 18:23, 19:4, 19:14, 19:17, 19:21, 20:22, 22:9, 22:17, 24:17, 24:23, 25:4, 28:13, 31:24, 32:5, 33:25, 34:4, 34:18, 34:20, 34:23, 35:1, 35:13, 36:8, 36:20, 36:24, 37:3, 37:13, 37:18, 38:10, 38:19, 39:16, 40:6, 40:9, 40:13, 41:7, 41:18, 42:6, 42:12, 42:16, 43:8, 43:11, 44:25, 46:4, 46:14, 47:25, 48:8, 48:25, 50:19, 51:1, 51:22, 52:3, 52:6, 52:10, 53:6, 53:16, 53:21, 54:2, 55:1, 55:4, 55:12, 55:15, 55:17, 55:18, 56:1, 56:9, 56:12, 56:17, 58:3, 58:8, 58:9
Honor's [1] - 5:5
Honorable [1] - 1:24
hopefully [1] - 56:18
hurt [1] - 33:6
hypothetical [3] - 24:15, 24:16, 25:23

I

idea [2] - 45:17, 45:20
identical [2] - 20:25, 21:1
Identical [1] - 20:25
Iii [4] - 1:7, 1:15, 2:5, 2:14
imagine [1] - 23:23
impact [1] - 33:8
imply [2] - 45:3, 45:15

import [1] - 24:6
important [3] - 40:23, 52:23, 54:10
Importantly [1] - 23:13
importantly [1] - 23:13
inadequacy [1] - 16:13
inadequate [2] - 16:11, 45:13
inappropriate [1] - 22:1
incentive [1] - 32:17
Incidently [1] - 58:6
include [2] - 47:10, 48:12
included [3] - 5:21, 15:21, 55:6
includes [2] - 16:9, 44:6
including [10] - 20:19, 27:8, 29:16, 35:4, 42:10, 44:14, 52:17, 52:19, 54:4, 57:21
inconceivable [1] - 31:16
incorporated [1] - 23:10
indeed [1] - 17:20
independently [2] - 46:19, 46:23
indicate [4] - 32:13, 39:14, 41:13, 47:20
indicated [1] - 37:9
indicates [1] - 49:25
indication [1] - 37:1
individual [3] - 11:15, 11:20, 24:24
individually [3] - 1:3, 1:12, 2:1
individuals [4] - 13:23, 14:13, 30:20, 55:9
indulgence [1] - 55:16
inference [4] - 47:6, 47:10, 48:2, 48:6
informal [1] - 31:12
information [5] - 38:23, 39:2, 56:15, 57:1, 57:9
informed [1] - 30:23
initiate [1] - 49:24
initiated [1] - 34:7
injury [1] - 13:12
inquiries [1] - 18:13
inquiry [2] - 9:16, 17:14
instance [2] - 9:3, 16:18
instances [1] - 37:15
institute [2] - 20:18,

42:9
institutional [5] - 14:15, 36:1, 36:5, 52:12, 55:18
Insulation [3] - 1:3, 3:12, 5:13
insurance [1] - 35:4
insure [1] - 56:3
intended [2] - 36:5, 52:10
intent [1] - 8:4
interest [8] - 10:20, 17:5, 18:4, 21:13, 21:15, 50:25, 55:25, 56:2
interested [4] - 8:24, 12:18, 39:1, 42:3
international [1] - 28:18
Internet [1] - 11:4
interpretation [1] - 9:22
interpreting [1] - 10:16
interrelatedness [1] - 15:10
introductions [1] - 4:20
invest [3] - 18:6, 28:7, 49:23
invested [3] - 18:3, 54:13, 55:22
investigated [1] - 30:1
Investment [4] - 3:12, 5:14, 42:6, 42:7
investment [26] - 17:8, 21:9, 21:14, 21:17, 25:15, 31:19, 39:18, 40:9, 40:14, 42:18, 42:25, 43:17, 43:19, 43:21, 44:3, 44:5, 44:9, 44:14, 45:22, 46:6, 46:18, 49:22, 51:14, 54:4, 55:17, 55:19
investments [2] - 14:19, 17:16
investor [2] - 43:5, 46:8
investors [15] - 10:17, 11:21, 12:12, 12:22, 14:15, 18:7, 24:24, 36:1, 36:5, 45:6, 50:9, 52:11, 52:12, 54:20, 55:18
involve [1] - 33:9
involved [5] - 10:18, 10:23, 29:13, 29:17, 52:21
ironic [1] - 35:10

issue [17] - 17:4, 17:7, 18:4, 21:13, 22:10, 22:3, 23:5, 27:14, 28:8, 28:15, 33:8, 33:10, 34:11, 40:3, 50:19, 57:4
issues [5] - 8:18, 28:10, 36:23, 37:1, 38:6
items [1] - 52:7
itself [2] - 13:20, 18:2

J

Japan [1] - 28:22
Jeff [1] - 6:7
Jeffrey [1] - 3:19
Jersey [1] - 49:21
join [1] - 29:3
joined [1] - 29:24
joint [1] - 13:18
Jordan [1] - 1:24
Jr [2] - 3:18, 3:21
Judge [2] - 21:8, 40:25
judge [1] - 8:10
judgment [2] - 23:8, 32:8
judicata [6] - 13:1, 22:2, 22:10, 23:2, 23:4, 27:22
jurisdiction [4] - 23:25, 26:12, 26:16, 27:4
justice [1] - 22:24

K

Kaj [4] - 1:11, 1:19, 2:9, 2:18
Keener [5] - 2:22, 4:21, 4:22, 5:1, 5:9
keep [1] - 41:14
Kendall [4] - 1:10, 1:18, 2:8, 2:17
Kent [1] - 1:24
Kiely [4] - 1:7, 1:15, 2:5, 2:14
kind [1] - 57:16
Klos [1] - 1:12
knock [1] - 57:10
knowing [1] - 8:24
known [1] - 35:10
knows [3] - 26:23, 27:20, 48:8
Kramer [1] - 46:18

L

laid [1] - 34:1

landmark [1] - 32:22
landmark-type [1] - 32:22
language [5] - 22:5, 28:11, 28:14, 42:12, 42:13
large [6] - 10:17, 14:19, 14:20, 15:11, 15:19, 30:18
largest [1] - 9:25
last [1] - 55:15
Lathing [5] - 1:2, 3:11, 5:13, 11:16, 15:13
law [10] - 12:23, 21:21, 24:11, 48:10, 48:24, 49:4, 50:8, 50:10, 51:14
laws [5] - 21:16, 23:21, 27:13, 43:23, 51:10
lawsuit [5] - 11:17, 11:25, 12:1, 25:2, 40:21
lawyer [4] - 8:6, 8:7, 10:19, 15:3
lawyers [1] - 52:11
Layton [2] - 3:18, 6:6
lead [43] - 4:18, 9:18, 10:5, 10:9, 11:9, 11:10, 12:16, 13:17, 13:21, 15:6, 19:5, 20:2, 20:19, 22:2, 22:13, 22:19, 33:10, 33:15, 36:4, 36:7, 36:16, 36:25, 37:7, 37:10, 37:24, 38:14, 39:4, 39:8, 40:10, 42:10, 44:14, 45:23, 50:15, 52:18, 52:19, 53:7, 53:9, 53:11, 53:19, 53:25, 54:4, 55:20
leadership [1] - 10:2
learn [1] - 8:4
least [2] - 17:11, 26:1
ledger [1] - 51:6
left [1] - 7:7
legal [12] - 17:1, 18:13, 20:18, 21:4, 21:18, 29:16, 31:8, 31:19, 41:17, 42:9, 44:13, 45:3
legislation [1] - 8:12
legitimate [1] - 14:12
Leo [4] - 1:7, 1:15, 2:5, 2:14
Leract [2] - 3:2, 5:1
less [1] - 11:20
letter [1] - 21:21
Lewis [2] - 4:2, 4:5

Lexis [1] - 43:14
liability [1] - 32:25
liaise [1] - 30:14
liaison [1] - 30:19
likely [1] - 54:6
line [3] - 16:4, 29:22, 42:18
lion's [1] - 7:25
list [1] - 33:23
listed [1] - 54:5
litigated [1] - 32:8
litigation [24] - 6:11, 8:8, 9:25, 10:11, 10:24, 11:23, 17:5, 19:6, 19:8, 19:16, 20:1, 21:9, 24:25, 25:1, 25:14, 26:19, 30:24, 31:9, 32:7, 34:9, 35:4, 45:9, 46:1, 52:11
LLp [10] - 3:2, 3:7, 3:9, 3:21, 4:2, 4:5, 4:6, 5:2, 53:24, 53:25
local [1] - 12:12
Local [3] - 1:3, 3:12, 5:13
located [2] - 30:10, 35:2
logical [1] - 27:15
look [18] - 7:20, 8:18, 9:21, 13:7, 14:13, 15:4, 15:5, 15:19, 20:11, 20:23, 22:25, 23:4, 33:11, 34:6, 35:8, 45:8, 49:9, 50:22
looked [2] - 12:10, 14:9
looking [6] - 12:3, 12:8, 31:2, 34:1, 47:18
looks [2] - 9:24, 43:15
loser [1] - 19:18
loss [13] - 10:17, 12:17, 15:12, 15:14, 17:7, 21:10, 21:16, 21:17, 21:19, 50:25, 51:3, 51:7, 51:19
losses [19] - 10:20, 11:7, 11:17, 11:20, 14:11, 14:20, 15:24, 17:6, 18:10, 18:16, 20:24, 21:25, 30:1, 36:1, 44:5, 44:9, 51:6, 54:19, 54:21
lost [2] - 23:23, 24:7
lowest [1] - 33:4

**M**

major [1] - 18:21
man [1] - 22:11
manage [3] - 19:1, 28:17, 29:20
managed [2] - 31:11, 31:13
manager [10] - 17:8, 18:5, 19:14, 21:15, 21:17, 40:19, 42:25, 43:17, 44:3, 49:23
managers [2] - 18:25, 54:13
manages [2] - 17:7, 31:18
managing [2] - 10:10, 16:25
market [1] - 27:18
markets [1] - 27:18
matter [4] - 23:24, 34:25, 37:23, 38:10
Matthias [1] - 16:25
maximum [2] - 56:17, 56:19
mean [6] - 13:4, 13:6, 15:12, 15:15, 50:14, 51:5
meaning [1] - 22:8
meaningful [1] - 48:22
means [2] - 14:3, 27:15
Meet [1] - 24:15
meet [2] - 27:2, 34:2
meets [1] - 7:22
Melville [1] - 3:3
member [3] - 16:8, 37:12, 37:16
members [1] - 49:25
mention [1] - 13:10
mentioned [1] - 22:3
mere [1] - 49:22
merger [1] - 9:2
Merit [1] - 2:25
metaphor [1] - 16:3
Metzler [70] - 3:12, 5:13, 8:19, 8:23, 9:2, 11:5, 11:12, 11:14, 11:24, 12:4, 12:6, 12:8, 12:16, 12:21, 13:18, 15:23, 15:24, 16:1, 16:8, 16:21, 17:1, 17:3, 17:4, 17:7, 17:8, 17:15, 19:4, 19:25, 20:3, 20:5, 20:7, 20:10, 20:13, 21:2, 21:23, 22:6, 22:13, 23:14, 23:17, 23:22, 24:7, 24:8, 24:14, 24:18,

24:19, 24:24, 28:3, 28:5, 28:16, 31:8, 31:13, 33:14, 36:15, 36:25, 37:3, 37:23, 37:25, 38:13, 41:22, 42:6, 42:7, 45:7, 49:9, 50:23, 53:15, 53:17, 54:7, 54:11, 55:6, 56:16
Metzler's [3] - 28:4, 41:22, 55:7
Mezner [2] - 44:7
might [3] - 20:6, 22:4, 51:9
Milberg [16] - 3:7, 3:9, 5:11, 5:16, 11:10, 14:4, 14:6, 22:6, 35:25, 36:9, 52:18, 53:1, 53:7, 53:9, 53:13, 53:24
million [7] - 15:15, 15:24, 18:10, 18:16, 35:5, 49:17, 49:18
mimic [1] - 42:13
mimicking [1] - 38:6
mind [3] - 6:18, 6:19, 32:4
minimize [1] - 8:5
minutes [1] - 19:20
missing [1] - 48:13
misunderstood [2] - 24:4, 24:22
mix [2] - 6:21, 9:1
Molson [11] - 1:6, 1:15, 2:5, 2:14, 23:10, 23:14, 25:25, 30:4, 41:23, 55:8
moment [2] - 33:20, 53:22
Monday [1] - 57:13
money [15] - 7:3, 7:23, 18:3, 18:5, 18:6, 18:25, 19:1, 19:14, 28:3, 28:4, 28:5, 29:20, 54:11, 54:13, 55:22
Monhait [1] - 2:21
monies [1] - 28:8
monitor [1] - 10:23
monitoring [1] - 35:23
moreover [1] - 13:17
Morgan [2] - 4:2, 4:5
morning [11] - 4:14, 4:15, 4:21, 4:25, 5:6, 5:10, 5:18, 6:5, 6:8, 34:20, 34:21
most [13] - 9:15, 9:20, 16:8, 18:25, 19:17, 25:22, 33:9, 33:17, 40:8, 41:4, 44:19,

54:10
mostly [1] - 42:3
motion [8] - 5:4, 20:2, 21:2, 29:3, 30:25, 36:23, 38:6, 53:12
motions [2] - 5:23, 6:2, 29:24, 58:6
Movant [1] - 36:25
movant [1] - 46:5
movants [11] - 5:12, 15:16, 15:19, 15:25, 16:1, 16:10, 21:12, 29:19, 30:2, 34:7, 37:5
move [1] - 56:4
Moyer [3] - 3:19, 6:7, 6:8
multi [1] - 35:1
multi-billion [1] - 35:1
Murray [5] - 52:18, 52:21, 52:22, 53:7, 53:25

**N**

name [4] - 25:8, 43:23, 50:9, 51:17
named [1] - 30:15
National [3] - 3:5, 4:22, 5:6
necessarily [4] - 17:18, 40:20, 40:23, 49:1
necessary [3] - 37:19, 48:12, 48:13
need [6] - 13:2, 16:17, 18:13, 51:22, 57:14, 57:25
needs [2] - 31:3, 54:15
negotiated [1] - 31:25
never [3] - 20:6, 24:10, 49:1
New [9] - 3:3, 3:10, 3:22, 5:16, 23:18, 30:15, 49:21
new [1] - 8:11
Newman [2] - 4:6, 6:12
news [1] - 11:4
next [6] - 42:4, 50:3, 54:1, 54:2, 56:21, 57:11
None [1] - 26:4
none [4] - 24:1, 38:20, 41:22, 55:7
Note [1] - 4:12
nothing [8] - 13:24, 13:25, 16:5, 22:23, 24:11, 40:25, 49:24, 55:23
Notice [1] - 11:3

notice [5] - 11:5, 11:21, 20:24, 34:10, 36:6
notified [1] - 35:22
notify [1] - 50:10
number [6] - 15:4, 15:25, 22:11, 23:3, 40:2, 48:9
numbers [1] - 22:21
numerous [4] - 17:24, 28:24, 35:3, 52:16

**O**

objection [1] - 7:11
obligated [1] - 50:9
obtain [1] - 23:24
obvious [1] - 35:15
obviously [2] - 7:24, 32:20
occasions [1] - 35:4
occurred [5] - 23:12, 24:1, 26:7, 29:6
October [1] - 1:17
office [3] - 5:11, 5:16, 26:3
officer [1] - 29:16
officers [1] - 29:16
offsetting [2] - 54:15, 54:20
often [3] - 15:7, 35:13, 37:3
old [1] - 16:3
Oliphant [4] - 1:8, 1:16, 2:6, 2:15
omission [2] - 48:13, 48:21
once [1] - 16:7
Once [1] - 11:21
One [3] - 26:17, 34:4, 55:15
one [25] - 5:24, 8:14, 11:13, 17:17, 17:23, 18:18, 19:7, 21:10, 21:17, 22:4, 32:14, 33:18, 39:2, 42:4, 42:5, 43:2, 48:9, 48:14, 53:8, 53:9, 53:11, 53:23, 55:19, 55:21, 57:13
ones [8] - 20:20, 30:21, 30:22, 30:23, 30:24, 43:6, 46:22, 51:23
ooo [1] - 4:10
open [2] - 4:13, 57:3
opinion [6] - 14:23, 36:24, 43:15, 46:16, 46:17
opponent [1] - 22:9

**opponent's** [1] - 40:24
**opportunity** [2] - 11:25, 36:7
**opposed** [2] - 14:13, 37:8
**opposition** [1] - 52:17
**option** [1] - 36:3
**Oral** [1] - 1:22
**oral** [2] - 4:12, 9:13
**order** [13] - 5:21, 6:16, 6:17, 32:20, 36:22, 36:24, 36:25, 37:5, 43:5, 53:6, 53:12, 56:1, 57:19
**orders** [1] - 5:24
**ordinary** [1] - 10:11
**Otherwise** [2] - 19:2, 45:9
**otherwise** [2] - 40:15, 45:11
**ought** [8] - 6:21, 6:23, 7:15, 8:12, 23:1, 32:13, 37:24, 47:11
**ourselves** [1] - 35:12
**outset** [1] - 8:3
**outside** [1] - 31:8
**oversight** [1] - 32:10
**own** [8] - 18:3, 18:6, 18:17, 25:2, 31:15, 43:23, 46:20
**owners** [3] - 20:8, 22:20, 24:8

**P**

**page** [2] - 43:14, 57:13
**pale** [1] - 33:1
**Pamela** [4] - 1:8, 1:16, 2:6, 2:15
**papers** [7] - 7:10, 21:7, 29:15, 29:24, 30:22, 43:14, 53:18
**paragraph** [6] - 20:13, 42:5, 44:11, 44:25, 53:23, 55:7
**part** [3] - 6:23, 29:8, 33:13
**partial** [1] - 40:7
**participants** [1] - 35:23
**participate** [9] - 10:22, 11:8, 11:23, 12:1, 19:5, 23:14, 29:17, 34:14, 36:3
**particular** [3] - 16:23, 32:21, 36:13
**parties** [4] - 10:19, 14:20, 36:22, 57:18
**partner** [3] - 5:15, 6:7, 30:14

**party** [4] - 10:10, 16:21, 21:13, 21:15
**past** [6] - 11:11, 36:9, 37:22, 38:14, 39:3, 49:11
**Patsley** [4] - 1:8, 1:17, 2:7, 2:16
**pay** [1] - 43:12
**paying** [2] - 12:7, 12:9
**pays** [1] - 19:18
**pending** [1] - 5:3
**Pennsylvania** [3] - 4:6, 39:23, 43:25
**pension** [2] - 14:18, 35:2
**Pension** [7] - 1:3, 3:5, 3:12, 4:23, 5:7, 5:13, 11:17
**people** [7] - 8:22, 11:24, 15:13, 20:8, 24:8, 51:17, 53:17
**peppered** [1] - 36:13
**perfectly** [1] - 32:24
**perhaps** [1] - 54:21
**permission** [1] - 5:5
**person** [3] - 9:1, 34:15, 45:8
**personal** [2] - 23:24, 54:12
**persuaded** [1] - 50:7
**Peter** [14] - 1:7, 1:9, 1:10, 1:15, 1:17, 1:18, 2:5, 2:7, 2:8, 2:14, 2:16, 2:17, 3:10, 5:15
**Pharmaceuticals** [1] - 51:2
**Philadelphia** [1] - 4:6
**Phillips** [1] - 2:10
**philosophical** [1] - 8:13
**phonetic** [1] - 53:25
**pick** [1] - 14:25
**picked** [1] - 14:3
**pinning** [2] - 19:10, 19:11
**Pipefitters** [3] - 3:5, 4:22, 5:6
**place** [1] - 32:2
**plaintiff** [42] - 4:18, 8:21, 9:16, 9:17, 10:7, 10:8, 11:15, 12:16, 13:21, 16:8, 16:11, 17:6, 19:5, 20:19, 22:2, 22:20, 23:5, 23:7, 27:16, 27:23, 33:9, 33:17, 34:13, 36:4, 36:7, 36:17, 37:1, 37:7, 37:10, 37:24, 38:14,

39:4, 39:8, 40:10, 42:10, 44:15, 44:19, 50:16, 51:2, 54:4, 55:20
**Plaintiff** [5] - 1:5, 1:13, 2:3, 2:12, 3:16
**plaintiffs** [6] - 5:20, 7:14, 11:9, 15:4, 15:7, 45:23
**plaintiffs'** [3] - 6:1, 10:2, 33:10
**plan** [1] - 22:4
**plead** [1] - 51:2
**pleadings** [1] - 30:22
**Plewnia** [1] - 16:25
**Plumber** [1] - 26:14
**Plumbers** [8] - 3:4, 4:22, 5:6, 12:4, 12:8, 12:17, 12:20, 22:3
**plus** [1] - 18:10
**Point** [2] - 51:18
**point** [11] - 17:11, 22:12, 37:18, 38:15, 39:3, 39:17, 40:23, 54:1, 54:2, 54:3, 55:15
**pointed** [1] - 12:15
**pointing** [2] - 8:9, 35:19
**points** [1] - 52:17
**pools** [1] - 31:13
**portfolio** [1] - 35:23
**portfolios** [1] - 36:2
**pose** [1] - 24:16
**position** [9] - 18:14, 21:23, 21:24, 28:6, 29:5, 35:13, 40:1, 51:22, 56:11
**positions** [1] - 39:6
**possibility** [3] - 54:6, 54:14
**possible** [6] - 23:23, 31:7, 33:4, 34:8, 51:15, 56:19
**possibly** [1] - 9:10
**power** [2] - 44:8, 51:19
**practical** [1] - 28:10
**practically** [1] - 50:22
**precedent** [1] - 43:1
**prediction** [1] - 39:9
**prepared** [2] - 48:22, 48:25
**presence** [1] - 26:3
**present** [1] - 33:3
**presentation** [1] - 5:12
**presenting** [1] - 5:12
**presumption** [2] - 27:18, 33:16
**pretty** [1] - 35:13,

35:15 [1]
**Pretty** [1] - 7:19
**prevent** [3] - 10:1, 22:6, 52:11
**Prima** [3] - 46:5, 46:11, 49:20
**prima** [1] - 16:7
**primary** [3] - 30:13, 30:18, 32:15
**printout** [1] - 43:14
**pro** [2] - 5:4, 58:6
**problem** [6] - 13:6, 24:16, 25:10, 34:8, 37:7, 39:7
**proceeds** [1] - 32:1
**process** [3] - 32:18, 39:1, 39:4
**procurests** [1] - 16:22
**Professor** [1] - 34:11
**program** [3] - 35:23, 35:24, 35:25
**prompt** [1] - 36:6
**proof** [12] - 12:22, 16:11, 20:11, 20:12, 27:2, 44:17, 45:10, 45:12, 49:7, 50:23, 50:24, 51:16
**properly** [1] - 26:11
**propose** [1] - 26:14
**proposed** [2] - 52:19, 53:6
**prove** [5] - 16:12, 16:13, 16:14, 44:18, 51:3
**proven** [1] - 44:20
**provide** [3] - 38:22, 47:4, 49:4
**provided** [1] - 47:2
**provision** [2] - 45:5, 45:16
**provisions** [1] - 24:13
**Pslra** [17] - 8:4, 9:14, 9:19, 10:3, 11:3, 11:24, 13:20, 14:12, 16:7, 27:2, 32:12, 32:15, 33:12, 33:16, 34:2, 52:10, 55:5
**purchase** [7] - 20:17, 42:8, 42:20, 43:17, 46:20, 46:23, 48:16
**purchased** [3] - 21:1, 23:18, 54:14
**Purchaser** [1] - 21:16
**purchaser** [7] - 21:3, 27:11, 43:1, 43:2, 43:5, 51:11, 55:4
**purchases** [3] - 42:17, 54:7, 54:10
**purported** [1] - 30:9
**purportedly** [1] - 16:9

**purporting** [1] - 28:7
**purports** [1] - 23:25
**purpose** [3] - 10:1, 10:6, 40:18
**purposes** [6] - 9:19, 12:2, 21:22, 32:15, 50:3, 55:5
**pursuant** [1] - 11:18
**pursue** [2] - 46:1, 46:8
**push** [1] - 47:17
**put** [12] - 12:13, 14:4, 18:17, 29:2, 29:22, 33:24, 53:2, 55:14, 57:2, 57:25, 58:1
**putative** [3] - 11:22, 16:9, 33:19
**puts** [1] - 57:15
**putting** [2] - 49:5, 54:3

**Q**

**quality** [1] - 35:8
**questions** [1] - 15:23
**quick** [1] - 52:9
**quickly** [1] - 52:8
**quite** [1] - 28:1
**quoting** [1] - 43:14

**R**

**race** [1] - 10:3
**raise** [2] - 24:16, 37:19
**raised** [5] - 8:19, 21:11, 22:4, 36:23, 39:6
**raising** [1] - 47:25
**Randal** [4] - 1:8, 1:16, 2:6, 2:15
**Rq** [1] - 21:7
**read** [5] - 13:2, 14:22, 39:24, 48:4, 52:13
**reading** [1] - 38:2
**reads** [2] - 47:5
**real** [5] - 10:19, 21:13, 21:15, 52:8, 54:24
**Real** [1] - 52:9
**reality** [1] - 39:12
**really** [12] - 8:22, 10:7, 14:8, 16:12, 19:10, 23:5, 24:16, 28:11, 31:14, 33:8, 39:13, 54:19
**reap** [1] - 51:23
**reason** [1] - 9:14
**reasons** [2] - 22:12, 23:3
**receive** [2] - 31:3, 36:6
**received** [1] - 53:17
**recent** [1] - 51:1

recited [1] - 44:11
record [10] - 12:23, 13:8, 20:12, 31:4, 39:14, 44:18, 47:8, 55:14, 58:1
records [1] - 30:5
recover [1] - 44:4
recovered [1] - 35:5
recoveries [1] - 35:20
red [1] - 22:11
reduce [1] - 55:24
refer [1] - 41:20
reference [1] - 36:2
references [1] - 52:16
reflect [1] - 40:7
regard [2] - 21:12
regarding [2] - 53:3, 57:6
Registered [1] - 2:25
relate [2] - 5:24, 6:3
related [1] - 5:25
relates [1] - 18:4
relation [1] - 14:24
relationship [4] - 15:10, 31:12, 40:4, 52:22
relative [1] - 15:19
relied [1] - 44:2
relitigate [1] - 23:10
remember [1] - 22:21
rendered [1] - 13:1
Rent [2] - 39:20, 39:22
Rentway [2] - 39:20, 39:22
reply [6] - 13:7, 17:2, 20:14, 56:25, 57:14
reported [1] - 54:16
Reporter [1] - 2:25
Reporters [1] - 4:12
represent [10] - 16:15, 20:5, 33:4, 33:18, 34:25, 44:13, 45:3, 48:22, 56:1
representation [13] - 18:24, 19:7, 25:1, 32:21, 35:17, 38:2, 38:5, 41:24, 43:7, 45:22, 46:21, 53:3, 55:9
representations [2] - 47:24, 48:2
representative [2] - 37:16, 38:1
representatives [1] - 8:16
represented [6] - 11:6, 35:3, 36:9, 51:9, 53:22, 54:21
representing [2] - 10:25, 12:21

represents [2] - 28:5, 46:7
require [4] - 18:24, 40:9, 42:16, 42:23
required [5] - 18:6, 45:6, 46:3, 48:23, 51:2
requirements [1] - 27:2
requires [3] - 38:24, 49:3, 50:8
requisite [1] - 49:8
Res [1] - 23:2
res [5] - 12:25, 22:2, 22:10, 23:4, 27:22
residents [1] - 26:5
respect [9] - 12:20, 14:8, 14:9, 15:23, 17:15, 23:3, 23:8, 31:4, 56:15
respond [5] - 4:15, 34:22, 40:5, 41:16, 43:9
responded [1] - 29:15
responding [1] - 34:23
response [3] - 17:3, 26:14, 41:6
responses [1] - 26:17
responsibilities [1] - 37:10
restate [1] - 54:18
result [2] - 22:19, 24:10
retainer [1] - 45:7
review [2] - 29:3, 36:17
reviewed [1] - 29:23
Richards [13] - 3:18, 3:18, 6:5, 6:6, 6:9, 6:15, 6:25, 7:13, 38:9, 38:10, 39:11, 58:3
Rigrodsky [65] - 3:7, 5:10, 5:11, 7:1, 7:17, 9:3, 9:4, 9:9, 10:14, 11:2, 11:14, 12:5, 13:9, 13:15, 14:7, 15:1, 15:18, 16:16, 16:20, 19:22, 19:23, 20:10, 21:11, 22:8, 22:17, 23:2, 24:17, 25:4, 25:5, 25:6, 25:7, 25:10, 26:10, 26:17, 27:7, 28:13, 29:14, 30:12, 31:23, 32:5, 32:19, 33:24, 33:25, 34:4, 34:18, 36:13, 38:18, 38:19, 40:24, 43:10, 43:11,

45:1, 48:21, 48:25, 53:5, 53:6, 53:11, 53:16, 53:21, 54:17, 55:4, 55:12, 56:17, 56:23, 58:9
road [1] - 7:23
Robbins [2] - 3:2, 5:2
Robert [2] - 3:15, 5:18
Rodman [1] - 5:2
role [2] - 52:22, 57:24
Rosenfeld [73] - 3:3, 4:24, 4:25, 5:4, 7:2, 7:18, 17:12, 17:17, 17:22, 18:2, 18:18, 18:21, 19:13, 19:21, 24:23, 34:19, 34:20, 34:22, 35:12, 35:19, 36:20, 37:11, 37:18, 38:4, 38:16, 39:10, 39:16, 39:22, 40:6, 41:7, 41:18, 42:4, 42:16, 42:23, 43:12, 44:10, 44:25, 45:14, 45:21, 46:4, 46:11, 46:14, 47:1, 47:7, 47:12, 47:21, 47:23, 48:8, 48:15, 48:18, 48:23, 49:12, 49:16, 49:19, 50:6, 50:13, 50:18, 50:21, 51:8, 51:21, 52:2, 52:6, 52:9, 53:21, 54:2, 54:9, 54:23, 54:25, 55:15, 56:9, 56:12, 57:1, 58:8
Rosenthal [1] - 2:21
rubber [1] - 7:22
Rudman [1] - 3:2
Rule [1] - 21:13

S

Sachs [1] - 55:22
Sachs' [1] - 55:25
Sailer [1] - 53:25
sale [1] - 48:16
sanctioned [1] - 49:7
save [1] - 7:3
saw [1] - 11:5
scenario [1] - 55:19
scent [1] - 35:11
scheduled [1] - 9:14
scheduling [1] - 5:21
Schiffrin [1] - 44:6
Schulman [3] - 3:7, 3:9, 53:24
Sean [1] - 44:5
seated [1] - 4:14
second [5] - 6:17, 11:19, 23:16, 24:10,

46:24
section [1] - 21:12
securities [21] - 6:11, 6:24, 7:12, 7:15, 20:18, 21:3, 21:16, 22:13, 23:21, 27:12, 27:17, 28:23, 41:23, 42:9, 43:3, 43:22, 46:19, 48:16, 51:10, 55:5, 55:8
security [1] - 15:6
see [9] - 10:12, 13:22, 14:1, 15:7, 26:10, 29:8, 29:11, 31:3, 32:22
seeing [1] - 16:4
seek [4] - 19:4, 23:9, 40:9, 53:19
seeking [3] - 42:25, 43:4, 43:5
seemingly [1] - 13:23
Seidman [2] - 3:10, 5:15
select [2] - 10:23, 11:9
selected [2] - 9:17, 33:17
selection [1] - 53:24
sell [2] - 20:18, 25:25
seller [3] - 21:3, 21:16, 55:5
senior [1] - 29:16
sense [2] - 9:11, 20:23
separate [4] - 14:14, 31:7, 33:15, 55:10
series [1] - 4:18
serve [1] - 27:16
service [1] - 11:5
serving [4] - 20:19, 37:7, 42:10, 44:14
set [6] - 8:21, 13:20, 20:10, 30:7, 31:24, 35:24
Seth [2] - 3:7, 5:10
sets [2] - 8:8, 9:14
settlement [2] - 32:6, 32:14
several [1] - 18:12
share [2] - 7:25, 55:25
shares [2] - 23:19, 24:2, 54:14
sheets [1] - 38:23
Shoot [1] - 44:24
short [1] - 39:9
shot [1] - 9:2
shots [1] - 52:25
showed [1] - 6:18
showing [1] - 49:8
shows [1] - 29:12
side [7] - 21:14, 25:25, 26:15, 40:2, 55:3,

57:15, 57:25
sides [1] - 56:24
sign [1] - 37:5
signatories [8] - 16:22, 16:24, 30:13, 44:12, 45:2, 45:5, 45:16
signed [4] - 16:21, 20:1, 26:20, 44:6
significant [4] - 12:14, 13:22, 14:11, 36:1
signing [1] - 58:6
Silver [1] - 2:1
similar [2] - 15:9, 35:25
similarly [4] - 1:4, 1:12, 2:1, 2:11
Similarly [1] - 44:5
simple [1] - 7:19
simply [2] - 35:20, 36:25
single [1] - 46:8
situated [4] - 1:4, 1:13, 2:2, 2:11
size [4] - 15:1, 15:9, 15:19, 33:12
slam [1] - 33:7
slightly [1] - 10:14
Smith [4] - 44:7, 46:4, 46:11, 49:20
sold [1] - 21:1
sole [13] - 42:17, 42:20, 42:24, 43:6, 47:11, 48:15, 48:17, 48:23, 49:3, 53:7, 53:9, 53:11, 53:19
Sole [1] - 48:18
someone [1] - 27:20
sometimes [1] - 15:8
somewhere [1] - 31:10
soon [1] - 29:8
sooner [1] - 32:14
sophisticated [6] - 10:17, 14:10, 14:20, 14:23, 15:11, 15:20
sophistication [2] - 10:21, 15:9
Sorry [1] - 25:8
sort [5] - 8:5, 16:2, 24:19, 31:11, 51:6
sought [3] - 13:16, 45:23, 55:20
space [1] - 47:19
spaghetti [3] - 19:24, 22:9, 28:21
speaker [1] - 30:16
speaking [2] - 8:21, 18:15
Specialities [1] - 46:11

**Specialties** [2] - 46:5, 49:20
**specific** [2] - 18:12, 29:11
**spectators** [1] - 57:24
**speculation** [2] - 20:13, 25:13
**spent** [1] - 52:5
**spin** [1] - 56:11
**squabbling** [1] - 10:4
**stage** [1] - 37:22
**stake** [5] - 8:22, 9:25, 10:9, 16:19, 18:4
**Stamps** [1] - 43:2
**stand** [1] - 17:12
**standard** [1] - 14:8
**standards** [2] - 9:15, 9:19
**standing** [5] - 43:3, 43:23, 50:18, 51:15, 51:17
**start** [6] - 4:19, 8:10, 9:5, 9:7, 34:23, 36:14
**started** [1] - 52:10
**State** [1] - 14:17
**statement** [3] - 40:11, 45:12, 45:14
**statements** [1] - 29:23
**States** [16] - 1:1, 22:24, 23:9, 23:13, 23:15, 23:22, 24:13, 25:17, 26:2, 26:7, 26:8, 27:17, 27:19, 28:20, 31:20, 35:2
**states** [1] - 49:21
**stating** [4] - 35:21, 44:3, 44:7, 52:10
**statute** [3] - 10:1, 10:12, 10:16
**stay** [1] - 7:5
**Stefanie** [1] - 17:1
**stems** [2] - 45:4, 45:15
**stepped** [1] - 36:16
**sticking** [1] - 52:1
**sticks** [2] - 16:4, 16:5
**still** [5] - 17:21, 17:22, 18:16, 18:24, 39:1
**stipulated** [1] - 57:19
**stipulation** [1] - 36:22
**stock** [2] - 27:17, 43:17
**Stock** [2] - 23:18, 27:9
**stocks** [2] - 23:18, 46:23
**Stoia** [2] - 3:2, 5:1
**Stop** [1] - 53:4
**stop** [3] - 17:10, 24:3, 24:21
**story** [2] - 51:25, 52:2

**straightforward** [1] - 9:20
**straw** [1] - 22:11
**strong** [1] - 54:13
**Sturman** [1] - 30:15
**subject** [3] - 23:5, 23:24, 27:18
**subjected** [1] - 39:18
**submission** [1] - 56:25
**submit** [5] - 26:21, 29:4, 31:5, 45:7, 57:8
**submitted** [16] - 16:20, 17:2, 19:7, 20:14, 28:16, 30:24, 34:6, 34:12, 41:21, 44:17, 44:20, 45:23, 46:6, 52:20, 53:12
**substance** [1] - 29:7
**substantial** [4] - 10:16, 10:20, 11:7, 15:12
**suddenly** [1] - 51:18
**sue** [4] - 23:14, 26:25, 31:20, 43:23
**sued** [1] - 11:13
**suffer** [1] - 21:19
**suffered** [9] - 13:12, 14:11, 14:20, 15:11, 15:14, 21:10, 21:16, 21:25, 51:3
**suffers** [1] - 21:17
**sufficient** [2] - 14:21, 17:5
**sufficiently** [1] - 14:10
**suggest** [2] - 28:19, 31:1
**suggesting** [2] - 34:7, 37:22
**suing** [2] - 22:22, 27:19
**suit** [8] - 20:7, 27:19, 43:18, 44:4, 44:9, 47:15, 49:24, 51:15
**suits** [1] - 28:22
**supervising** [1] - 22:6
**Supp** [1] - 46:12
**supplemental** [7] - 29:4, 31:6, 38:23, 39:2, 41:21, 49:5, 57:3
**support** [2] - 29:5, 30:25
**suppose** [1] - 22:4
**Supreme** [2] - 43:1, 51:1
**sustained** [2] - 17:6, 36:2
**swearing** [1] - 41:12

**swears** [1] - 25:13
**Swinburn** [4] - 1:9, 1:18, 2:8, 2:17
**sworn** [4] - 29:23, 44:21, 45:12, 45:14
**system** [1] - 22:25

**T**

**table** [1] - 4:23
**talks** [1] - 55:20
**Tamsin** [2] - 4:6, 6:12
**task** [1] - 30:6
**tendered** [1] - 58:7
**term** [2] - 35:3, 35:21
**Texas** [1] - 35:4
**themselves** [1] - 31:6
**therefore** [5] - 27:22, 33:7, 46:7, 51:24, 54:21
**they've** [12] - 29:11, 36:16, 36:18, 38:14, 39:3, 40:25, 48:4, 50:4, 50:8, 51:17, 51:19, 53:18
**They've** [3] - 29:23, 29:24, 53:18
**thinking** [2] - 13:5, 22:18
**Third** [5] - 9:21, 13:19, 14:9, 14:22, 39:17
**three** [4] - 6:11, 14:14, 15:8, 55:7
**throughout** [1] - 51:20
**throwing** [1] - 16:3
**thrown** [1] - 18:11
**tied** [2] - 12:24, 54:11
**ties** [1] - 13:23
**Tikellis** [2] - 3:14, 5:19
**timing** [1] - 56:13
**Timothy** [4] - 1:9, 1:17, 2:7, 2:16
**today** [6] - 5:15, 9:12, 30:11, 57:5, 57:24, 58:5
**together** [3] - 12:13, 15:8, 58:2
**tomorrow** [1] - 25:2
**Tony** [1] - 6:9
**touch** [1] - 30:10
**trade** [4] - 19:2, 26:5, 26:6, 40:16
**trades** [2] - 26:6, 27:9
**trading** [1] - 20:24
**transacted** [2] - 41:23, 55:8
**transactions** [3] - 20:25, 30:4, 54:5
**tried** [3] - 8:4, 26:15,

27:3
**trip** [1] - 8:2
**trouble** [2] - 24:5, 29:25
**true** [6] - 13:13, 13:15, 14:19, 26:18, 30:6, 53:16
**Trust** [4] - 21:5, 43:24, 44:2, 46:15
**truth** [1] - 26:21
**try** [2] - 9:9, 23:7
**trying** [5] - 18:11, 32:25, 41:16, 42:22, 47:17
**tuned** [2] - 32:13, 32:16
**turn** [2] - 15:22, 33:8
**turns** [1] - 17:8
**two** [8] - 8:8, 14:6, 15:8, 16:24, 17:6, 22:21, 29:15, 30:20
**Two** [1] - 26:17
**Tx** [1] - 35:4
**type** [2] - 32:22, 36:11
**typicality** [1] - 38:1
**typically** [1] - 55:17

**U**

**ultimate** [1] - 32:10
**ultimately** [2] - 10:15, 33:18
**uncharacteristically** [1] - 57:23
**under** [8] - 16:6, 21:16, 43:1, 43:22, 50:10, 51:1, 51:10
**underlying** [1] - 21:19
**understood** [2] - 19:9, 24:6
**undisclosed** [2] - 54:7, 54:9
**undisputed** [2] - 46:18, 46:22
**unfair** [1] - 48:2
**unfit** [1] - 36:19
**unfortunate** [1] - 9:12
**unfortunately** [2] - 16:2, 21:6
**uniformly** [1] - 27:11
**union** [1] - 12:11
**Union** [1] - 12:20
**unique** [2] - 23:6, 27:23
**United** [16] - 1:1, 22:24, 23:9, 23:12, 23:15, 23:21, 24:13, 25:16, 26:2, 26:7, 26:8, 27:17, 27:19, 28:20, 31:20, 35:2

**unlikely** [3] - 13:3, 13:6, 19:15
**unmanageable** [1] - 40:18
**unopposed** [1] - 36:23
**unrebutted** [2] - 20:15, 44:20
**unrelated** [1] - 15:3
**unrestricted** [1] - 43:20
**untenable** [2] - 27:24, 28:21
**unusual** [1] - 24:12
**up** [12] - 6:18, 8:15, 12:24, 17:12, 21:11, 35:24, 41:8, 49:14, 49:19, 54:11, 56:14, 57:3
**updated** [1] - 30:23
**urge** [1] - 34:5
**Usdcj** [1] - 1:24

**V**

**value** [1] - 27:1
**various** [1] - 15:4
**vice** [2] - 5:4, 58:6
**view** [1] - 49:4
**viewed** [1] - 18:9
**vigorous** [2] - 29:9, 29:11
**violations** [1] - 23:21
**voice** [1] - 31:8
**vs** [4] - 12:4, 46:5, 46:11, 49:20

**W**

**wait** [1] - 46:24
**Wait** [1] - 24:9
**waives** [1] - 34:14
**wall** [2] - 16:3, 19:24
**Walter** [1] - 2:10
**wants** [2] - 27:16, 31:3
**Washington** [1] - 4:3
**Wayne** [4] - 1:8, 1:17, 2:7, 2:16
**Weinberg** [2] - 21:6, 43:13
**Weiss** [16] - 3:7, 3:9, 5:11, 5:16, 11:10, 14:4, 14:6, 22:6, 35:25, 36:9, 52:18, 53:1, 53:7, 53:9, 53:13, 53:24
**Western** [3] - 39:22, 39:24, 43:24
**whatsoever** [1] - 28:15

**whichever** [1] - 48:19
**widely** [1] - 11:4
**Willkie**[2] - 3:21, 6:10
**Wilmington**[1] - 1:21
**win** [1] - 49:18
**wire** [1] - 11:4
**Wisconsin**[1] - 14:17
**Wolfe**[4] - 1:9, 1:17,
  2:7, 2:16
**word** [6] - 12:16,
  47:11, 48:17, 49:1,
  49:3, 49:5
**wording** [1] - 47:18
**words** [2] - 10:22,
  49:6
**works** [2] - 13:4, 30:15
**worried** [1] - 36:14
**worry** [1] - 48:3
**worth** [2] - 15:14,
  29:19
**write** [1] - 29:17
**written** [1] - 40:17
**wrongdoing** [2] -
  24:1, 26:7

## Y

**Yanez**[2] - 3:21, 6:9
**Yates**[4] - 1:9, 1:17,
  2:7, 2:16
**York**[8] - 3:3, 3:10,
  3:22, 5:16, 23:18,
  30:15
**yourself** [1] - 12:15
**yourselves** [1] - 57:10

## Z

**zone** [1] - 13:5