# EXHIBIT C
## to letter to
## Hon. Kent A. Jordan
## from Seth D. Rigrodsky
## dated November 4, 2005

## -- Part 1 of 2 --

9·27·04



RECEIVED
SEP 2 8 2004
BY:

1  LERACH COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   JONAH H. GOLDSTEIN (193777)
3  TRICIA L. McCORMICK (199239)
   401 B Street, Suite 1700
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
       – and –
6  JONATHAN E. BEHAR (174916)
   355 South Grand Avenue, Suite 4170
7  Los Angeles, CA 90071
   Telephone: 213/617-9007
8  213/617-9185 (fax)

9  [Proposed] Lead Counsel for Plaintiffs

10                  UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                        WESTERN DIVISION

13

14  In re CORINTHIAN COLLEGES, INC. )   **VIA FAX**
    SHAREHOLDER LITIGATION        )
15  _____ )   Lead Case No. CV 04-05025-R-CWx
                                    )
16  This Document Relates To:       )   <u>CLASS ACTION</u>
                                    )
17       ALL ACTIONS.              )   REPLY MEMORANDUM IN
    _____ )   FURTHER SUPPORT OF MOTION
18                                      TO APPOINT THE PENSION FUNDS
                                        AS LEAD PLAINTIFF AND TO
19                                      APPROVE LEAD PLAINTIFF'S
                                        CHOICE OF LEAD COUNSEL
20
                                        DATE:      October 4, 2004
21                                      TIME:      10:00 a.m.
                                        ROOM:      8
22                                      JUDGE:     Hon. Manuel L. Real
23

24

25

26

27

28

1

# TABLE OF CONTENTS

2
                                                                          Page

3    I.    INTRODUCTION........................................................................... 1

4    II.   THE PSLRA'S UNAMBIGUOUS LANGUAGE AND THE VAST
           MAJORITY OF COURTS SUPPORT THE APPOINTMENT OF A
5          SMALL, COHESIVE GROUP LIKE THE PENSION FUNDS.................... 7

6    III.  METZLER HAS NO FINANCIAL INTEREST IN THE RELIEF
           SOUGHT BY THE CLASS ........................................................ 13
7
     IV.   METZLER DOES NOT HAVE THE LARGEST FINANCIAL
8          INTEREST IN THE RELIEF SOUGHT BY THE CLASS ....................... 13

9    V.    METZLER IS A FOREIGN INVESTOR SUBJECT TO UNIQUE
           DEFENSES ......................................................................... 16
10
     VI.   CONCLUSION ..................................................................... 18
11
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bell v. Ascendant Solutions, Inc.,*
    No. 3:01-CV-0166-P,
    2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17, 2002)............................ 12

*Brown v. Computerized Thermal Imaging, Inc.,*
    No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515 (D. Or. Sept. 24, 2002)....... 11

*Chill v. Green Tree Fin. Corp.,*
    181 F.R.D. 398 (D. Minn. 1998)................................................................... 16

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,*
    657 F.2d 890 (7th Cir. 1981)......................................................................... 5

*Ferrari v. Impath, Inc.,*
    No. 03 Civ. 5669 (DAB),
    2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. Jul. 15, 2004) ............................ 4

*Funke v. Life Fin. Corp.,*
    No. 99 Civ. 11877 (CBM),
    2003 U.S. Dist. LEXIS 1226 (S.D.N.Y. Jan. 25, 2003)............................... 12

*Gemstar-TV Guide Int'l Sec. Litig.,*
    209 F.R.D. 447 (C.D. Cal. 2002) ........................................................*passim*

*Gluck v. Cellstar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997)............................................................... 3

*Fischler v. Amsouth Bancorporation,*
    No. 96-1567-C,
    1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 7, 1997) ............................... 3

*Greebel v. FTP Software,*
    939 F. Supp. 57 (D. Mass. 1996) ................................................................. 3

*Holley v. Kitty Hawk, Inc.,*
    200 F.R.D. 275 (N.D. Tex. 2001) ........................................................... 3, 12

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig,*
    No. 04-0265,
    2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004) ............................... 12

*In re AremisSoft Corp. Sec. Litig.,*
    210 F.R.D. 109 (D.N.J. 2002)...................................................................... 16

*In re Baan Co. Sec. Litig.,*
    186 F.R.D. 214 (D.D.C. 1999)...................................................................... 6

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002)...............................................................*passim*

Page

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)................................................................. 12

*In re Crayfish Co. Sec. Litig.,*
    No. 00 Civ. 6766 (DAB),
    2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. Jun. 4, 2002) ...................... 12

*In re Diasonics Sec. Litig.,*
    599 F. Supp. 447 (N.D. Cal. 1984) ......................................................... 5

*In re Olsten Corp. Sec. Litig.,*
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................... 12

*In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.,*
    No. 01-949 Section "T"(5),
    2001 U.S. Dist. LEXIS 21816, (E.D. La. Dec. 17, 2001)................... 12

*In re Oxford Health Plans, Inc. Sec. Litig.,*
    182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................... 12

*In re Surebeam Corp. Sec. Litig.,*
    No. 03-CV-1721 JM (POR),
    2003 U.S. Dist. LEXIS 25022, (S.D. Cal. Dec. 31, 2003)................ 3, 10

*In re Universal Access, Inc.,*
    209 F.R.D. 379 (E.D. Tex. 2002) ........................................................ 12

*In re Versata, Inc., Sec. Litig.,*
    No. C 01-1439 SI,
    2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17, 2001)...............*passim*

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.,*
    No. 00-3605 (DRD),
    2000 U.S. Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000)................ 7, 8, 12

*Newman v. Eagle Bldg. Techs.,*
    209 F.R.D. 499 (S.D. Fla. 2002) ......................................................... 12

*Reiger v. Altris Software, Inc.,*
    No. 98cv0528J (JFS),
    1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 14, 1998)............. 6, 10, 14

*Schulman v. Lumenis, Ltd.,*
    No. 02 Civ. 1989 (DAB),
    2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. Jun. 17, 2003) ................... 12

*Takeda v. Turbodyne Techs., Inc.,*
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................... 3

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................... 12

1

2                                                                                    **Page**

3  *Yamner v. Boich,*
           No. C-92-20597 RPA,
4          1994 U.S. Dist. LEXIS 20849, (N.D. Cal. Sept. 15, 1994) .......................... 16

5  *Yousefi v. Lockheed Martin Corp.,*
           70 F. Supp. 2d 1061 (C.D. Cal. 1999) ............................................................. 9

6

7  **STATUTES, RULES AND REGULATIONS**

   15 U.S.C.
8           §78u-4(a)(3)(I) ..................................................................................................... 2

9  Federal Rules of Civil Procedure
          Rule 23 ..................................................................................................*passim*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The Pension Funds (which consist of Sheet Metal Workers' National Pension

2    Fund, National Elevator Industry Pension Fund and Greater Pennsylvania Carpenters

3    Pension Fund) respectfully submit this reply memorandum in further support of their

4    motion for appointment as lead plaintiff and for approval of their selection of Lerach

5    Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel.

6    Of the nine lead plaintiff motions originally filed, in this action, the only remaining

7    motions are: (1) the Pension Funds' motion; and (2) the motion of Metzler Investment

8    GmbH ("Metzler").[1]

9    **I.    INTRODUCTION**

10    With losses of over $2.43 million, the Pension Funds should be appointed lead

11    plaintiff because they have the largest financial interest in the relief sought in this case

12    and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil

13    Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306

14

15

16    [1]    On September 23, 2004, Wyoming State Treasurer Fund filed a notice of withdrawal of its motion for appointment as lead plaintiff, stating its belief that the

17    Pension Funds are the most adequate plaintiff. On September 20, 2004, United Association Local Union Officers & Office Employees Pension Fund filed a response

18    to the competing motions for appointment as lead plaintiff recognizing that other

19    movants have a larger financial interest than it, and not opposing the Pension Funds' appointment. Also on September 20, 2004, the following movants all filed notices of

20    withdrawal of their motions for appointment as lead plaintiff: (1) Croteau Investment

21    Management, Inc.; (2) the Michigan Pension Funds (consisting of City of St. Clair Shores Police and Fire Retirement System, the City of Sterling Heights General

22    Employees Retirement System, the City of Dearborn Heights Act 345 Policemen &

23    Firemen Retirement System, the Clinton Charter Township Police & Fire Pension Fund and the City of Pontiac Policemen's and Firemen's Retirement System); and (3)

24    the Longano Group (consisting of Anthony and Rosalie Longano, Ivan Meneses and

25    F. Leroy Higgins). The remaining movants the Karetas Group (consisting of Milton A. Karetas, John Verderane, the Arkansas Carpenters Pension Fund, John Cutaia and

26    Steven Cutaia) and the Bedoyan Group (consisting of Vicken Bedoyan, Robert D.

27    Murie and Robert G. Piper) also appear to have abandoned their motions as they have failed to file an opposition to the competing motions.

28

- 1 -

1  F.3d 726, 732 (9th Cir. 2002) (remanding with instructions to find a group of *five*

2  individuals as the most adequate plaintiff and holding that "a straightforward

3  application of the statutory scheme ... provides no occasion for comparing plaintiffs

4  with each other on any basis other than their financial stake in the case").

5      Ignoring the clear procedure outlined by the Ninth Circuit in *Cavanaugh*,

6  Metzler argues that it should be appointed as lead plaintiff because: (1) the Pension

7  Funds are a group; (2) although Metzler and all other movants used the same method

8  to calculate their financial interests, Metzler now claims a larger financial interest than

9  the Pension Funds under an alternative approach; and (3) Metzler claims it has the

10  "single largest financial interest" of any of the movants. Each of these arguments is

11  meritless. Moreover, Metzler suffers from a host of problems that prevent it from

12  being appointed as the sole lead plaintiff in this case.

13      Defendants have now also submitted a response to the lead plaintiff motions (1)

14  arguing that unrelated groups cannot be appointed as lead plaintiff; and (2) speculating

15  that some of the plaintiff law firms involved in this case might have conflicts of

16  interest, without submitting any evidence that any such conflicts exist.

17      First, while defendants cite a single case (out of more than 1,500 of the

18  securities class action cases in which lead plaintiffs have been appointed since the

19  enactment of the PSLRA) that holds otherwise, the overwhelming majority of courts,

20  including those in this District, have held that defendants lack standing to challenge

21  lead plaintiff motions. *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138

22  (C.D. Cal. 1999) ("defendants lack standing to object to the adequacy or typicality of

23  the proposed lead plaintiffs at this preliminary stage of the litigation").[2] Even if

24

---

25  [2]   *See also In re Surebeam Corp. Sec. Litig.*, No. 03-CV-1721 JM (POR), 2003
   U.S. Dist. LEXIS 25022, at *26 n.5 (S.D. Cal. Dec. 31, 2003) ("[d]efendants lack
26  standing to object to the adequacy or typicality of the presumptive lead plaintiff");
   *Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 277 (N.D. Tex. 2001) ("The plain
27  language of the statutory provisions does not provide for the defendants to weigh in on
28  who should represent the plaintiffs. Courts agree that generally, Defendants cannot

1    defendants had standing, they raise nothing but mere speculation about conflicts of

2    interest, without even stating about which firm or movant they are speculating.

3    Instead, defendants merely raise the possibility that there might be conflicts without

4    any basis for such an assertion in this case. *See Ferrari v. Impath, Inc.*, No. 03 Civ.

5    5669 (DAB), 2004 U.S. Dist. LEXIS 13898, at *21, *23 (S.D.N.Y. Jul. 15, 2004)

6    (rejecting as a "red-herring" "innuendo and inferences rather than established fact" to

7    rebut a proposed lead plaintiff group's most adequate plaintiff presumption).

8    Defendants have proffered no evidence whatsoever that any movant has any conflicts

9    of interests with their counsel.  Defendants should be admonished for making such

10   spurious speculative assertions.

11          Further, because defendants' interests are in direct conflict with the interests of

12   the class, it warrants consideration that they argue here, like Metzler, that a small,

13   cohesive group should not be appointed, but that only one lead plaintiff should be

14   appointed:

15          [I]t is often the defendant, preferring not to be successfully sued by

16          anyone, who supposedly undertakes to assist the court in determining

17          whether a putative class should be certified. When it comes, for instance,

18          to determining whether "the representative parties will fairly and

19          adequately protect the interests of the class," ... it is a bit like permitting

20          a fox, although with a pious countenance, to take charge of the chicken

21          house.

22

23   rebut the presumption of adequacy regarding Plaintiff's motion to serve as lead
     plaintiff."); *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997) ("The

24   statute is clear that only potential plaintiffs may be heard regarding appointment of a
     Lead Plaintiff.") (original emphasis omitted); *Fischler v. Amsouth Bancorporation*,

25   No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *6 (M.D. Fla. Feb. 7, 1997)
     ("The plain language of the [PSLRA] dictates only members of the plaintiff class may

26   offer evidence to rebut the presumption in favor of the most adequate plaintiff.");
     *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996) ("The test of [the

27   Reform Act for the appointment of lead plaintiff] clearly indicates that this issue is
     one over which only potential plaintiffs may be heard.").

28

- 3 -

1  *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895

2  (7th Cir. 1981) (quoting *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 450-51 (N.D.

3  Cal. 1984)). It is not surprising that defendants impliedly wish for Metzler to be the

4  sole lead plaintiff, as it would be much easier for defendants to attack one lead

5  plaintiff, like Metzler whose various infirmities could be exploited, at the class

6  certification stage, than it would be to mount a successful attack on each member of

7  the sophisticated institutional plaintiffs. This is precisely why small groups of

8  plaintiffs like the Pension Funds have been appointed by district courts in innumerable

9  cases. *See e.g., Gemstar-TV Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 455 (C.D. Cal.

10  2002) (finding the appointment of two pension funds as lead plaintiff *preferable* to

11  just one).

12      Defendants' and Metzler's heavy reliance upon *Gemstar* to support their

13  assertion that a group of plaintiffs must be related in order to be appointed as lead

14  plaintiff is misplaced. Even a cursory reading of *Gemstar* confirms that it does not

15  stand for the proposition that Metzler and defendants advocate. In fact, in *Gemstar*,

16  Judge Manella refused to appoint as lead plaintiff a group of *seven* plaintiffs, who had

17  made two separate motions and then later tried to combine their motions, because the

18  group was "too large and diverse to represent the class." *Id.* at 450. Her decision did

19  not turn upon the plaintiffs being unrelated. In fact, in *Gemstar*, Judge Manella did

20  appoint a group of *two pension funds* as lead plaintiff that had no prior relationship

21  except that they had jointly moved for appointment in another case. *Id.* at 452-53.

22      The fact that *Gemstar* does not stand for the proposition that a small, cohesive

23  group of plaintiffs like the Pension Funds cannot be appointed as lead plaintiff is even

24  clearer in a more recent opinion from Judge Manella in which she clearly rejects such

25  a holding. *Ferrari v. Gisch*, No. CV 03-7063 NM (SHx), slip op. (C.D. Cal. May 21,

26  2004) ("*DDi*") (attached as Exhibit B to the Declaration of Tricia L. McCormick in

27  Support of the Pension Funds' Opposition to Competing Motions for Appointment as

28  Lead Plaintiff ("McCormick Opp. Decl."), filed September 20, 2004). In *DDi*, Judge

- 4 -

1  Manella appointed a group of ***three unrelated individuals*** as lead plaintiff, finding
2  that the PSLRA "expressly authorizes the appointment of a 'group' of persons to serve
3  as Lead Plaintiffs," and noting that the "majority of courts" reject the notion that the
4  appointment of unrelated investors would violate the purposes of the PSLRA. *Id.* at
5  17-18 (citing *Cavanaugh*, 306 F.3d at 726). Judge Manella followed the majority rule
6  that a small, cohesive group, like the Pension Funds, can be appointed lead plaintiff,
7  regardless of any pre-litigation relationship. *Id.*

8      Likewise, defendants' and Metzler's reliance upon dated, pre-*Cavanaugh*
9  authority from other circuits to claim that the Pension Funds are not a proper group
10  under the PSLRA is meritless. Curiously, both defendants and Metzler fail to cite any
11  of the recent cases from this Circuit, including those decided ***after Cavanaugh*** and
12  after the SEC weighed in on the issue, relying on the statutory text and promoting the
13  adoption of a "rule of reason" encouraging small institutional groups, like the Pension
14  Funds, to serve as lead plaintiff. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-
15  17 (D.D.C. 1999). Not surprisingly, a review of those cases clearly demonstrates the
16  majority trend that courts allow for the appointment of a small group of plaintiffs,
17  especially where sophisticated institutional investors are involved, and do not require
18  a pre-litigation relationship as Metzler and defendants contend. *See infra*, §II.

19      In stark contrast to the Pension Funds which have the largest financial interest
20  in this litigation and clearly meet the requirements of Rule 23, Metzler suffers from a
21  multitude of problems that prevent its appointment here. First, Metzler has failed to
22  present evidence to the Court that Metzler even has the authority, under German law,
23  to sue or to seek lead plaintiff status on behalf of its clients, despite already having
24  had ***two opportunities*** to do so. *See Gemstar*, 209 F.R.D. at 452 (quoting *Piven v.
25  Sykes Enters.*, 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000)) (for the proposition
26  that the "lack of information concerning [a] plaintiff's 'identity, resources, and
27  experience' prevent[s] appointment as lead plaintiff"). The only thing Metzler has
28  submitted is a bare certification signed by two unidentified individuals that do not

1   even claim to have the authority to bind *Metzler*, let alone seek lead plaintiff status on

2   behalf of Metzler's clients.[3] Thus, because the $1.9 million financial interest Metzler

3   claims actually belongs to Metzler's clients, Metzler's financial interest in the

4   litigation appears to be $0.00.

5          Metzler's claim that it has the single largest loss of any movant is also

6   unavailing. Again, Metzler has not demonstrated that it, as opposed to its clients, has

7   *any* financial interest in the litigation, let alone the largest. In addition, the Pension

8   Funds' $2.4 million loss is larger than Metzler's claimed $1.9 million loss.

9   Consequently, under *Cavanaugh*, the Pension Funds are the presumptive lead plaintiff

10  and Metzler's claim of the "single largest loss" does not rebut that presumption. *See*

11  *In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at

12  *26 (N.D. Cal. Aug. 17, 2001) (appointing a group with the largest loss over an

13  individual with the single largest loss); *Reiger v. Altris Software, Inc.*, No. 98cv0528J

14  (JFS), 1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 11, 1998) (same); *Local 144*

15  *Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S.

16  Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000) (same).

17         In addition to having no financial interest in this case, let alone the largest

18  financial interest, Metzler suffers from still other issues that prevent its appointment as

19  lead plaintiff:

20    •    Metzler is organized under German law, therefore, Metzler is subject to

21         the unique defense that Germany would not recognize a judgment

22         obtained in the United States as *res judicata*, and thus is not an adequate

23         lead plaintiff. *See* The Pension Funds' Opposition to Competing

24         Motions as Lead Plaintiff ("Pension Funds' Opp.") at 15-16.

25

─────────────

26  [3]   What is more, because Metzler is organized in and operates from Germany, the
    Court would be compelled to interpret German law to even determine Metzler's
27  authority with respect to its clients' losses.

28

- Metzler failed to inform the Court how it intends to monitor and supervise this case from Frankfurt, Germany, or if it even understands the United States legal system and how it functions. *Id.* at 16-17.

- The two individuals who signed Metzler's certification offer no evidence that they are authorized to bind Metzler or to seek lead plaintiff status on its behalf. In fact, they have not even told the Court what their *titles* are at Metzler. *Id.* at 13-15.

In short, Metzler's application must be denied as it clearly is not adequate to serve as lead plaintiff. The Pension Funds, however, have both the largest financial interest and satisfy the requirements of Rule 23, and should, therefore, be appointed as lead plaintiff.

## II. THE PSLRA'S UNAMBIGUOUS LANGUAGE AND THE VAST MAJORITY OF COURTS SUPPORT THE APPOINTMENT OF A SMALL, COHESIVE GROUP LIKE THE PENSION FUNDS

Defendants' and Metzler's attempts to persuade this Court to adopt the minority position that a group of unrelated investors cannot be appointed as lead plaintiff relies heavily upon Judge Manella's *Gemstar* opinion. Unfortunately for Metzler, *Gemstar* does not support their position. Although Judge Manella refused to appoint a group of *seven* plaintiffs in *Gemstar*, she did not hang her decision solely on the fact that the plaintiffs were not related. 209 F.R.D. at 450. Instead, even a cursory reading of *Gemstar* reveals that Judge Manella relied heavily on the fact that a group of seven was too large to be manageable, and that the group was merely cobbled together by the group members' attorneys, *after the opening lead plaintiff motions were filed*, in order to attain the largest financial interest. *Id.* at 451-52. In fact, the group's members did not even have the same lead counsel. *See id.* Tellingly, however, in *Gemstar*, Judge Manella ultimately *appointed a group of two pension funds*, which had no prior relationship other than having jointly sought appointment as lead plaintiff in another case. *Id.* at 453.

1    In appointing the two pension funds, Judge Manella specifically rejected
2  defendants' arguments, like Metzler's arguments here, that appointing two pension
3  funds, as opposed to just one, would hinder the class. *Id.* at 455. Instead, Judge
4  Manella found that appointing more than one pension fund *was preferable* because
5  two institutional investors supervising a single law firm suggests that the pension
6  funds, rather than the attorneys, would control the litigation. *Id.* Finally, Judge
7  Manella also found appointing the two pension funds as lead plaintiff preferable to
8  appointing one lead plaintiff because "it ensures joint control over the litigation and
9  prevents a single lead plaintiff from acting unchecked in a manner contrary to the
10  interests of the class." *Id.* Thus, contrary to Metzler's contentions, *Gemstar* actually
11  *supports* the appointment of the Pension Funds as lead plaintiff in this case.

12    That Judge Manella did not intend for *Gemstar* to be interpreted as preventing
13  small groups of unrelated plaintiffs from serving as lead plaintiff is even more clear
14  when one considers Judge Manella's recent, post-*Cavanaugh*, opinion, in *DDi*.
15  McCormick Opp. Decl., Ex. B. In *DDi*, Judge Manella appointed a group of *three*
16  unrelated individuals as lead plaintiff, and outright rejected the minority rule that a
17  group of investors must be related in order to be appointed as lead plaintiff. *Id.* at 17.
18  Indeed, as noted by Judge Manella, the "majority of courts" have rejected such a rigid
19  rule. *Id.* Instead, Judge Manella followed the clear language in *Yousefi v. Lockheed*
20  *Martin Corp.*, 70 F. Supp. 2d 1061, 1068 (C.D. Cal. 1999) (declining to aggregate 137
21  plaintiffs, but appointing three plaintiffs to serve as a lead plaintiff group), which
22  states unabashedly that the PSLRA contemplates small groups of previously unrelated
23  plaintiffs to serve as lead plaintiff. McCormick Opp. Decl., Ex. B at 18. Thus,
24  because the issue is not whether the group is related, the Court, instead held that:

25    Since the statute expressly authorizes the appointment of a
26  "group" of persons to serve as Lead Plaintiffs, *the key question is*
27  *whether the proposed plaintiff group can effectively manage the*
28  *litigation and direct lead counsel.* In this regard, the court notes that the

1    SEC's position that any group of lead plaintiffs appointed should have

2    sophistication, expertise, and resources equivalent to those of an

3    institutional investor.

4    *Id.*[4]

5    Here, the Pension Funds are a small group of three, and therefore, the only

6    question is whether the Pension Funds can effectively manage the litigation and direct

7    counsel. Metzler's attempt to spin the Pension Funds as a group that lacks cohesion

8    and that cannot work together to the benefit of the class is contradicted by the

9    evidence before the Court. The Pension Funds have already demonstrated that they

10   are a small group of three sophisticated institutional investors that are willing and able

11   to work together for the best interests of the class.[5] In addition to certifying that they

12   are willing to fulfill the requirements of being class representatives, the Pension Funds

13   are committed to their willingness to lead the case. *See* Joint Decl., ¶¶4-6. In

14   addition, they chose to work together because the Pension Funds "believe that [their]

15   collective resources and experience will inure to the benefit of the class." *Id.* at ¶3.

16   Moreover, the Pension Funds understand their role as lead plaintiff and are actively

17   working with one another and with their chosen counsel Lerach Coughlin. *Id.* at ¶¶4-

18   6. The Pension Funds have implemented a decision-making process to facilitate their

19   effective joint prosecution of this action. *Id.* at ¶6. Thus, the Pension Funds are a

20   small, cohesive group of three sophisticated institutional investors which have opted

21

22
_____

23   [4]    Unless otherwise noted, all emphasis is added and citations are omitted.

24   [5]    *See* Ex. A to the Declaration of Tricia L. McCormick in Support of Motion to Appoint Sheet Metal Workers' National Pension Fund, National Elevator Industry

25   Pension Fund and Greater Pennsylvania Carpenters Pension Fund as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel Pursuant to §21D(a)(3)(B) of

26   the Securities Exchange Act of 1934, filed on September 7, 2004; Joint Declaration of the Pension Funds in Support of Reply Memorandum in Further Support of Motion to

27   Appoint the Pension Funds as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel ("Joint Decl."), filed concurrently herewith.

28

1    to work together and clearly fall within the requirements for a proper "group" set forth

2    in cases in this Circuit.

3          Indeed, Judge Manella is not the only judge in this Circuit to hold that a group

4    need not have a pre-litigation relationship.  To the contrary, Metzler's claim that

5    "California District courts are especially resistant"[6] to appointing small, unrelated

6    groups as lead plaintiff is false and directly contradicted by the recent authority in this

7    Circuit, including several post-*Cavanaugh* decisions.  *See, e.g.*, McCormick Opp.

8    Decl., Ex. B at 17 (noting that the majority of courts reject the requirement that a

9    group be related in order to be appointed as lead plaintiff, and following the majority

10   in appointing a group of three unrelated individuals); *Versata*, 2001 U.S. Dist. LEXIS

11   24270, at *17 ("Requiring a pre-litigation relationship, though appealing in its

12   simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure

13   that the lead plaintiffs will 'actively represent the interests of the purported class.'");

14   *Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *3-*4 (noting "the majority of courts to

15   have considered the issue allow aggregation in small groups" and citing cases); *Altris*,

16   1998 U.S. Dist. LEXIS 14705, at *13-*14 ("By using the phrase 'group of persons,'

17   Congress made clear that a court can consider the aggregate group's losses in

18   determining which group has the largest financial interest"); *Slutsky v. Endocare, Inc.*,

19   slip op. at 19 (C.D. Cal. Feb. 10, 2003) (McCormick Opp. Decl., Ex. C) (holding "a

20   group is permitted to aggregate its losses and serve as lead plaintiff, regardless of

21   whether a pre-existing relationship existed, if the characteristics required to

22   adequately represent a class are present in the group," and appointing two institutions

23   and a married couple as lead plaintiff); *Brown v. Computerized Thermal Imaging, Inc.*,

24   No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515, at *3-*6 (D. Or. Sept. 24, 2002)

25

---

26   [6]    *See* Consolidated Memorandum of Proposed Lead Plaintiff Metzler Investment

27   in Opposition to the Other Motions for Appointment as Lead Plaintiff/Lead Counsel
     ("Metzler Opp.") at 11.

28

1   (appointing unrelated group because the PSLRA "allows for a group of persons to
2   collectively serve as lead plaintiff," and because although *Cavanaugh* did not address
3   the issue of movant groups, "a group was approved in *Cavanaugh*").

4          In *Versata*, Judge Illston also recognized that the requirement of a pre-litigation
5   relationship is "too rigid," and is not the best way to ensure that the interests of the
6   class are well-represented. 2001 U.S. Dist. LEXIS 24270, at *17-*20. Instead, Judge
7   Illston noted that:

8          A case-by-case approach governed by the rule of reason allows the
9          court both to guard against improper plaintiffs – whether or not they
10         have a pre-litigation relationship – and to select investors who are most
11         willing and able to represent the interests of the class. Under such an
12         approach, the singular focus will be whether the asserted group has
13         demonstrated the ability to represent the class and direct the litigation
14         without undue influence from counsel. This task is made more efficient
15         without the distraction of evaluating the adequacy of a group's pre-
16         litigation relationship.

17  *Id.* at *21-*22. Clearly, despite Metzler's empty contention to the contrary, the clear
18  weight of authority in this Circuit, ***and across the country***, including the only Circuit
19  Court to have directly addressed the issue – the Third Circuit – allows for the
20  appointment of a small, sophisticated and cohesive group like the Pension Funds.[7]

21  _____

22  [7]    *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) (approving the
23  appointment of three pension funds as lead plaintiff and noting that the PSLRA
    "contains no requirement mandating that the members of a proper group be 'related'
24  in some manner; it requires only that any such group 'fairly and adequately protect the
    interests of the class'"); *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003
25  U.S. Dist. LEXIS 1226, at *14-*17 (S.D.N.Y. Jan. 25, 2003) (appointing group of
    nine individuals as lead plaintiff and not requiring a pre-litigation relationship); *In re*
26  *Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at
    *19 (S.D.N.Y. Jun. 4, 2002) ("a group of seven individuals does not 'present a group
27  so cumbersome as to deliver the control of the litigation into the hands of the
    lawyers'"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 U.S. Dist.
28  LEXIS 10348, at *4, *26-*27 (S.D.N.Y. Jun. 17, 2003) (appointing group of three as

1    Indeed, numerous courts, in addition to *Gemstar*, have found the appointment of a

2    small group of pension funds desirable. *See* Pension Funds' Opp. at 7.[8]

3

4

5

6    lead plaintiff); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)
     ("The language of the statute, 'person or group of persons' indicates that a plaintiffs
7    group – not merely the individual plaintiff – is considered."); *Honeywell*, 2000 U.S.
     Dist. LEXIS 16712, at *14 ("the PSLRA does not require that members of a group of
8    investors have some sort of pre-litigation relationship in order to be appointed lead
     plaintiff"); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("this Court finds that
     the aggregation of more than one plaintiff for the purpose of moving for appointment
9    of Lead Plaintiff is not facially invalid"); *In re Oxford Health Plans, Inc. Sec. Litig.*,
     182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing group of three unrelated plaintiffs); *In
10   re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*, No. 01-949 Section "T"(5), 2001 U.S.
     Dist. LEXIS 21816, at *14 (E.D. La. Dec. 17, 2001) ("While the group of plaintiffs in
11   this case have no pre-existing relationship, there is no such requirement mandated by
     the Act."); *CellStar*, 976 F. Supp. at 546 (holding that the PSLRA allows groups to
12   serve as lead plaintiff); *Angeloni v. Microtune, Inc.*, No. 4:03CV56, slip op. at 5 (E.D.
     Tex. Jun. 17, 2003) (holding "that the selection of a group of person [sic] to act as lead
13   plaintiffs is entirely appropriate under the PSLRA") (attached as Exhibit A to the
     Declaration of Tricia L. McCormick in Support of the Reply Memorandum in Further
14   Support of Motion to Appoint the Pension Funds as Lead Plaintiff and to Approve
     Lead Plaintiff's Choice of Lead Counsel ("McCormick Reply Decl.")); *In re
15   Universal Access, Inc.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) (same); *Kitty Hawk*, 200
     F.R.D. at 280 (holding that the appointment of a group of plaintiffs to serve as lead
16   plaintiff is appropriate); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, slip op. at 5-6
     (N.D. Tex. May 8, 2003) (holding the appointment of a group of three investors as
17   lead plaintiff appropriate under the PSLRA) (McCormick Reply Decl., Ex. B); *Bell v.
     Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *15-
18   *17 (N.D. Tex. Apr. 17, 2002) (same); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No.
     04-0265, 2004 U.S. Dist. LEXIS 10200, at *12 (E.D. Pa. Jun. 3, 2004) (the PSLRA
19   "does not mandate 'that the members of a proper group be "related" in some manner;
     it requires only that any such group "fairly and adequately protect the interests of the
20   class"'"); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503-04 (S.D. Fla. 2002)
     ("There is no requirement contained in the PSLRA that the group of persons serving
21   as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses
     on whether the person or group that is the proposed lead plaintiff can fairly and
22   adequately serve as the lead plaintiff.").

23   [8]    It is also worth noting that Milberg Weiss Bershad & Schulman LLP ("Milberg
24   Weiss") frequently moves with unrelated groups of proposed lead plaintiffs, and
     argues that unrelated groups are appropriate, distinguishing the very cases it relies
25   upon in this case. *See, e.g.,* Milberg Weiss' brief filed in *China Life*, arguing for the
     appropriateness of appointing a group of five individuals. *Broekhuizen v. China Life
26   Ins. Co. Ltd.*, No. 1:04cv2112 (TPG), Franich Group's Reply Memorandum in Further
     Support of Its Motion for Consolidation, Appointment of Lead Plaintiff, and Approval
27   of Its Selection of Co-Lead Counsel at 5-6 (S.D.N.Y. Jun. 14, 2004) (McCormick
     Reply Decl., Ex. C).

28

- 12 -

III.    **METZLER HAS NO FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS**

Contrary to Metzler's convoluted assertions that it has the largest financial interest in the litigation, it, in fact, has not established that it has any *financial interest in the relief sought by the class*. Metzler's claimed $1.9 million loss was not sustained by Metzler, but by Metzler's clients. As clearly set forth in the Pension Funds' opposition to the competing motions, Metzler, as an investment advisor, has failed to demonstrate that it has the authorization *under German law*, from each and every one of its clients that lost money on investments in Corinthian during the Class Period, to seek lead plaintiff status on the basis of their losses. *See* Pension Funds' Opp. at 8-13.[9] Consequently, regardless of the financial interest Metzler claims the Pension Funds have in this litigation, it is greater than the loss suffered by Metzler, *which appears to be $0.00*.

IV.    **METZLER DOES NOT HAVE THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS**

Even were Metzler able to demonstrate beyond doubt, under German law, that it was authorized by its clients to seek lead plaintiff appointment based on the losses of its clients, Metzler still does not have the largest financial interest in this case. The Pension Funds losses are $2.43 million while Metzler's clients lost only $1.9 million. Consequently, under the clear authority of *Cavanaugh*, the Court must look only at the Pension Funds' motion, and because they meet the requirements of Rule 23, the Pension Funds must be appointed. 306 F.3d at 729-30; *Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *8-*9 ("Once the individual *or group* with the largest financial

---

[9]    Recognizing the importance of this issue, the Ninth Circuit, just last month, ordered an investment advisor appointed as lead plaintiff to respond to a petition for a writ of mandamus, requesting that the Ninth Circuit overrule the appointment of the investment advisor because the investment advisor had failed to demonstrate its authority to seek lead plaintiff appointment on the basis of its clients' losses. *See* Pension Funds' Opp. at 11-13.

1   interest is identified, the court 'must then focus its attention on *that* plaintiff' and

2   determine whether they meet the requirements of Rule 23.   The court may not

3   consider the merits of the other plaintiffs' claims.").

4         Because Metzler cannot rebut the presumption that the Pension Funds are the

5   most adequate plaintiff, Metzler instead seeks to do an end-run around *Cavanaugh*,

6   and claim that it should be appointed because it has the single largest loss of any

7   movant. Unfortunately for Metzler, *Cavanaugh* instructs courts to look to the movant

8   or movant group with the largest financial interest, not to the single individual with

9   the single largest financial interest.   306 F.3d at 731 (holding the District Court

10  properly concluded that a ***group***'s aggregated losses represented the largest financial

11  interest).   Indeed, courts in this Circuit have consistently rejected the idea that the

12  movant with the single largest loss should be appointed over a group with a larger

13  aggregated loss. *See, e.g., Altris*, 1998 U.S. Dist. LEXIS 14705, at *13-*14 ("The

14  Court rejects the Carrot Group's argument that because their group includes the party

15  with the single largest loss, they should be appointed lead plaintiff.   The statutory

16  presumption applies to 'the person or group of persons' with the greatest financial

17  interest in the relief sought."); *Versata*, 2001 U.S. Dist. LEXIS 24270, at *26 (holding

18  the aggregated losses of the group were significantly greater than an individual's with

19  the single largest loss, and appointing the group as lead plaintiff).

20        Recognizing the futility of its single largest loss argument, Metzler also now

21  reverses itself and attempts to reject the method used, admittedly, by Metzler and all

22  other movants in their opening papers to calculate losses. Metzler ***admits*** that all the

23  movants used a First-In, First-Out ("FIFO") method of calculating their losses.

24  Metzler Opp. at 2 ("All of the movants utilized FIFO in their moving papers.").   Then,

25  because Metzler clearly does not have the largest financial interest under FIFO,

26  Metzler now attempts to back-peddle from FIFO, and suggests that losses should be

27  calculated some other way.   The FIFO methodology used by all the movants,

28  however, is a well-accepted methodology of calculating a proposed lead plaintiff's

- 14 -

1  financial interest. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 127 (D.N.J.

2  2002) (in settlement, the court held that "[p]urchases during the Class Period will be

3  matched against sales during the Class Period on a first-in, first-out basis"); *Yamner v.*

4  *Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *2, *14-*15 (N.D.

5  Cal. Sept. 15, 1994) (rejecting attack on use of FIFO to calculate losses); *Chill v.*

6  *Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn. 1998). Indeed, Milberg Weiss,

7  Metzler's counsel, has used the FIFO methodology in dozens, if not hundreds, of other

8  cases in calculating the losses of its clients.[10] The disingenuousness of this mid-field

9  reverse is highlighted by the fact that Metzler itself uses FIFO in calculating its losses

10  where it has moved to be appointed lead plaintiff.[11] Consequently, because all of the

11  movants used FIFO in calculating their losses, Metzler's attempts to turn its back on

12  that methodology now to spin its losses as the greatest financial interest should be

13  rejected. Indeed, under the methodology used by all the movants, the Pension Funds'

14  lost $2.43 million which is greater than Metzler's $1.9 million loss.

15        Metzler now attempts to demonstrate that it has the largest financial interest by

16  utilizing a four-factor test. However, Metzler's ploy to now use the four factor test is

17  not determinative because even under that test, two factors favor the Pension Funds,

18  while two factors favor Metzler's clients:

19

20

21

22

---

23  [10]    *See, e.g.*, KVH Loss Chart submitted by Milberg Weiss on September 20, 2004,

24  in support of its ***plaintiff group's*** motion for appointment as lead plaintiff in KVH Industries. *Vogel v. KVH Industries, Inc.*, No. 1:04 CV-320 (MML), Loss Chart (D.

25  R.I. Sept. 20, 2004) (McCormick Reply Decl., Ex. D).

26  [11]    *See* Washington Mutual Loss Chart at n.1, explaining that Metzler's sales (as well as the sales of the rest of the ***group*** with which Metzler moved) were applied to

27  purchases on a FIFO basis. *South Ferry LP #2 v. Killinger*, 2:04-cv-1599-JCC, Loss Chart (W.D. Wash. Sept. 20, 2004) (McCormick Reply Decl., Ex. E).

28

| MOVANT | LOSSES | SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED |
|---|---|---|---|---|
| Pension Funds | $2,437,275.28 | 164,050 | 104,500 | $2,887,633.74 |
| Metzler's Clients | $1,955,388.80 | 116,000 | 116,000 | $3,296,024.00 |

In this District, courts look to *three* of these factors in determining who had the largest financial interest: (1) number of shares purchased during the Class Period; (2) net funds expended; and (3) the approximate losses of the movants. *Id.* For example, in *DDi*, Judge Manella found that the *group* which both (1) purchased the most shares during the class period, and (2) claimed the largest loss, was the movant with the largest financial interest and, thus the presumptive most adequate plaintiff. *Id.* Here, the Pension Funds purchased more shares than Metzler, and suffered a larger loss than Metzler. Consequently, even were Metzler able to demonstrate its authority under German law to seek lead plaintiff status based on its *clients*' losses, under any calculation, the Pension Funds have the largest financial interest.

## V.    METZLER IS A FOREIGN INVESTOR SUBJECT TO UNIQUE DEFENSES

In addition to Metzler's failure to (1) provide the Court with evidence that it has the authority, under German law, to seek lead plaintiff status based on its clients' losses; (2) provide evidence that the signatories on Metzler's certification have the authority to bind Metzler; and (3) have the largest financial interest in the relief sought by the class, Metzler is also subject to unique defenses as a foreign investor that prohibit its appointment as lead plaintiff. *See* Pension Funds' Opp. at 15-17. Because Metzler is organized under German law and operates from Germany, it is subject to the unique defense that Germany would not recognize any judgment in the United States as *res judicata*. *See id.* Consequently, appointing Metzler would not only create finality problems for all absent class members it would jeopardize the class in

1  that Metzler would be distracted by this defense, that is unique to Metzler, preventing

2  Metzler from adequately representing the class. *Id.*

3      In addition, Metzler, being organized in and operating from Germany, is simply

4  too far away from the Court and its chosen counsel in order to efficiently and

5  effectively monitor and control this litigation. Courts in this Circuit have found that a

6  significant distance between foreign lead plaintiffs and their United States counsel

7  would impede their ability to supervise the litigation if only foreign plaintiffs were

8  appointed. *Gemstar*, 209 F.R.D. at 451 (citing *In re Network Assocs. Sec. Litig.*, 76 F.

9  Supp. 2d 1017, 1030 (N.D. Cal. 1999)); *see also* Pension Funds' Opp. at 16-17;

10  McCormick Reply Decl., Ex. C at 3 (Milberg Weiss arguing that foreign lead

11  plaintiffs' distance from the Court "may prevent them from fulfilling their fiduciary

12  duties to the Class").[12]

13

14

15

16

17

18

19

20

21

22

23

---

24  [12]    Although the court in *Versata* did appoint two foreign plaintiffs, it is significant
that they were grouped with a plaintiff from California, thus, the Court did not appoint
25  solely foreign plaintiffs. 2001 U.S. Dist. LEXIS 24270, at *23-*24. Additionally, the
plaintiffs in *Versata* gave the Court additional information regarding themselves,
26  including information regarding its ability to direct the litigation and work with the
California plaintiff. *Id.* at *24-*25. Here, Metzler is not paired with a plaintiff from
27  the United States, and has given the Court no information regarding how it intends to
direct this litigation from over 5,000 miles away.

28

## VI.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Pension Funds' opening motion and memorandum in support thereof, and in the Pension Funds' Opposition, the Pension Funds respectfully request that the Court: (1) appoint them as lead plaintiff; and (2) approve their choice of Lerach Coughlin as lead counsel for the class.

DATED:  September 27, 2004

Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
JONAH H. GOLDSTEIN
TRICIA L. McCORMICK


TRICIA L. McCORMICK

401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JONATHAN E. BEHAR
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
Telephone:  213/617-9007
213/617-9185 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Corinthian Colleges\BRF00014028.doc

- 18 -

1

## DECLARATION OF SERVICE BY MAIL

2      I, the undersigned, declare:

3      1.    That declarant is and was, at all times herein mentioned, a citizen of the

4  United States and a resident of the County of San Diego, over the age of 18 years, and

5  not a party to or interest in the within action; that declarant's business address is 401 B

6  Street, Suite 1700, San Diego, California 92101.

7      2.    That on September 27, 2004, declarant served the **REPLY**

8  **MEMORANDUM IN FURTHER SUPPORT OF MOTION TO APPOINT THE**

9  **PENSION FUNDS AS LEAD PLAINTIFF AND TO APPROVE LEAD**

10  **PLAINTIFF'S CHOICE OF LEAD COUNSEL** by depositing a true copy thereof

11  in a United States mailbox at San Diego, California in a sealed envelope with postage

12  thereon fully prepaid and addressed to the parties listed on the attached Service List.

13      3.    That there is a regular communication by mail between the place of

14  mailing and the places so addressed.

15      I declare under penalty of perjury that the foregoing is true and correct.

16  Executed on September 27, 2004, at San Diego, California.

17

18                              _Diana L. Houck_
                                DIANA L. HOUCK

19

20

21

22

23

24

25

26

27

28

CORINTHIAN COLLEGES
Service List - 9/20/2004    (04-0239)
Page 1 of 4

**Counsel For Defendant(s)**

Robert L. Dell Angelo
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
    213/683-9100
    213/687-3702(Fax)

**Counsel For Plaintiff(s)**

Stephen R. Basser
Samuel M. Ward
Marisa C. Livesay
Barrack, Rodos & Bacine
402 West Broadway, Suite 850
San Diego, CA  92101
    619/230-0800
    619/230-1874(Fax)

Daniel E. Bacine
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
    215/963-0600
    215/963-0838(Fax)

Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
Nicole  Lavellee
Berman DeValerio Pease Tabacco Burt & Pucillo
425 California St., Suite 2025
San Francisco, CA  94104-2205
    415/433-3200
    415/433-6382(Fax)

Jeffrey C. Block
Michael G. Lange
N. Nancy Ghabai
Berman DeValerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA  02109
    617/542-8300
    617/542-1194(Fax)

Alan  Schulman
Blair A. Nicholas
Bernstein Litowitz Berger & Grossmann LLP
12544 High Bluff Dr., Suite 150
San Diego, CA  92130
    858/793-0070
    858/793-0323(Fax)

Douglas M. McKeige
Gerald H. Silk
Stephen W. Tountas
Bernstein Litowitz Berger & Grossmann LLP
1285 Ave of the Americas, 38th Fl.
New York, NY  10019
    212/554-1400
    212/554-1444(Fax)

CORINTHIAN COLLEGES

Service List - 9/20/2004    (04-0239)

Page 2 of 4

Evan J. Smith
Marc L. Ackerman
Brodsky & Smith, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA  19004
   610/667-6200
   610/667-9029 (Fax)

Jonathan M. Plasse
Christopher J. Keller
Shelley  Thompson
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue, 12th Floor
New York, NY  10017-5563
   212/907-0700
   212/818-0477 (Fax)

Bruce G. Murphy
Law Offices of Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL  32963
   772/231-4202
   772/234-0440 (Fax)

Jonathan E. Behar
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
   213/617-9007
   213/617-9185 (Fax)

Lionel Z. Glancy
Peter A. Binkow
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
   310/201-9150
   310/201-9160 (Fax)

Deborah R. Gross
Law Offices Bernard M. Gross, P.C.
1515 Locust Street, 2nd Floor
Philadelphia, PA  19102
   215/561-3600
   215/561-3000 (Fax)

Richard B. Brualdi
Law Offices of Richard B. Brualdi
29 Broadway, Suite 1515
New York, NY  10006
   212/952-0602
   212/952-0608 (Fax)

William S. Lerach
Jonah H. Goldstein
Tricia L. McCormick
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
   619/231-1058
   619/231-7423 (Fax)

CORINTHIAN COLLEGES
Service List - 9/20/2004    (04-0239)
Page 3 of 4

Christopher Kim
Lisa J. Yang
Lim Ruger & Kim LLP
1055 West Seventh Street, Suite 2800
Los Angeles, CA 90017
   213/955-9500
   213/955-0511 (Fax)

Steven G. Schulman
Peter E. Seidman
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119
   212/594-5300
   212/868-1229 (Fax)

Stuart L. Berman
Darren J. Check
Sean M. Handler
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
   610/667-7706
   610/667-7056 (Fax)

Robert I. Harwood
Joshua D. Glatter
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY 10022
   212/935-7400
   212/753-3630 (Fax)

Jeff S. Westerman
Milberg Weiss Bershad & Schulman LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071
   213/617-1200
   213/617-1975 (Fax)

Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016
   212/682-1818
   212/682-1892 (Fax)

Timothy J. Burke
Stull, Stull & Brody
10940 Wilshire Blvd., Suite 2300
Los Angeles, CA 90024
   310/209-2468
   310/209-2087 (Fax)

Kevin J. Yourman
Vahn Alexander
Jennifer R. Liakos
Weiss & Yourman
10940 Wilshire Blvd., 24th Floor
Los Angeles, CA 90024
   310/208-2800
   310/209-2348 (Fax)

CORINTHIAN COLLEGES
Service List – 9/20/2004    (04-0239)
Page 4 of  4

Francis M. Gregorek
Betsy C. Manifold
Francis A. Bottini, Jr.
Wolf Haldenstein Adler Freeman & Herz, LLP
750 B Street, Suite 2770
San Diego, CA  92101
    619/239-4599
    619/234-4599(Fax)