# EXHIBIT C
## to letter to
## Hon. Kent A. Jordan
## from Seth D. Rigrodsky
## dated November 4, 2005

## -- Part 2 of 2 --

1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   JONAH H. GOLDSTEIN (193777)
3  TRICIA L. McCORMICK (199239)
   401 B Street, Suite 1700
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
        – and –
6  JONATHAN E. BEHAR (174916)
   355 South Grand Avenue, Suite 4170
7  Los Angeles, CA  90071
   Telephone:  213/617-9007
8  213/617-9185 (fax)

9  [Proposed] Lead Counsel for Plaintiffs

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13

14  CONWAY INVESTMENT CLUB,        )  **VIA FAX**
    Individually and On Behalf of All  )
15  Others Similarly Situated,      )  No. CV 04-05025-R-CW
                                    )
16                    Plaintiff,    )  <u>CLASS ACTION</u>
                                    )
17       vs.                        )  THE PENSION FUNDS'
                                    )  OPPOSITION TO COMPETING
18  CORINTHIAN COLLEGES, INC., et   )  MOTIONS FOR APPOINTMENT AS
    al.,                            )  LEAD PLAINTIFF
19                                  )
                      Defendants.   )  DATE:      October 4, 2004
20  _____ )  TIME:      10:00 a.m.
                                       ROOM:      8
21                                     JUDGE:     Hon. Manuel L. Real

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................... 4

    A.    The PSLRA's Appointment of Lead Plaintiff Provisions .................... 4

    B.    The Pension Funds Are the Most Adequate Plaintiff Because
        They Have the Largest Loss and also Satisfy the Requirements
        of Rule 23 ........................................................................................................ 5

    C.    The PSLRA Provides for the Appointment of Small Groups of
        Investors as Lead Plaintiffs ...................................................................... 6

    D.    Neither Metzler nor Croteau Should Be Appointed Lead
        Plaintiff Because They Do not Have Any Financial Interest in
        the Relief Sought in This Case, Let Alone the Largest Loss ............... 8

    E.    The Signatories on Metzler's Certification Have Not
        Demonstrated that They Have the Authority to Bring Suit on
        Behalf of Metzler ......................................................................................... 13

    E.    Metzler Does Not Otherwise Meet the Requirements of Rule 23
        Because It Is A Foreign Investment Advisor Subject to Unique
        Defenses ......................................................................................................... 15

        1.    Cannot Be Appointed As Lead Plaintiff Because It Is
            Subject to the Unique Defense that Any Judgment It
            Achieved in this Court Would Not Be Given *Res
            Judicata* Effect in its Place of Residence, Germany ................. 15

        2.    Metzler Resides Too Far Away to Be an Effective Lead
            Plaintiff ............................................................................................... 16

    F.    Under the Authority of *Cavanaugh*, None of the Other Movants
        Other Than the Pension Funds Should Even Be Considered for
        Appointment as Lead Plaintiff ................................................................. 17

III.  CONCLUSION ........................................................................................................... 18

- i -

1

# TABLE OF AUTHORITIES

2
**Page**

3 CASES

4 *In re 3COM Corp. Sec. Litig.*,
    No. C-97-21083 JW (N.D. Cal.) ............................................................... 7
5
*Ansari v. New York Univ.*,
6    179 F.R.D. 112 (S.D.N.Y. 1998) ............................................................ 16

7 *Bersch v. Drexel Firestone, Inc.*,
    519 F.2d 974 (2d Cir. 1975) ............................................................. 3, 15
8
*Brown v. Computerized Thermal Imaging, Inc.*,
9    No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515
    (D. Or. Sept. 24, 2002) ........................................................................ 6
10
*Chill v. Green Tree Fin. Corp.*,
11    181 F.R.D. 398 (D. Minn. 1998) ........................................................ 15

12 *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. 5
13
*In re Baan Co. Sec. Litig.*,
14    186 F.R.D. 214 (D.D.C. 1999) ............................................................. 6

15 *In re Bank One S'holders Class Actions*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ..................................................... 7
16
*In re Cavanaugh*,
17    306 F.3d 726 (9th Cir. 2002) .......................................................*passim*

18 *In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .......................................................... 2, 6, 7
19
*In re DaimlerChrysler AG Sec. Litig.*,
20    No. 00-993 .................................................................................... 3, 15

21 *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) ......................................................... 7
22
*In re McKesson HBOC, Inc. Sec. Litig.*,
23    97 F. Supp. 2d 993 (N.D. Cal. 1999) ................................................... 8

24 *In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................... 8, 16, 17
25
*In re Sprint Corp. Sec. Litig.*,
26    164 F. Supp. 2d 1240 (D. Kan. 2001) .................................................. 7

27 *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002) ...................................................... 3, 8
28

**Page**

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
  No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712
  (D.N.J. Nov. 16, 2000) ................................................................. 7

*Mark v. Cal. Pub. Employees' Ret. Sys.*,
  535 U.S. 929, 122 S. Ct. 1300, 152 L. Ed. 2d 212 (2002) .................. 2

*Mutuelles Unies v. Kroll & Linstrom*,
  957 F.2d 707 (9th Cir. 1992) ....................................................... 10

*Piven v. Sykes Enters.*,
  137 F. Supp. 2d 1295 (M.D. Fla. 2000) ......................................... 14

*Reiger v. Altris Software, Inc.*,
  No. 98cv0528J (JFS), 1998 U.S. Dist. LEXIS 14705
  (S.D. Cal. Sept. 14, 1998) ............................................................. 6

*In re Royal Ahold N.V. Sec. ERISA Litig.*,
  219 F.R.D. 343 (D. Md. 2003) ................................................ 15, 16

*Smith v. Suprema Specialties, Inc.*,
  206 F. Supp. 2d 627 (D.N.J. 2002) ..................................... 3, 8, 9, 10

*Switzenbaum v. Orbital Scis. Corp.*,
  187 F.R.D. 246 (E.D. Va. 1999) .................................................... 7

*Thurber v. Mattel, Inc.*,
  No. 99-10368-MRP (CWx) (C.D. Cal.) ......................................... 7

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ................................................... 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3) ................................................................... *passim*

Federal Rules of Civil Procedure
  Rule 17(a) .............................................................................. 10
  Rule 23 ......................................................................... *passim*
  Rule 23(a) ................................................................................ 5

H.R. Conf. Rep. 104-327, at 34 (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730, 737 ..................................... 9

- iii -

1    Proposed lead plaintiffs Sheet Metal Workers' National Pension Fund, National

2  Elevator Industry Pension Fund and Greater Pennsylvania Carpenters Pension Fund

3  (collectively, the "Pension Funds") respectfully submit this memorandum of law in

4  further support of their motion for appointment as lead plaintiff and for approval of

5  their selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach

6  Coughlin") as lead counsel, pursuant to §21D(a)(3)(B) of the Securities Exchange Act

7  of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform

8  Act of 1995 ("PSLRA").

9  I.    **INTRODUCTION**

10    Presently pending before the Court are nine motions for appointment as lead

11  plaintiff filed in connection with this securities fraud class action against Corinthian

12  Colleges, Inc. ("Corinthian") and its senior insiders.[1]

13    All nine movants agree that the PSLRA instructs courts to appoint as lead

14  plaintiff the person *or persons* with the largest financial interest in the outcome of the

15  litigation that otherwise satisfy the requirements of Rule 23 of the Federal Rules of

16  Civil Procedure ("Rule 23").  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); *In re Cavanaugh*,

17  306 F.3d 726, 732 (9th Cir. 2002); Memorandum of Law in Support of the Motion of

18  Metzler Investment for Consolidation, Appointment as Lead Plaintiff and Approval of

19  Its Selection of Lead Counsel ("Metzler Mem.") at 13-14; Motion to Appoint Croteau

20  Investment Management, Inc. as Lead Plaintiff and for Appointment of Lead Counsel,

21

22  [1]    In addition to the motion filed by the Pension Funds, competing motions were filed by the following eight movants: (1) Metzler Investment GmbH ("Metzler"); (2)

23  Croteau Investment Management, Inc. ("Croteau"); (3) City of St. Clair Shores Police & Fire Retirement System, City of Sterling Heights Act 345 Policemen & Firemen

24  Retirement System, the Clinton Charter Township Police & Fire Pension Fund and the City of Pontiac Policemen's & Firemen's Retirement System (the "Michigan Pension

25  Funds"); (4) United Association Local Union Officers & Office Employees Pension Fund ("United"); (5) Milton A. Karetas, John Verderane, the Arkansas Carpenters

26  Pension Fund, John Cutaia and Stephen Cutaia ("Karetas Group"); (6) Wyoming State Treasurer Fund ("Wyoming"); (7) Vicken Bedoyan, Robert D. Murie and Robert G.

27  Piper ("Bedoyan Group"); and (8) Anthony and Rosalie Longano, Ivan Meneses and F. Leroy Higgins ("Longano Group") (collectively, the "Competing Motions").

28

- 1 -

Memorandum of Points and Authorities in Support Thereof ("Croteau Mem.") at 7.
With a loss of $2,437,275, the Pension Funds' loss is larger than the losses claimed by
each of the other remaining movants:[2]

| Movant | Financial Interest |
| --- | --- |
| Pension Funds | $2,437,275 |
| Metzler | $1,955,389 |
| Croteau | $1,325,780 |
| Michigan Pension Funds | $818,417 |
| United | $670,309 |
| Karetas Group | $429,293 |
| Wyoming | $323,777 |
| Bedoyan Group | $125,000 |
| Longano Group | $42,352 |

"So long as the plaintiff with the largest loss satisfies the typicality and adequacy
requirements [of Rule 23], he is entitled to lead plaintiff status ...." *Cavanaugh*, 306
F.3d at 732; *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001), *cert.
denied, Mark v. Cal. Pub. Employees' Ret. Sys.*, 535 U.S. 929, 122 S. Ct. 1300, 152 L.
Ed. 2d 212 (2002) (holding that institutional investors with large losses generally
satisfy the requirements of Rule 23). Because the Pension Funds have the largest
financial interest in the relief sought and otherwise meet the requirements of Rule 23,
each of the Competing Motions should be denied and the Pension Funds should be
appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at
732.

---

[2]  It is the understanding of the Pension Funds that several of the other movants,
including the Michigan Pension Funds and Wyoming will be withdrawing their lead
plaintiff motions as they recognize that the PSLRA's lead plaintiff provisions and the
presumptions embodied therein require the appointment of the Pension Funds.

1    Metzler's and Croteau's lead plaintiff motions must also be denied because they

2   have failed to establish that they (as opposed to their *clients*) have any financial

3   interest in this litigation or that they have been authorized to by their clients to seek

4   lead plaintiff status. *See, e.g., In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209

5   F.R.D. 353, 357-58 (S.D.N.Y. 2002) (holding that investment advisors lack standing

6   to claim their clients' financial interest). Indeed, although Croteau's Certification

7   declares that it possesses "complete investment authority and full power and authority

8   to bring suit to recover for investment losses," neither Croteau nor Metzler timely

9   provided competent evidence that they either: (1) obtained attorney-in-fact authority

10  from their clients to bring suit or seek lead plaintiff status based on their clients'

11  losses; or (2) suffered an actual loss themselves.[3] *See Smith v. Suprema Specialties,*

12  *Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) ("The clients' mere grant of authority

13  to an investment manager to invest on its behalf does not confer authority to initiate

14  suit on its behalf."); *Turkcell*, 209 F.R.D. at 357-58. Thus, not only have Metzler and

15  Croteau failed to establish that they are the movant with the largest loss, they have

16  failed to provide competent evidence that either Metzler or Croteau have *any* financial

17  interest at all in the relief sought by the class.

18    Finally, Metzler cannot be appointed for another reason as well. Metzler is a

19  German investment advisor and "it is highly unlikely that a German court would

20  recognize as binding against those German shareholders any judgment entered in a

21  U.S. class action ...."[4] Therefore, Metzler is subject to the unique defense that any

22  judgment it achieved on behalf of its clients would not be *res judicata*.

---

24  [3]    Declaration of Lisa J. Yang in Support of Motion to Appoint Croteau
25  Investment Management, Inc. as Lead Plaintiff Pursuant to Section 21D(a)(3)(B) of
    the Securities Exchange Act of 1934 and to Approve Plaintiff's Choice of Counsel
26  ("Yang Decl."), Ex. A.

27  [4]    *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993, Declaration of Rolf Sturner
    (D. Del. Jan. 8, 2003), Declaration of Tricia L. McCormick in Support of the Pension
28  Funds' Opposition to Competing Motions for Appointment as Lead Plaintiff

1    Ultimately, as sophisticated institutional pension funds with typical trading

2  patterns, and substantial class period losses, the Pension Funds are not only the most

3  adequate lead plaintiff movant, the Pension Funds are uniquely qualified to represent

4  the class in this litigation.  Thus, the Pension Funds respectfully urge this Court to

5  deny the Competing Motions and appoint the Pension Funds as lead plaintiff and to

6  approve of their choice of counsel.

7  **II.    ARGUMENT**

8  **A.    The PSLRA's Appointment of Lead Plaintiff Provisions**

9    Section 21D of the PSLRA provides that in securities class actions, courts

10  "shall appoint as lead plaintiff the member or members of the purported plaintiff class

11  that the court determines to be most capable of adequately representing the interests of

12  class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  In determining who is the "most

13  adequate plaintiff," the PSLRA provides that:

14    [T]he court shall adopt a presumption that the most adequate plaintiff ...

15    is the person or *group of persons* that –

16                *       *       *

17        (bb)   in the determination of the court, has the *largest*

18        *financial interest* in the relief sought by the class; and

19        (cc)   otherwise satisfies the requirements of Rule 23 of the

20        Federal Rules of Civil Procedure.

21  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[5]

22

23

24
_____

25  ("McCormick Decl."), Ex. A; *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d

26  Cir. 1975) (holding that because Germany would not recognize a judgment in the
    United States, a class containing German plaintiffs could not be certified).

27  [5]    Unless otherwise noted, all emphasis is added and citations are omitted.

28

- 4 -

1
2

**B.**    **The Pension Funds Are the Most Adequate Plaintiff Because They Have the Largest Loss and also Satisfy the Requirements of Rule 23**

3    The Ninth Circuit has expressly delineated the process district courts are to

4    apply in selecting the "'presumptively most adequate plaintiff'" under the PSLRA.

5    *See Cavanaugh*, 306 F.3d at 729-33. First, the district court must consider the losses

6    allegedly suffered by the various movants to determine which one has the greatest

7    loss. *See id.* at 729-30. Once the district court determines which movant or movant

8    group has the greatest loss, it must then focus its attention on that movant and

9    determine, based on the information provided in its pleadings and declarations,

10    whether the movant satisfies the requirements of Rule 23(a). *Id.* at 730. Finally, if the

11    movant with the largest loss also satisfies Rule 23, that movant becomes the

12    presumptive lead plaintiff. *Id.* Based upon the submissions of the respective

13    proposed lead plaintiffs, the Pension Funds are the presumptively most adequate lead

14    plaintiff.

15    The papers filed with the Court reveal that the Pension Funds' financial interest

16    in this litigation, $2,437,275, is larger than every other competing movant. *See supra*

17    Loss Chart at 2; *Cavanaugh*, 306 F.3d at 732 (once a court determines which lead

18    plaintiff movant has the biggest stake, the court must appoint that movant as lead,

19    unless it finds that it does not satisfy the typicality or adequacy requirements). In

20    addition to being the movant with the largest loss, the Pension Funds also satisfy Rule

21    23. *See* Memorandum of Points and Authorities in Support of Motion to Appoint [the

22    Pension Funds] as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead

23    Counsel Purusant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Opening

24    Mem.") at 9-11. The Pension Funds are typical because their claims arise from the

25    same course of conduct and the same operative facts which damaged the entire class.

26    *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

27    Courts in this District recognize that "'institutional investors and others with

28    large losses will, more often than not, satisfy the typicality and adequacy

- 5 -

1    requirements.'" *Ferrari v. Gisch*, No. CV 03-7063 NM (SHx), slip op. at 13 (C.D.

2    Cal. May 21, 2004) (quoting the Third Circuit in *Cendant*, 264 F.3d at 264),

3    McCormick Decl., Ex. B. Here, the Pension Funds have no interests antagonistic to

4    those of the class and have a sufficient interest in the outcome of the litigation to

5    ensure that they will vigorously prosecute it. *See* Opening Mem. at 9-11.

6    **C.    The PSLRA's Unambiguous Language Supports the**
         **Appointment of Groups**
7

8    The Securities and Exchange Commission ("SEC") and the *vast* majority of

9    courts in this Circuit and across the country have taken the position that while joint

10   applications by *hundreds* of investors are not entitled to the statutory presumption of

11   §78u-4(a)(3)(B), the presumption does apply to:

12        "[A] group that is small enough to be capable of effectively managing

13        the litigation and the lawyers.  The [SEC] believes that ordinarily this

14        should be no more than *three to five persons*, a number that will

15        facilitate joint decision making and also help to assure that each group

16        member has a sufficiently large stake in the litigation."

17   *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (quoting amicus

18   submitted by the SEC).[6]

19   _____

20   [6]    *See also Cavanaugh*, 306 F.3d at 739 (Ninth Circuit instructing district court to
     "proceed based on the presumption that the Cavanaugh Group [comprised of five
21   individuals] is the most adequate plaintiff and has made a *prima facie* showing of
     satisfying the requirements of Rule 23"); *Weltz v. Lee*, 199 F.R.D. 129 (S.D.N.Y.
22   2001) (listing cases); *Ferrari*, No. CV 03-7063 NM (SHx), slip op. at 17-19,
     McCormick Decl., Ex. B; *Reiger v. Altris Software, Inc.*, No. 98cv0528J (JFS), 1998
23   U.S. Dist. LEXIS 14705, at *13-*14 (S.D. Cal. Sept. 14, 1998) ("The Court rejects the
     Carrot Group's argument that because their group includes the party with the single
24   largest loss, they should be appointed lead plaintiff.  The statutory presumption
     applies to 'the person or group of persons' with the greatest financial interest in the
25   relief sought."); *Slutsky v. Endocare, Inc.*, slip op. at 19 (C.D. Cal. Feb. 10, 2003)
     (holding "a group is permitted to aggregate its losses and serve as lead plaintiff,
26   regardless of whether a pre-existing relationship existed, if the characteristics required
     to adequately represent a class are present in the group," and appointing two
27   institutions and a married couple as lead plaintiff), McCormick Decl., Ex. C; *Brown v.
     Computerized Thermal Imaging, Inc.*, No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515,
28   at *3-*6 (D. Or. Sept. 24, 2002) (appointing unrelated group because the PSLRA

- 6 -

1       In fact, numerous courts, including the Third Circuit Court of Appeals, have

2   held the appointment of small groups of sophisticated investors, like the Pension

3   Funds, is not only authorized under the PSLRA, it is desirable. *See, e.g., Cendant,*

4   264 F.3d 201 (holding district court properly appointed three pension funds as lead

5   plaintiff); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246 (E.D. Va. 1999) (five

6   pension funds appointed as lead plaintiff); *In re Gemstar-TV Guide Int'l, Inc. Sec.*

7   *Litig.*, 209 F.R.D. 447, 452-55 (C.D. Cal. 2002) (appointing group of two pension

8   funds as lead plaintiff); *In re Sprint Corp. Sec. Litig.*, 164 F. Supp. 2d 1240 (D. Kan.

9   2001) (appointing group with five pension funds as lead plaintiff); *In re Bank One*

10   *S'holders Class Actions*, 96 F. Supp. 2d 780, 783 (N.D. Ill. 2000) (appointing group of

11   six pension funds as lead plaintiff over single institution with larger losses); *Local 144*

12   *Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S.

13   Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000) (group of five institutions, including two

14   pension funds, appointed as lead plaintiff). In fact, two of the largest securities fraud

15   class action recoveries ever obtained in this Circuit since the enactment of the PSLRA

16   in *Thurber v. Mattel, Inc.*, No. 99-10368-MRP (CWx) (C.D. Cal.) ($122 million

17   recovery) and *In re 3COM Corp. Sec. Litig.*, No. C-97-21083 JW (N.D. Cal.) ($259

18   million recovery) involved cases spearheaded by small lead plaintiff groups.

19       Here, the Pension Funds are comprised of three highly sophisticated

20   institutional pension funds which collectively oversee billions of dollars in assets and

21   have significant experience in hiring and overseeing the efforts of outside counsel. As

22   Judge Manella recently recognized, three lead plaintiffs "is a manageable number,"

23   and perhaps even more importantly, this group has the "sophistication, expertise, and

24   resources" to ensure vigorous representation for the class. *Ferrari*, No. CV 03-7063

25

26   "allows for a group of persons to collectively serve as lead plaintiff," and because

27   although *Cavanaugh* did not address the issue of movant groups, "a group was
    approved in *Cavanaugh*").

28

1  NM (SHx), slip op. at 18, McCormick Decl., Ex. B.  The Pension Funds are an

2  appropriate "group" and should be appointed lead plaintiff pursuant to the PSLRA.

3  **D.    Neither Metzler nor Croteau Should Be Appointed Lead**
   **Plaintiff Because They Do not Have Any Financial Interest**

4  **in the Relief Sought in This Case, Let Alone the Largest**
   **Loss**

5

6      The issue of "financial interest in the relief sought" is the fundamental principle

7  underlying  the  lead  plaintiff  provisions  of  the  PSLRA.   15  U.S.C.  §78u-

8  4(a)(3)(B)(iii)(I).  As Judge Whyte succinctly stated in *McKesson*, "[o]ne's 'interest'

9  in a litigation is rather directly tied to what one might recover." *See In re McKesson*

10 *HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999).  Indeed, the Ninth

11 Circuit's *Cavanaugh* decision confirms that "the *only* basis on which a court may

12 compare plaintiffs competing to serve as lead is the size of their financial stake in the

13 controversy."  306 F.3d at 732 (emphasis in original); *see also* 15 U.S.C. §78u-

14 4(a)(3)(B)(iii).

15      Investment managers such as Metzler and Croteau, however, have no financial

16 stake in the litigation and will recover nothing regardless of the outcome of the case.

17 Indeed, it is axiomatic that an investment advisor's ***individual clients*** (not the

18 investment advisor itself) are the ones who suffer losses from the purchase of the

19 securities at issue.  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030

20 (N.D. Cal. 1999) (denying investment advisor's motion).

21      Indeed, even if this case were to yield a 100% recovery for plaintiffs, Metzler's

22 clients would recover their entire $1,955,389 loss and Croteau's clients would recover

23 their entire $1,325,780 loss, yet Metzler and Croteau would recover ***nothing***.  *See*

24 *McKesson*, 97 F. Supp. 2d at 997 (finding that financial interest is "directly tied" to

25 potential recovery); *Suprema*, 206 F. Supp. 2d at 634-36 (court reduced an investment

26 advisor's claimed loss to the difference between its claimed interest and that which the

27 advisor actually had suffered); *Turkcell*, 209 F.R.D. at 357-58  (limiting investment

28 advisor's loss to the .35% fee it earned on the total assets it invested).  To appoint a

1  movant who lacks an actual financial interest in the relief sought would be contrary to
2  one of the fundamental precepts of the PSLRA, which was to appoint as lead
3  plaintiffs, those "class members with large amounts at stake." H.R. Conf. Rep. 104-
4  327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737.

5      In *Suprema*, the district court addressed whether investment advisors like
6  Metzler and Croteau could be appointed lead plaintiff on behalf of entities for whom
7  they claimed to make investment decisions. 206 F. Supp. 2d at 634. The court found
8  that, "[a]lthough on the surface it appear[ed]" that the investment advisor had suffered
9  the greatest financial loss, *the investment advisor was not entitled to lead plaintiff*
10 *status because it did not suffer the loss it claimed* and for instance, submit evidence
11 that they received permission to prosecute the litigation on its clients' behalf. *Id.* at
12 633-34. Importantly, in denying the investment advisor's motion, the *Suprema* court
13 reduced the claimed losses from $2.1 million to $310,000 – representing the
14 difference between its claimed financial interest based on its clients' losses, and those
15 losses the advisor actually suffered. *Id.* at 636.

16     Here, like the investment advisor in *Suprema*, Metzler and Croteau have also
17 failed to provide any specific evidence that they are anything more than figurehead
18 plaintiffs aggregating losses suffered not by them, but by dozens or even hundreds of
19 their clients without their clients even knowing about, let alone authorizing, the
20 litigation. Here, no evidence was provided that Metzler and Croteau either suffered
21 any loss of their own assets or received power of attorney from each (or any, for that
22 matter) of their individual clients to move for lead plaintiff or file suit on their behalf
23 *prior* to filing a lead plaintiff motion. *See Suprema*, 206 F. Supp. 2d at 634-35.

24     Apparently recognizing that it lacked the requisite attorney-in-fact authority to
25 file, prosecute and resolve securities fraud class actions for losses actually suffered by
26 its clients, Croteau instead suggests that it has full *investment discretion* and legal
27 authority over its clients' accounts. *See* Yang Decl., Ex. A. That Croteau has full
28 investment discretion over its clients' accounts is not surprising – Croteau is an

*investment advisor*. However, "[t]he clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf." *Suprema*, 206 F. Supp. 2d at 634-35. The issue is not whether Croteau or Metzler has authority to invest its clients' money, but whether each of the clients who suffered losses has *specifically authorized* Metzler or Croteau *to file suit or make a lead plaintiff motion* on their behalf in *this* case. No such evidence has been provided.[7]

Not only would the appointment of Metzler or Croteau under these circumstances undermine the fundamental principles of the PSLRA -- that the lead plaintiff have the largest financial interest in the outcome of the case -- it would create serious issues to whether the outcome of the case will be *res judicata*. *See* Fed. R. Civ. P. 17(a). Rule 17(a) states, in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest." "The function of Rule 17(a) 'is simply to *protect the defendant against a subsequent action by the party actually entitled to recover*, and to insure generally that the judgment will have its proper effect as *res judicata*.'" *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992). In other words, if the party bringing the suit is not the real party in interest, the actual real party in interest could later bring suit. Because neither Metzler nor Croteau are the real parties in interest, their clients could bring suit against the same defendants for the same wrongdoing based on the same losses Metzler and Croteau are now claiming. Rule 17 makes clear that it should not be Metzler and Croteau, but their clients – the real parties in interest – that bring suit and/or be appointed lead plaintiff, if they so choose. At the very least, Rule 17 dictates that

---

[7]   Metzler faces an additional issue as well. It is headquartered in and operates from Germany. Thus, German law governs Metzler's contracts with its clients. *See* Metzler Mem. at 6 (admitting that it is "a fund management company established pursuant to German investment law"). Consequently, in order to determine Metzler's authority with respect to its ability to seek lead plaintiff status based upon its clients' losses, and whether it has the ability to sue on behalf of those losses, the Court would be forced to interpret and apply German law.

1  Metzler and Croteau *prove* with competent evidence that they have the permission and
2  authority to sue on their clients' behalves so that the class will not have a *res judicata*
3  threat hang over the case through trial and thereafter.

4         Another practical problem of appointing investment advisors like Metzler and
5  Croteau – who have no losses of their own but rather rely on their clients' losses – is
6  that they lack the direct financial incentive required by the PSLRA and emphasized by
7  the Ninth Circuit in *Cavanaugh*.  The problem of appointing an investment advisor (as
8  sole lead plaintiff) which has no loss of its own, and which fails to provide specific
9  evidence that its clients have authorized the investment advisor to seek lead plaintiff
10  status was recently raised before Judge Matz in the *Watson Pharmaceuticals* case.
11  *See In re Watson Pharms., Inc. Sec. Litig.*, No. CV 03-8236 AHM (FMOx) (C.D. Cal.
12  Dec. 2, 2003).

13         In *Watson Pharmaceuticals*, an investment advisor, Anchor Capital Advisors
14  ("Anchor") sought to be appointed lead plaintiff.  Anchor's authority to request
15  appointment as lead plaintiff based upon its clients' losses was challenged by a
16  competing movant.  Notwithstanding Anchor's initial bald assertion that it had
17  authority to sue, Judge Matz required Anchor to produce its investment contracts and
18  any other documentation that supported Anchor's claimed authority to seek lead
19  plaintiff status based upon its clients' losses. *In re Watson Pharms., Inc. Sec. Litig.*,
20  No. CV 03-8236 AHM (FMOx), Civil Minutes- General (C.D. Cal. Feb. 9, 2004),
21  McCormick Decl., Ex. D at 2-3.  Although Anchor had repeatedly filed pleadings
22  claiming that Anchor had such authority, the investment advisor contracts Anchor
23  submitted to the Court were devoid of any proof of such authority.  Instead, when one
24  of Anchor's own clients, the Massachusetts State Guaranteed Annuity Fund
25  ("Massachusetts"), learned that Anchor had been conditionally appointed lead plaintiff
26  by claiming over $1 million of Massachusetts' losses as Anchor's own, the client filed
27  a declaration *categorically denying* it had given its investment advisor, Anchor any
28  permission to either sue on its behalf, or to include its losses in Anchor's lead-plaintiff

1   papers. *In re Watson Pharms., Inc. Sec. Litig.*, No. CV 03-8236 AHM (FMOx),

2   Declaration of Massachusetts State Guaranteed Annuity Fund in Support of the

3   Pension Funds' Motion for Reconsideration (C.D. Cal. Apr. 6, 2004), McCormick

4   Decl., Ex. E. Massachusetts' Board of Trustees' Chairman attested: "The Fund did

5   not grant authority to Anchor to initiate or prosecute a suit for the losses suffered by

6   the Fund in connection with its investment in Watson Pharmaceuticals." *Id.* at ¶4.

7   Indeed, "the Fund was not even aware of Anchor's motion for appointment as lead

8   plaintiff at the time Anchor filed its lead plaintiff motion." *Id.*

9        Surprisingly, Anchor was appointed as lead plaintiff in *Watson*

10  *Pharmaceuticals* despite its failure to present the Court with the requested proof of

11  authority to sue or seek lead plaintiff status. Thereafter, a competing movant filed a

12  petition for a writ of mandamus with the Ninth Circuit because Anchor did not have

13  the authority to sue on its clients' behalves. *Employer-Teamsters Local Nos. 175 &*

14  *505 Pension Trust Fund v. United States District Court, Central District of Cal.*, No.

15  04-73146, Petition for Writ of Mandamus (9th Cir. Jun. 24, 2004), McCormick Decl.,

16  Ex. F. The Ninth Circuit found that the petition warranted further response and

17  ordered Anchor to respond to the writ. *Employer-Teamsters Local Nos. 175 & 505*

18  *Pension Trust Fund v. United States District Court, Central District of Cal.*, No. 04-

19  73146, Docket (9th Cir. Jun. 24, 2004), McCormick Decl., Ex. G. The Ninth Circuit,

20  it appears, recognized the seriousness of a district court appointing as the sole lead

21  plaintiff which had: (i) *no* financial interest of its own in the relief sought; and (ii) not

22  obtained authorization to rely on the losses suffered by the actual victims of the fraud.

23       Notably, Anchor's (which was the sole lead plaintiff) consolidated complaint

24  dismissed *without prejudice*. When given another opportunity to file an amendment

25  to cure the deficiencies in the consolidated complaint, *Anchor simply gave up and*

26  *requested that the Court dismiss its claims and those of the class with prejudice*.

27  Letter from Christopher L. Nelson to the Honorable A. Howard Matz, dated August

28  30, 2004, McCormick Decl., Ex. H. Thus, the appointment of an investment advisor

1   as the sole lead plaintiff in *Watson Pharmaceuticals* highlights the importance of the

2   "financial interest" test embodied in the PLSRA: because investment advisors do not

3   suffer any loss of their own, they lack the financial incentive to vigorously pursue a

4   case. *See Cavanaugh*, 306 F.3d at 737 n.20; 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

5         Appointing an investment advisor (like Metzler or Croteau) with no financial

6   interest in the litigation in the *Watson Pharmaceuticals* case has already had a clear

7   and dramatic adverse impact on the class in that case.  Likewise, appointing an

8   investment advisor here as the sole lead plaintiff would frustrate the PSLRA's

9   mandate that courts appoint lead plaintiffs which possess the largest financial interest

10  in the litigation in order to ensure that the lead plaintiff have the incentive to

11  vigorously prosecute the case. *Cavanaugh*, 306 F.3d at 737 n.20 ("Congress must

12  also have been animated by the common-sense notion that the plaintiff with the largest

13  personal stake in the controversy will have the incentive to obtain the best possible

14  result for the class of which he is a member.").[8]

15  **E.    The Signatories on Metzler's Certification Have Not**
        **Demonstrated that They Have the Authority to Bring Suit**
16      **on Behalf of Metzler**

17        Messrs. Matthias Plewnia and Thomas Hess who signed the certification on

18  behalf of Metzler have failed to demonstrate that they have the authority to bring suit

19  or to seek lead plaintiff appointment on behalf of Metzler.  Indeed, neither Mr.

20  Plewnia nor Mr. Hess state what their roles are at Metzler, what their titles are, or if

21  and how they have authority under German law to bind Metzler in this litigation.

22  Thus, Metzler has also failed to adequately establish that it has properly authorized its

23  involvement in this litigation.

24

25
    _____

26  [8]    At the very least, Metzler and Croteau should be required to present competent
27  evidence that their clients know they are moving for lead plaintiff and that their clients
    have given their permission to claim their losses.

28

1        Courts have refused to appoint movants where it is unclear whether the

2  signatory on the movant's certification has the authority to bind the movant. *See*

3  *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000). In *Piven*, the

4  company movant, like Metzler, failed to provide "any information regarding its

5  identity, resources, and experience," but submitted only a document, signed by

6  unidentified individual on behalf of the movant company, that unremarkably claimed

7  the company was "'willing to serve as a representative party and lead plaintiff on

8  behalf of the class, including providing testimony at deposition and at trial, if

9  necessary.'" *Id.* The court refused to appoint a movant that failed to demonstrate that

10  the signatory had the authority to bind the movant.

11        Good reason exists for not appointing a movant based on a certification signed

12  by a person without authority to bind the movant. The consequences to the class can

13  be dramatic if the movant later withdraws because it had no intention to move for lead

14  plaintiff appointment. For example, in *In re Pre-Paid Sec., Inc. Litig.*, CIV 01-182-C,

15  slip op. (W.D. Okla. May 15, 2001) (McCormick Decl., Ex. I), Schiffrin & Barroway

16  (counsel for Croteau here) submitted a lead plaintiff motion on behalf of an

17  investment advisor, like Croteau and Metzler. The person who signed the

18  certification, however, did not have the authority to bind the company. Consequently,

19  later in the proceedings, Robert Poole, the investment advisor's Chairman (Bricoleur

20  Capital Management ("Bricoleur")) withdrew Bricoleur's motion for appointment as

21  lead plaintiff from appellate proceedings pending in the Tenth Circuit. Following the

22  withdrawal, Mr. Poole made clear that the investment advisor never intended to be

23  involved in the litigation, stating that "'it was never our firm's informed decision to

24  participate in the first place.'" *See Lead Institutional Plaintiff Withdraws From*

25  *Litigation Against Pre-Paid Legal; Litigant Declares Its Participation Was*

26  *Unintentional and States Suit is Without Merit*, PR Newswire, Aug. 15, 2002,

27

28

McCormick Decl., Ex. J.  Thus, Metzler cannot be appointed because it has failed to demonstrate that the signatories on its certification have the authority to bind Metzler.[9]

**F.     Metzler Does Not Otherwise Meet the Requirements of Rule 23 Because It Is A Foreign Investment Advisor Subject to Unique Defenses**

    **1.     Metzler Cannot Be Appointed As Lead Plaintiff Because It Is Subject to the Unique Defense that Any Judgment It Achieved in this Court Would Not Be *Res Judicata***

Metzler cannot be appointed as lead plaintiff because, in addition to having no losses of its own, it cannot satisfy the requirements of Rule 23.  Defendants will claim Metzler is subject to unique defenses in light of the fact that it is organized in and operates from Germany, and "it is highly unlikely that a German court would recognize as binding against those German shareholders any judgment entered in a U.S. class action ...."  (Decl. of Rolf Sturner, Professor of Law at the University of Freiberg, Germany), submitted in *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993 (D. Del. Jan. 8, 2003), McCormick Decl., Ex. A.  If Metzler were appointed lead plaintiff, defendants would no doubt attempt to exploit, at the class certification stage, the fact that any judgment rendered by this Court would not be *res judicata*, and that courts regularly refuse to certify classes when they are represented by foreign plaintiffs from countries that do not recognize "opt-out" class action judgments. *Bersch*, 519 F.2d at 995;  *In re Royal Ahold N.V. Sec. ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003).  In *Bersch*, a securities class action, the court refused to certify a class containing foreign plaintiffs because countries of plaintiffs' origins, *including Germany*, "would not recognize a United States judgment in favor of the defendant as

---

[9]     Another reason to deny Metzler's motion is that unless the two signatories on Metzler's certification can provide some form of written authorization demonstrating their authority to sign on behalf of Metzler, which they have not done, then Metzler has failed to provide a properly signed certification. *See Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410 (D. Minn. 1998) ("the overall statutory scheme requires any Lead Plaintiff Motion to be accompanied by certifications, which attest, on each applicants' behalf, to his or her eligibility as enunciated in Section 78u-4(a) (2)(A)").

1  a bar to an action by their own citizens, even assuming that the citizens had in fact
2  received notice that they would be bound unless they affirmatively opted out of the
3  plaintiff class." *Id.* at 996.

4  Similarly, in *Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998), the
5  court considered the *res judicata* effect of a class action judgment in a foreign
6  plaintiff's home country in denying class certification. The court reasoned that "[i]f
7  the foreign court would refuse to recognize the preclusive effect of such an action, this
8  fact, although not dispositive, counsels against a finding that the class action is
9  superior to other forms of litigation." *Id.* at 116.

10  Recognizing the risk to all absent class members, at the class certification stage,
11  of appointing a foreign investor as lead plaintiff, the court in *Royal Ahold* refused to
12  appoint a foreign applicant as sole lead plaintiff. 219 F.R.D. at 352. Here, there is
13  even less reason to subject the Class to the risks of appointing Metzler given that the
14  Pension Funds not only have a greater financial interest, they also have none of the
15  jurisdictional issues facing Metzler.

16       **2.  Metzler Resides Too Far Away to Be an Effective**
17               **Lead Plaintiff**

18  Metzler is located in Germany, which is nine time zones, more than 5,700
19  miles, and more than 13 hours flying time from this District.[10] Metzler is so far away
20  from the Court, and it will likely be prevented, as a practical matter, from making
21  necessary appearances in this action. This will impact Metzler's ability to serve as an
22  adequate lead plaintiff. Courts recognize the potential difficulty of appointing foreign
23  movants as the sole lead plaintiff. For example, in *Network Assocs.*, 76 F. Supp. 2d at
24  1029, Judge Whyte refused to appoint two European financial institutions, like

25
26  [10]  Metzler's admits that it is "a fund management company established pursuant to
27  German investment law," and "is headquartered in Frankfurt am Main, Germany."
    Metzler Mem. at 6.
28

- 16 -

1   Metzler, as lead plaintiff because of the practical problems of a foreign investor
2   serving as lead plaintiff.  The Court ultimately held:

3          Finally, both ING and KBC are foreign organizations.  They are distant.
4          They were the only candidates not to attend the lead plaintiff hearing
5          even though the Court requested all candidates to do so by order dated
6          October 13, 1999.  The distances involved and some differences in
7          business culture would impede their ability to manage and to control
8          American lawyers conducting litigation in California.  At trial, the
9          representative plaintiff would normally testify and attend.  In a long trial,
10         it would be obviously difficult for ING and KBC to attend in its entirety.
11         The Court certainly does not say that a foreign investor could never
12         qualify.  But these, factors, when added to the others set forth above,
13         reinforce the Court's conclusion that neither KBC nor ING can fairly and
14         adequately represent the class.

15  *Id.* at 1030.  The analysis in *Network Assocs.* applies equally, here, where not only is
16  Metzler a foreign plaintiff, it is an investment advisor with no real financial interest in
17  the litigation.

18         **G.     Under the Authority of *Cavanaugh*, None of the Other**
               **Movants Other Than the Pension Funds Should Even Be**
19             **Considered for Appointment as Lead Plaintiff**

20         Because all of the other movants each have a smaller financial interest than the
21  Pension Funds, the Court should not even consider their applications in the first
22  instance.  *See Cavanaugh*, 306 F.3d at 732 (reasoning that the PSLRA does not
23  "authorize the district judge to examine the relative merits of plaintiffs seeking lead
24  status on a round-robin basis").  Rather, because the Pension Funds have the largest
25  financial interest in the relief sought, and otherwise satisfy the requirements of Rule
26  23, the Pension Funds are the most adequate plaintiff and must be appointed as lead
27  plaintiff.  *Id.*

28

1  **III.    CONCLUSION**

2        For all the reasons stated herein, the Pension Funds' respectfully request that

3  the Court: (1) deny the motions for appointment as lead plaintiff filed by Metzler,

4  Croteau, Michigan Pension Funds, United, the Karetas Group, Wyoming, the Bedoyan

5  Group and the Longano Group; and (2) grant the Pension Funds' motion for

6  appointment as lead plaintiff and approve their selection of lead counsel.

7  DATED:  September 20, 2004            Respectfully Submitted,

8                                       LERACH COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
9                                        WILLIAM S. LERACH
                                         JONAH H. GOLDSTEIN
10                                       TRICIA L. McCORMICK

11

12                                       _____
                                              TRICIA L. McCORMICK
13

14                                       401 B Street, Suite 1700
                                         San Diego, CA  92101
15                                       Telephone:  619/231-1058
                                         619/231-7423 (fax)

16                                       LERACH COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
17                                       JONATHAN E. BEHAR
                                         355 South Grand Avenue, Suite 4170
18                                       Los Angeles, CA  90071
                                         Telephone:  213/617-9007
19                                       213/617-9185 (fax)

20                                       [Proposed] Lead Counsel for Plaintiffs

21  S:\CasesSD\Corinthian Colleges\BRF00013664.doc

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 401 B Street, Suite 1700, San Diego, California 92101.

2.    That on September 20, 2004, declarant served the **THE PENSION FUNDS' OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF** by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 20, 2004, at San Diego, California.

*Diana L. Houck*
DIANA L. HOUCK

- 1 -

CORINTHIAN COLLEGES
Service List – 9/20/2004    (04-0239)
Page 1 of 4

**Counsel For Defendant(s)**

Robert L. Dell Angelo
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
   213/683-9100
   213/687-3702 (Fax)


**Counsel For Plaintiff(s)**

Stephen R. Basser
Samuel M. Ward
Marisa C. Livesay
Barrack, Rodos & Bacine
402 West Broadway, Suite 850
San Diego, CA  92101
   619/230-0800
   619/230-1874 (Fax)

Daniel E. Bacine
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
   215/963-0600
   215/963-0838 (Fax)

Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
Nicole  Lavellee
Berman DeValerio Pease Tabacco Burt & Pucillo
425 California St., Suite 2025
San Francisco, CA  94104-2205
   415/433-3200
   415/433-6382 (Fax)

Jeffrey C. Block
Michael G. Lange
N. Nancy Ghabai
Berman DeValerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA  02109
   617/542-8300
   617/542-1194 (Fax)

Alan  Schulman
Blair A. Nicholas
Bernstein Litowitz Berger & Grossmann LLP
12544 High Bluff Dr., Suite 150
San Diego, CA  92130
   858/793-0070
   858/793-0323 (Fax)

Douglas M. McKeige
Gerald H. Silk
Stephen W. Tountas
Bernstein Litowitz Berger & Grossmann LLP
1285 Ave of the Americas, 38th Fl.
New York, NY  10019
   212/554-1400
   212/554-1444 (Fax)

CORINTHIAN COLLEGES
Service List - 9/20/2004    (04-0239)
Page 2 of 4

Evan J. Smith
Marc L. Ackerman
Brodsky & Smith, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA  19004
    610/667-6200
    610/667-9029 (Fax)

Lionel Z. Glancy
Peter A. Binkow
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
    310/201-9150
    310/201-9160 (Fax)

Jonathan M. Plasse
Christopher J. Keller
Shelley  Thompson
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue, 12th Floor
New York, NY  10017-5563
    212/907-0700
    212/818-0477 (Fax)

Deborah R. Gross
Law Offices Bernard M. Gross, P.C.
1515 Locust Street, 2nd Floor
Philadelphia, PA  19102
    215/561-3600
    215/561-3000 (Fax)

Bruce G. Murphy
Law Offices of Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL  32963
    772/231-4202
    772/234-0440 (Fax)

Richard B. Brualdi
Law Offices of Richard B. Brualdi
29 Broadway, Suite 1515
New York, NY  10006
    212/952-0602
    212/952-0608 (Fax)

Jonathan E. Behar
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
    213/617-9007
    213/617-9185 (Fax)

William S. Lerach
Jonah H. Goldstein
Tricia L. McCormick
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
    619/231-1058
    619/231-7423 (Fax)

CORINTHIAN COLLEGES
Service List – 9/20/2004   (04-0239)
Page 3 of 4

Christopher Kim
Lisa J. Yang
Lim Ruger & Kim LLP
1055 West Seventh Street, Suite 2800
Los Angeles, CA 90017
 213/955-9500
 213/955-0511 (Fax)

Jeff S. Westerman
Milberg Weiss Bershad & Schulman LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071
 213/617-1200
 213/617-1975 (Fax)

Steven G. Schulman
Peter E. Seidman
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119
 212/594-5300
 212/868-1229 (Fax)

Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016
 212/682-1818
 212/682-1892 (Fax)

Stuart L. Berman
Darren J. Check
Sean M. Handler
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
 610/667-7706
 610/667-7056 (Fax)

Timothy J. Burke
Stull, Stull & Brody
10940 Wilshire Blvd., Suite 2300
Los Angeles, CA 90024
 310/209-2468
 310/209-2087 (Fax)

Robert I. Harwood
Joshua D. Glatter
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY 10022
 212/935-7400
 212/753-3630 (Fax)

Kevin J. Yourman
Vahn Alexander
Jennifer R. Liakos
Weiss & Yourman
10940 Wilshire Blvd., 24th Floor
Los Angeles, CA 90024
 310/208-2800
 310/209-2348 (Fax)

CORINTHIAN COLLEGES

Service List - 9/20/2004    (04-0239)

Page 4 of 4

Francis M. Gregorek
Betsy C. Manifold
Francis A. Bottini, Jr.
Wolf Haldenstein Adler Freeman & Herz, LLP
750 B Street, Suite 2770
San Diego, CA 92101
    619/239-4599
    619/234-4599(Fax)